# EXHIBIT 25

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>　Plaintiffs,<br><br>　　　v.<br><br>LINDA McMAHON, *et al.*,<br><br>　Defendants. | C.A. No. 1:25-cv-10601 |

### DECLARATION OF COMMISSIONER NOE ORTEGA

I, Noe Ortega, declare as follows:

　　　1.　　I am a resident of the Commonwealth of Massachusetts. I am over the age of 18 and have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.

　　　2.　　I am the Commissioner of Higher Education for the Massachusetts Department of Higher Education ("DHE"), a position I have held since 2022. Prior to holding this position, I was Secretary of Education for the Commonwealth of Pennsylvania.

　　　3.　　The Massachusetts Board of Higher Education ("the Board") is the Commonwealth's state higher education authorizing agency and is responsible for, among other things: authorizing public and private higher education institutions ("IHEs") to operate in the Commonwealth; assessing the financial condition of private higher education institutions under state law; administering the Commonwealth's near $400 million in state financial aid programs; and establishing and enforcing regulations related to helping to ensure that all public and private

1

institutions of higher education offer high quality, safe, and inclusive programing under state law.

4. The Massachusetts DHE is the state executive agency of the Board. I serve as chief executive officer and Commissioner of the DHE. Together, the Board and the Massachusetts DHE have coordinating, governing and/or regulatory oversight, in varying degrees, over all 29 public and 80 private institutions of higher education located in the Commonwealth of Massachusetts and authorized to grant degrees.

5. The public higher education system of Massachusetts is comprised of twenty-nine institutions divided into three segments: fifteen community colleges, nine state universities, and the five University of Massachusetts campuses. Each of the state universities and community colleges has its own board of trustees, as does the University of Massachusetts system, and all fall under the purview of the Board to varying degrees of oversight and coordination as members of the public higher education system.

6. As the Commissioner of Higher Education, I have personal knowledge of the matters set forth below or have knowledge of the matters based on my review of information and records gathered by my staff.

7. I submit this declaration in connection with the announcement by the United States Department of Education ("the Department") on March 11, 2025 that it would be reducing its staff by approximately 50% and that this was only the "first step" to a "total shutdown" of the Department. *U.S. Department of Education Initiates Reduction in Force*, Press Release, Department of Education (Mar. 11, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-initiates-reduction-force ("March 11 Press Release").

8. Given my experience, it is my opinion that the Department's staffing reductions and intended "total shutdown" will harm the Department's ability to meet its obligations to timely and effectively administer the programs described below and, in turn, impact the Massachusetts DHE's ability to administer its own statutory obligations under state and federal law and support the students and institutions we serve.

9. The federal student loan programs administered by the Department under Title IV of the Higher Education Act of 1965, as amended, are vitally important for the operation of the public higher education system in Massachusetts. The Department's Office of Federal Student Aid (FSA) is responsible for loan disbursement servicing, and borrower assistance for the Commonwealth's public higher education system students and prospective students.

10. FSA administers Pell Grants, work-study programs and federal student loan programs. Thirty-three percent of the Commonwealth's public higher education students receive Pell Grants, the most essential building block of the Commonwealth's need-based financial aid programs. The Commonwealth's public institutions of higher education rely on these federally funded student aid programs as the foundation for several state-funded financial aid programs designed to meet the unmet financial need of the Commonwealth's residents that remains after federal financial aid has been applied to a student's account. Specifically, recent state financial aid expansions including the Commonwealth's free community college programs (MassReconnect and MassEducate) and MassGrant Plus function as "last dollar" programs intended to close the gap between existing financial aid, both federal and institutional, and the full cost of tuition, fees and books. The projected costs of these programs assume consistency in federal financial aid awards. The loss of $251M in federal aid, to the extent the Department's reduction in force could impact FSA's administration of federal financial aid programs, could

3

further widen the aid-cost gap and likely make the Commonwealth's last dollar programs in their current form cost prohibitive.

11. In addition, FSA also administers and oversees institutional participation in federal financial aid programs. One major component of its oversight functions includes the oversight, review, and approval of institutional transactions including closures and mergers of Title IV recipient institutions to ensure that federal aid dollars at all times go to support students in quality programs, without disruption during a closure or merger transaction, specifically for changes in ownership that result in a change in control as set forth in 34 C.F.R. § 600.31(d). The Massachusetts DHE also plays a role in such transactions, maintaining oversight for the merging institutions that are subject to its state authorization and program review regulations at 610 CMR 2.00. On March 12, 2024, Cambridge College, Inc., a private, nonprofit institution of higher education, submitted documentation to the Department in fulfillment of the 90-day change in ownership ("CIO") notification requirement set forth at 34 CFR § 600.20(g)(1)(i). Consistent with its March 12, 2024 notification to the Department, on July 1, 2024, Cambridge College, Inc. contributed substantially all of its assets to BPU Acquisition, LLC, a Massachusetts limited liability company that is wholly owned and controlled by Bay Path University, a private, nonprofit institution of higher education located in Massachusetts that established a change in ownership that resulted in a change in control of Cambridge College, Inc. However, as of March 20, 2025, the Massachusetts DHE is not aware of action on the Department's part related to the approval of this transaction. The Department's delay, combined with its reduction in force and specifically the removal of the Department's institutional review specialist assigned to the transaction, will continue to leave students, faculty, and staff at both institutions with uncertainty regarding the long-term future of Cambridge College, Inc. and whether it will be able to fully

4

merge into Bay Path University and relinquish its participation in federal financial aid. Until the Department approves the transaction, the institutions continue to face operational and financial inefficiencies associated with maintaining two separate institutions at the Department's direction, which may impact the long-term ability of Bay Path University to continue to support Cambridge College, Inc. students.

12. The Department's FSA also develops the Free Application for Federal Student Aid (FAFSA) form and processes over 350,000 FAFSA submissions submitted annually by Massachusetts students. Students enrolling in both public and private institutions of higher education in Massachusetts must complete the FAFSA prior to their first year of enrollment and then resubmit the FAFSA each subsequent year of schooling. The deadline for applicants to submit their FAFSA forms for the 2025-2026 school year is June 30, 2025, and many students choose to submit their FAFSA forms earlier because their understanding of what, if any, financial aid they qualify for informs their decision about whether they can afford to attend college and, if so, which college.

13. The efficient administration of FAFSA forms is essential in ensuring students receive the maximum amount of federal and state financial aid for which they are eligible, to support the costs of their higher education programs. FAFSA delays can and severely do impact all aspects of the enrollment and admissions processes on college campuses. The longer it takes an institution to receive or access a student's FAFSA data, the more delayed any financial aid decisions to that student will be. Any delays in the administration of FAFSA that may result due to the Department's reduction in force will challenge incoming first-year students especially, particularly those who cannot make decisions about which college(s) they can afford or if they can go at all unless and until they receive their financial aid award packages.

14. The Department further manages large-scale data collection and enforcement from institutions of higher education across the country. For example, the Department keeps records of campus safety incidents and disclosures under the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (ASRs). Similarly, pursuant to the Commonwealth's 2021 Campus Sexual Assault Law (M.G.L. c. 6, s. 168E(e) and (q)), the Massachusetts DHE requires institutions to make federally mandated ASRs available to the public and receives annual sexual misconduct incident data reports from institutions which are then aggregated into an annual statewide sexual misconduct incident report. The state reports utilize the same reporting cadence as ASRs (calendar year basis). The ASRs provide the public and Massachusetts's public higher education system with essential information regarding campus safety and violence prevention on campus, and the progress institutions are making towards building more safe and inclusive college campuses. To the extent the publication of ASR data may become delayed or sunset as a result of the reduction in force, students and their families would no longer be able to access a trusted source of information to make an informed decision regarding an institution's safety and violence prevention programs.

15. The Department's Student Privacy Policy Office and Privacy Technical Assistance Center implement and issue interpretive guidance regarding the Family Educational Rights and Privacy Act (FERPA) as it applies to schools, including institutions of higher education. These offices also administer the FERPA complaint form and process, which empowers students, or their parents if under 18, to amend or correct education records to reflect a student's legal name or gender marker change. In the case that a school refuses to do so, students may file complaints with the Department against such schools that may have violated FERPA. For students that have changed their legal name or gender, these complaint processes are

essential backstops to ensuring that a school uses an accurate name across all student information systems and in communications to or about a student. To the extent this reduction in force results in any changes to the availability or integrity of such complaint processes, students may no longer have this essential complaint process available to them to ensure that their school uses the correct student information. As a direct result, the Massachusetts DHE is likely to absorb responsibility for receiving and addressing FERPA complaints, thereby further stressing the agency's limited resources, because it is the primary entity in the Commonwealth responsible for receiving and resolving consumer complaints filed against Massachusetts institutions of higher education pursuant to the Department's state authorization regulations, 34 C.F.R. § 600.9(a)(1).

16. The Department's Office of Postsecondary Education is responsible for formulating federal postsecondary education policy and administering programs to support of increased access to quality postsecondary education. The Department's Gaining Early Awareness and Readiness for Undergraduate Programs ("GEAR UP") program, in particular, funds essential grants the Massachusetts DHE relies on to improve FAFSA completion rates, and ultimately, college enrollment across all student populations. Already, our office is observing historic delays in the Department's administration of the GEAR UP program, in particular, impacts to the annual performance report website and the GB federal grants system. Each spring, the Massachusetts DHE must submit an Annual Performance Report ("APR") to the Department. This annual report provides a summary of the prior year's (10/1/2023 - 9/30/2024) college/career activities, interventions, outcomes and fiscal expenditures of the Massachusetts DHE's GEAR UP program. The Department's website that hosts the APR has typically been available on March 1st of the reporting year, with a deadline of April 18, 2025, for the report to be submitted by each GEAR UP program. However, on March 10, 2025, the Department's program officer

assigned to Massachusetts DHE's GEAR UP grant indicated via email that the website which hosts the APR would have a delayed opening and that the site would not be available on March 1st as in prior years. The Department's program officer did not provide additional details, nor did he state when the APR website would become available for reporting purposes. This is the first time that Massachusetts DHE staff have observed a delay in the opening of the Department's APR website and annual submission cycle. In addition, the G5 system is the federal government's grants management system. This system is by all federal grant programs and is where fiscal reports can be accessed and federal funds can be drawn down. In early March, the Massachusetts DHE fiscal team observed that the federal G5 system had posted limited hours of operation. Previously, the G5 system was available twenty-four hours per day. This is also the first time that Massachusetts DHE staff have observed limited operations of the Department's G5 system. To the extent prior conditions at the Department are further worsened by the Department's reduction in force, the Massachusetts DHE's ability to comply with the requirements of and draw down funds awarded to it under the Department's GEAR UP grant program, will negatively impact the intended outcomes of the program and may result in fewer students able to complete the FAFSA and enroll in college.

17.     The Department is one of the three elements of the regulatory triad that approves and monitors higher education in the United States. The Department has specific duties and responsibilities in this regard that are enumerated in the Higher Education Act of 1965, as amended, including overseeing the performance of recognized accrediting agencies as reliable authorities regarding quality in higher education. Students who attend institutions approved by a recognized accrediting agency can access federal financial aid. The Department also monitors institutions for performance of financial practices through its Heightened Cash Monitoring

(HCM) procedures to ensure federal aid is disbursed appropriately to institutions that meet minimum requirements for financial stability. The DHE is concerned that reductions in force at the Department will slow, delay, or outright halt actions necessary to maintain these key functions, in particular the Department's provision of timely access to federal financial aid for students and families; ongoing ability of the Department to identify and monitor institutions not in compliance with federal financial aid guidelines and program participation agreements; and erosion through non-enforcement of the Department's quality standards currently in place to ensure consumer protection. Such delays or the outright cessation of these functions will adversely impact the Massachusetts DHE's ability to timely and effectively meet its obligations under state law. For example, reducing or ending access to key financial and federal financial aid program participation approval information regarding higher education institutions will impact the ability of the Massachusetts DHE to identify and monitor institutions at risk of imminent closure under the Massachusetts's Financial Assessment and Risk Monitoring statute and regulations (M.G.L. c. 69, s. 31B; 610 CMR 13.00).

18. The Massachusetts DHE also acts as the Massachusetts State Approving Agency (SAA) under an agreement (contract) with the U.S. Department of Veterans Affairs (U.S. VA) for a wide range of educational and vocational programs that veterans and their dependents may receive support for under the GI Bill©, including programs offered by colleges and universities, trade schools, and flight schools; as well as apprenticeships, on-the-job-training, certain professional academies such as police and firefighting, correspondence training, and reimbursement for certain licensure exams and national exams. The SAA's primary role is to protect recipients of GI Bill© benefits from fraud, waste and abuse by reviewing and approving or disapproving institutions and programs, conducting compliance site visits, and assisting the

U.S. VA and student beneficiaries with inquiries and support related to these programs. To successfully carry out is responsibilities, the SAA relies on exchanges of information and timely responses from staff between the Massachusetts DHE and the Department. The drastic reduction in force at the Department will likely cause delays and possibly lead to errors in institution and program approval by prolonging timely sharing of data and information pertinent to institutional and programmatic SAA compliance reviews, and failure to notify the Massachusetts DHE regarding institutions found not to be in compliance with the Higher Education Act or Federal Student Aid regulations, to the disadvantage and detriment of benefits-eligible veterans, active-duty personnel, and their dependents. Lack of timely or indeed any notification or response to the Massachusetts DHE may, in turn, impede its ability to perform in its capacity as the SAA for Massachusetts at standard to metrics required under the SAA agreement.

19. Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 23, 2025, at Boston, Massachusetts.

_____
Noe Ortega