# EXHIBIT 53

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

STATE OF NEW YORK, *et al.*,

   Plaintiffs,

          v.

LINDA McMAHON, *et al.*,

   Defendants.

C.A. No. 1:25-cv-10601

**DECLARATION OF DOE DECLARANT 1**

## <u>DECLARATION OF DOE DECLARANT 1</u>

Pursuant to 28 U.S.C. § 1746, I, Doe Declarant 1, declare as follows:

1.     I am a resident of California. I am over the age of 18 and have personal knowledge of all the facts stated herein.  If called as a witness, I could and would testify competently to the matters set forth below.

2.     This declaration is submitted in support of the States' Request for a Preliminary Injunction.

3.     I am a Senior Civil Rights Attorney with the San Francisco Regional Office of the Office for Civil Rights ("OCR"). I have worked for OCR since July of 2005, or for approximately 20 years.

4.     Through my personal knowledge and experience, as well as through documents and information I have reviewed, I have knowledge about OCR in general and the San Franscico Regional Office in particular.

5.     OCR is charged with enforcing and investigating alleged violations of various federal civil rights laws that protect students and other individuals against discrimination, including Title VI of the Civil Rights Act of 1964 (Title VI), Title IX of the Education

Amendments of 1972 (Title IX), Section 504 of the Rehabilitation Act of 1973 (Section 504), the

Age Discrimination Act of 1975 (Age Act), Title II of the Americans with Disabilities Act of

1990 (Title II), and the Boy Scouts of American Equal Access Act of 2002. OCR has a

responsibility to act in a reasonably prompt manner in response to alleged violations of these

laws.

6.      In addition to its enforcement and investigative work, OCR also provides

trainings and technical assistance on civil rights laws to state and local educational agencies. And

it gives educational presentations to advocacy groups and parents.

7.      The Assistant Secretary for Civil Rights leads OCR. OCR's headquarters are in

Washington, D.C. It previously had 12 regional offices in Atlanta, Boston, Chicago, Cleveland,

Dallas, Denver, Kansas City, New York, Philadelphia, San Francisco, Seattle, and Metro

Washington D.C. The Deputy Assistant Secretary for Enforcement oversaw four Enforcement

Divisions, each consisting of three regional locations. Each Enforcement Division was managed

by an Enforcement Director, who was responsible for coordinating the program operations and

resource management of three regional offices.

8.      Each regional office is managed by a Regional Director, who is supported by a

Chief Attorney and a Program Manager. Investigative staff in the regional offices carry out

OCR's mission by enforcing the civil rights statutes and regulations. Staff use a variety of

approaches to resolve complaint investigations and compliance reviews in order to ensure equal

access to education and promote educational excellence. The San Francisco office handles

complaints for the entire state of California.

9.      The San Francsico office receives complaints alleging civil rights violations,

mostly from parents or advocates. Investigative staff review those complaints and decide if they

have merit and should be fully investigated. While investigating a complaint, staff interview witnesses, request and review documents, and work with the complainant to understand the extent of the discrimination. Staff also conduct outreach to educational institutions to provide guidance on how to comply with antidiscrimination laws. In addition, the San Francisco office performs proactive compliance reviews and directed investigations. OCR initiates compliance reviews to determine whether recipient practices comply with civil rights laws and regulations. OCR initiates directed investigations to address possible discrimination that is not currently being addressed through OCR's complaint resolution, compliance review, or technical assistance activities. These investigations are generally more expansive and complex and tend to involve systemic issues of noncompliance that affect many students or individuals.

10.    Pursuant to the Government Performance and Results Act (GPRA), OCR's policy is to resolve complaints within 180 days.  However, all regional offices, including San Francsico, have been unable to meet the 180-day timeline for resolving complaints for several years. All of OCR's regional offices have been understaffed and have also experienced an annually increasing backlog of complaints, both open complaints and those still waiting to be evaluated to determine whether they should be opened. An unprecedented number of complaints have been filed with OCR since the beginning of the Covid-19 pandemic. The number of complaints has recently hit an all-time high. Unfortunately, this has resulted in many complaints not being investigated or resolved in a timely manner. It is not unusual for a case to be resolved more than a year after its receipt.

11.    As a Civil Rights Attorney, I reviewed complaints to determine whether they had merit and warranted a full investigation. I investigated complaints, negotiated resolutions, and

monitored compliance with these resolutions. All of the complaints that I worked on alleged

violations of federal law, including Title VI, Title IX, Section 504, the Age Act, and Title II.

12.     As of March 11, 2025, I had approximately 20 open investigations ranging from

the initial stage of investigation to the completed stage in which negotiations of a resolution

agreement were ongoing or where I was monitoring compliance with the terms of a resolution

agreement. I also had somewhere between 35 and 40 cases in the evaluation stage that still

needed to be reviewed to determine whether an investigation was warranted.

13.     On March 11, 2025, at approximately 3:00 p.m. PST,  my government issued

laptop, on and through which I perform all of my work for OCR, suddenly restarted without

any warning. I am informed and believe that the same unexpected restart happened to all other

employee computers at the San Francisco office. After the computer restarted, I was not able

to access all of the various systems, programs, and apps that are necessary for me to perform

my job.

14.     At 4:37 p.m. PST on March 11, 2025, I received from Jacqueline Clay, Chief

Human Capital Officer (CHCO), an email with the subject line "CHCO – Notice to

Employees Impacted by Reduction in Force (RIF)." The email stated: "I am writing to share

some difficult news. This email serves as notice that your organizational unit is being

abolished along with all positions within the unit – including yours." Annexed hereto as

Exhibit 1 to this declaration is a true and correct copy of the email that I received and its

attachments, dated March 11, 2025. The email then stated that I was being placed on

administrative leave starting March 21, 2025, and it prohibited me from doing a number of

things during the "transition" period between March 11 and March 21. The prohibition on

doing these things was clearly designed to prevent me from having access to anything related to my work, including my own attorney work product.

15.    Because I received no advance notice, I was unable to perform the simple courtesy of informing any complainant, administrator at an educational entity, or anyone else involved in any of the complaints for which I was responsible, that I would no longer be working on the matter and that OCR San Francisco was being closed. However, even if I had been given the opportunity to provide them with such a courtesy notice, I would not have been able to give them any additional information about the future of the complaint. I have never been told what OCR regional office will now be responsible for my matters, who will be responsible for them, when they will be responsible for them, or when they will contact the complainants and the educational entities to notify them of the significant changes in the handling of the matter.

16.    Many of the matters for which I am responsible involve systemic issues of discrimination and require an understanding of a large amount of information to be properly resolved. It will be incredibly challenging for someone with no prior knowledge of the matters to get up to speed and fully understand the specifics of the allegations being made and the information and documentation that either support or do not support the allegations. It will take someone weeks, if not months, to obtain a sufficiently complete understanding of these matters.

17.    On March 11, 2025, I had several matters that had reached critical stages in the investigation and resolution process. In one matter, the investigation was completed, and a determination was made that a school district created a hostile, adverse, and discriminatory environment for a parent of a student with a disability and the student's advocate at the

student's individualized education program (IEP) team meetings. This resulted in the student not receiving required services and accommodations in his classroom, which impacted his education. A resolution agreement to address and remedy the discrimination, including measures to prevent future meetings from becoming adversarial and discriminatory and provisions to provide the student with compensatory education and services, was being negotiated. The deadline to have the agreement signed and implemented was March 25, 2025. Without the assistance and advocacy from the OCR San Francisco office, the execution of the agreement is in jeopardy and the child will likely not receive the benefits and remedies included in the agreement within the next couple of weeks, as was initially anticipated.

18.    Another matter involved a post-secondary institution's failure to provide necessary academic adjustments, accommodations, and modifications to one of its students who has a disability. The investigation recently completed and a resolution agreement was being prepared that would ensure that the student receives reasonable adjustments and accommodations in her classes so that she has an equal opportunity to successfully receive a beneficial education. The student had requested that her matter be resolved expeditiously since the lack of timely accommodations made it extremely hard for her to attend class, do coursework, and complete her courses. She will now, unfortunately, face significant delay in the resolution of her matter.

19.    The actions of the past week will also adversely affect matters that involve monitoring an educational entity's implementation and completion of the terms of a resolution agreement. Specifically, in two matters that involved systemic issues of discrimination against students with disabilities, both entities, a school district and a county office of education, have been implementing the required actions for close to two years and are near completion of the

terms. However, the remaining terms are the most onerous of the agreements, but are also the

most beneficial to the impacted students. Both of the entities were having difficulties with

properly implementing the terms as required by the language of the agreements and I was

collaborating with both to determine viable ways for them to best implement the terms so that

the students receive the maximum benefit possible. I have not been able to inform either entity

that I will no longer be working on their matters, and it is unlikely that either of them has any

knowledge of what is occurring in the San Francisco OCR office.

20.     In fact, on the afternoon of March 19, 2025, I received an email from the

representative of the school district in which he asked for additional clarity about the actions

that need to be completed and he requested that I contact him to discuss the matter. Because I

have been prevented from sending email outside of the ed.gov email domain and cannot make

outgoing calls from my work phone number, I have been unable to either acknowledge or

respond to his email. Closing the San Francisco regional office will cause significant delay in

each entity's ability to complete the terms of the agreement. The longer the delay, the greater

the likelihood of harm to the students, who were the intended beneficiaries of the agreements'

remedial provisions.

21.     In addition to the above-mentioned specific matters, nearly all of the matters for

which I am responsible allege discrimination based on disability. The majority allege

discrimination because of a school district's failure or refusal to provide necessary services or

accommodations to a student with a disability in the primary or secondary educational setting.

When a student with a disability in primary or secondary school does not receive the services

and accommodations that are required to receive a free appropriate public education (FAPE),

the resulting harm can be serious both to the student's educational experience and to the

student's mental health and well-being. Thus, addressing, resolving, and remedying any failures are time sensitive tasks. These matters have now been sitting idle with no work performed on them for the past 9-10 days and were previously subject to a directive from OCR administration to "pause" for several weeks all work that required any contact or communication with individuals outside of OCR. It is not clear when or whether these complaints will be resolved given the complete lack of information or guidance on how the matters will be reassigned. Moreover, even if my matters were reassigned to another individual in a different OCR office, the reassignment will still be detrimental to the timely and successful conclusion of the matters.

22.    Closing the San Francisco OCR office also hinders OCR's ability to ensure that educational institutions in California are physically accessible to students and others with disabilities who seek to benefit from the services, programs, or activities of the institutions. Both Section 504 and Title II mandate that the programs and activities of educational institutions be accessible to people with disabilities. Physical accessibility is highly technical and is governed by a very specific set of standards that have at their core precise measurements for various objects and potential barriers to access. As an example, OCR San Francisco has received numerous complaints about high school football stadiums and other performance venues across the State of California that lack accessibility. For OCR to investigate the complaints properly and thoroughly, it must perform an in-person physical inspection of the stadiums and venues along with their features to obtain precise measurements (termed an accessibility survey). This can involve numerous OCR staff and several days on site at the stadium or other facility. The inspections can be difficult to coordinate and expensive to perform, particularly if they must now be done by OCR staff

traveling from out of state. This may result in surveys not being performed in a timely manner or not being performed at all.

23.    Educational institutions that have come to rely on OCR San Francisco to provide them with technical assistance and proactive training presentations will also be harmed by the office's closing. I am a member of OCR San Francisco's "customer service team" (CST). The CST is responsible for responding to questions and requests for advice or assistance regarding compliance with civil rights laws that come through emails and phone messages. The requests often come from administrators of school districts and post-secondary institutions and elementary/secondary and post-secondary teachers, counselors, and other staff. Those school officials will no longer have the ability to have their issues and questions addressed in a timely manner, or maybe at all.

24.    Based on my knowledge and experience, I do not think that the Department of Education can meet its statutory obligations to investigate and ensure compliance with federal civil rights law if the entire San Francisco regional office of OCR is closed. The San Franciso regional office has always been one of the busiest and most productive of the OCR regional offices. I am informed and believe that many of the other offices being marked for closure also receive a larger number of complaints and resolve a higher number of them, particularly the New York office. Thus, the closure of the top performing offices in OCR makes little sense. Closing them and transferring their large number of cases to the remaining offices will overburden the remaining offices and severely diminish the overall efficiency and productivity of OCR. This diminishment will ultimately be detrimental to the rights and interests of all who have been subjected to discrimination by an educational institution and who file a complaint of discrimination with OCR. These individuals will no longer receive a timely response to

vindicate their civil rights or be able to obtain a proper remedy. The timely investigation and resolution of discrimination complaints serves another important purpose– it identifies discriminatory actions, policies, or individuals and attempts to correct them before they further discriminate and harm others. Without timely corrective action, the likelihood of additional discrimination occurring only increases.

25.     Every student, regardless of sex, disability, race, color, or national origin is entitled to an equal opportunity to obtain a meaningful education that will serve them well in life. For many students and parents, OCR is the safeguard for that opportunity and, at times, a last resort. Closing seven of OCR's regional offices and creating additional backlog and work for the remining five offices will undoubtedly delay the investigation and resolution of all OCR complaints and further harm those seeking to have discrimination addressed and remedied. This will benefit no one other than those who have no experience with or dedication to protecting the civil rights of our nation's students but, for personal reasons, believe closing the offices will somehow better the services provided by the government. Unfortunately, no services or untimely services do not make better services.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on March 21, 2025 at San Francisco, California.


   /s/ Doe Declarant 1
                    Doe Declarant 1

# EXHIBIT 1

**Subject:** FW: FW: CHCO - Notice to Employees Impacted by Reduction in Force (RIF)
**Attachments:** image001.png; Instructions for ED Employees Impacted by RIF, 3-11-25.docx; ED RIF Information and Resources, 3-11-25.docx; Office Hours – Retirement Paperwork and Process _ Questions and An....eml (8.44 MB); Office Hours - Retirement Paperwork and Process_Questions and Answers FINAL.pdf; FERS Retirement Forms.zip; CSRS Retirement Forms.zip

**From:** Clay, Jacqueline <Jacqueline.Clay@ed.gov>
**Sent:** Tuesday, March 11, 2025 4:36 PM
**To:** CHCO <CHCO@ed.gov>
**Subject:** CHCO - Notice to Employees Impacted by Reduction in Force (RIF)

Dear Colleagues,

I am writing to share some difficult news.  This email serves as notice that your organizational unit is being abolished along with all positions within the unit – including yours.  Please note, if you elected to separate under another program e.g., Deferred Resignation Program, Voluntary Early Retirement Authority (Early-Out), or Voluntary Separation Incentive Payment (Buy-Out), you are NOT impacted by the Reduction in Force (RIF).

To provide you with the maximum opportunity to focus on your transition, you will be placed on paid administrative leave starting **Friday, March 21, 2025**.

- ***Please take immediate action to review and comply with the Instructions for Employees Impacted by the RIF (attached).  This document contains important information regarding access to ED facilities, transitioning your work, and preparing for administrative leave.***

- ***Ensure*** **your Principal Operating Component (POC) has your current mailing address, and a good personal phone number and email address to contact you.**

- During the transition period, you will retain limited equipment and systems access to enable official communications regarding your RIF standing.  Please note:

1

- o  You are only authorized to back-up your data to a network device or approved backup device.

- o  You are prohibited from storing sensitive or mission-critical data on your systems' hard drive or handheld device.
- o  All Department of Education system resources, including hardware, software programs, files, paper reports, and data are the sole property of the Department of Education, and there should be no expectation of privacy.
- o  You are prohibited from transmitting electronic copies of Department of Education materials to your home or other personal accounts.
- o  Personnel using remote access shall not download or store Government information on private equipment, optical or digital media.

- o Unauthorized or improper use of this system may result in disciplinary action, as well as civil and criminal penalties.

- No earlier than 30 days from the date of this email you will receive your official RIF notice, which will begin an additional 60 days of paid administrative leave prior to your separation from the agency.

- This will give you a total of 90 days on paid leave to help facilitate your transition.

- Your official RIF notice will provide more detailed information on your specific benefits and standing and be delivered to your mailing address on file.

- You will only retain your Ed.gov email to facilitate communications with the agency through March 21, 2025.

ED has made the determination to initiate RIF procedures as part of the agency's restructuring process.  These actions support Executive Order (EO) 14158, Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative, dated February 11, 2025 and Office of Personnel Management Guidance on Agency RIF and Reorganization Plans, dated February 26, 2025.  This decision is in no way a reflection of your performance or contributions, which we deeply appreciate.

I recognize that this is a challenging moment, and my team is committed to supporting you through this transition.

- ➢ For additional information about Reductions in Force, visit the Office of Personnel Management RIF site.

- ➢ For general questions regarding next steps, please email workforcereshaping@ed.gov.

- ➢ For specific retirement or benefits questions, please contact benefits@ed.gov.

- ➢ Use the Employee Assistance Program, if needed. The Employee Assisstance Program (EAP) and WorkLife4You Program, provided by Federal Occupational Health (FOH), are available 24

hours a day, 7 days a week at 1-800-222-0364 (TTY: 1-888-262-7848) or at www.FOH4you.com or www.worklife4you.com.

➢ Should you lose access or need IT support, please contact the Help Desk at ocioenterprisehelpdesk@ed.gov; or call 202-708-HELP (202-708-4357) and select Option 2.

With regard,

Jacqueline Clay

Chief Human Capital Officer

Attachments:

Instructions for ED Employees Impacted by RIF

ED RIF Information and Resources

Benefits and Work/Life Email: Office Hours – Retirement Paperwork and Process

**INSTRUCTIONS**
**FOR**
**EMPLOYEES IMPACTED BY REDUCTION IN FORCE (RIF)**
3/11/25

**PHYSICAL ACCESS TO ED FACILITY:**
*Effective 9:00 pm on March 11, 2025*, your PIV card access to ED facilities will be removed.  You are no longer permitted to use it to access federal buildings or property, including your former ED office space, without prior ED approval.

- The agency will schedule a period of time for those employees who may need to pick-up personal belongings.

**TRANSITION OF WORK:**
*March 12, 2025 - March 21, 2025*:  During this period, you will have limited IT access to complete work transition activities – you will have access to ed.gov email, Quicktime, FedTalent and Login.gov.

> **NOTE 1**:  **Please ensure your Principal Operating Component (POC) has your current mailing address, and a good phone number and email address to contact you.**
> **NOTE 2:**  Please follow the instruction on Login.gov to change your account settings (i.e., phone number, email, etc.) and authentication method.  This will help you retain access to Employee Express (Leave and Earnings Statements, W-2 tax prep forms).
> **NOTE 3:**  See item 5 in the attached Information and Resources document for important instructions on downloading eOPF records.

**TIME AND ATTENDANCE:**
During your transition period make sure you:

- ➢ Cancel all leave requests in Quicktime.
- ➢ Code your timecards for Pay Periods 7 through 13 as follows:

> **PP 7:**    3/10/25-3/21/25:  Code your timecard as you normally would
> **PP 8:**    Use Code 065 for week 1 and week 2
> **PP 9:**    Use Code 065 for week 1 and week 2
> **PP 10:**   Use Code 065 for week 1 and week 2
> **PP 11:**   Use Code 065 for week 1 and week 2
> **PP 12:**   Use Code 065 for week 1 and week 2
> **PP 13:**   Use Code 065 for 6/2/25 and 6/9/25.  Leave the remainder blank.

Once these timekeeping tasks are complete, do NOT continue to report your time and do NOT make any other changes to past timesheets.  The payroll team will confirm that your timecard is coded properly for the duration of your administrative leave.

**ADMINISTRATIVE LEAVE AND LIMITED TECHNOLOGY ACCESS:**
*Effective 5:00 pm on March 21, 2025*, you will be placed on administrative leave and no longer have access to ED accounts or systems.

- Once your IT account is disabled, you will be mailed a shipping box and label to return government property (IT equipment, phone, PIV Card, Travel Card, etc.).  You are required to return all government property within 7 days of receipt.
- **Returning Government Property:  It is very important that your POC has your current mailing address and a good phone number and email address to contact you**.

**OFFICIAL SPECIFIC EMPLOYEE RIF NOTICE:**
***On or about April 9, 2025***, you will receive your employee specific RIF notice.  It will include information regarding severance pay and retirement benefits.

**SEPARATION FROM THE DEPARTMENT OF EDUCATION:**
***On or about June 9, 2025***, your employment with the Department of Education will end.

For additional information about Reductions in Force, visit the Office of Personnel Management RIF site.

For questions, please email WorkforceRestructuring@ed.gov.

**Reduction in Force (RIF)**
**Information and Resources**
3/11/25

To help you navigate during this transition period, please use the information below in conjunction with the information provided in the ***Instructions for ED Employees Impacted by RIF***.

**1. REDUCTION IN FORCE INTENT**

ED has made the determination to initiate RIF procedures as part of the agency's restructuring process. These actions support Executive Order (EO) 14158, Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative, dated February 11, 2025 and Office of Personnel Management Guidance on Agency RIF and Reorganization Plans, dated February 26, 2025.

**2. ADMINISTRATIVE LEAVE**

Once you receive written notice that you have been impacted by the RIF, you will be afforded a brief period to transition work activities; after which, you will be placed on paid administrative leave effective **Friday, March 21, 2025.**

You will remain on paid administrative leave for the duration of the "notice period" as specified in your written notice.

Once on administrative leave, you will no longer be permitted to conduct the duties of your position and your accounts will be disabled.

> **NOTE 1**: **Please ensure your Principal Operating Component (POC) has your current mailing address, and a good phone number and email address to contact you**.
> **NOTE 2:** Please follow the instruction on Login.gov to change your account settings (i.e., phone number, email, etc.) and authentication method. This will help you retain access to Employee Express (Leave and Earnings Statements, W-2 tax prep forms).
> **NOTE 3:** See item 5 below for important instructions on downloading eOPF records.
> **NOTE 4**: Once your IT account is disabled, you will be mailed a shipping box and label to return government property (IT equipment, phone, PIV Card, Travel Card, etc.). You are required to return all government property within 7 days of receipt.

**3. PAY AND BENEFITS**

**Pay During Administrative Leave**
While on paid administrative leave:
- You will continue to be paid at the same rate and frequency as you did before you were placed on administrative leave.
- You will continue to accrue annual and sick leave.
- You will receive any scheduled Within Grade (Step) Increases.
- You will maintain the same benefits as you did before you were placed on administrative leave.

**Pay After Separating from the Agency**

Once you separate from the agency:
- You will receive your RIF severance payout, if eligible.
- OPM's Severance Pay Estimation Worksheet is intended to allow those eligible for severance pay to calculate the approximate amount of severance pay he or she may receive.
- The actual calculation formula is somewhat more complicated and technical therefore the actual payout will be provided by Office of Human Resources, Benefits and Retirement Branch.

**Federal Employee Health Benefits**
While on paid administrative leave, your health benefits will not change. Upon separation from the agency:
- Federal Employee Health Benefits (FEHB) will continue for 31 days and may continue, with the employee paying 100%, plus a 2% administrative fee of the premium (with no contribution from the agency) for up to 18 months.
- Federal Dental and Vision Insurance Program (FEDVIP) coverage ends upon separation.
- Flexible spending accounts are closed on separation. Unspent money in a health care FSA is not refunded, although claims for purchases up to the date of separation will still be paid. Unspent money in a childcare FSA will remain available for use through the plan year.
- For more information, visit OPM's RIF Benefits Summary page.

**4.   VOLUNTARY SEPARATION INCENTIVES**

**Voluntary Early Retirement Authority (VERA):** ED is currently offering Voluntary Early Retirement (Early Out), **through March 25, 2025**. VERA is a strictly voluntary option that allows eligible employees to retire early. This authority encourages more voluntary separations and helps agencies to complete needed organizational changes with minimal disruption to the workforce.
- There is no reduction in annuity if you are under the age of 62 as a FERS employee, unlike retiring under the normal Minimum Retirement Age (MRA) +10 rules. However, you must be at your MRA to become eligible for the FERS supplement.

As a reminder, employees who meet age and service requirements for Voluntary Retirement do not need the VERA authority to retire and may apply to retire at any time.

**Who is eligible for VERA?**
If you are  covered by the Civil Service Retirement System (CSRS) or the Federal Employees Retirement System (FERS), then you are eligible for VERA if you meet the following requirements:

- At least 20 years of creditable service and at least 50 years old OR completed at least 25 years of creditable service regardless of age.
- Continuously employed by ED since at least January 12, 2025.
- Be in good standing with the agency (i.e., not in receipt of a final removal decision based upon misconduct, or unacceptable performance).
- **Agree to separate from the Department by March 31, 2025**

**Application Procedures**
- **To request a VERA, you must submit a complete retirement package by March 25, 2025. For your convenience, the attached Benefits and Work/Life email provides important information and forms required to apply for retirement.**
- **All VERA applications must be received by 5:00 pm ET on March 25, 2025.**
- **Incomplete packages will not be considered.**

2

- **SUBMIT APPLICATION VIA EMAIL to** BenefitsandWork/Life@ed.gov

**5.   SEPARATION**

**Retaining Personnel Records - Electronic Official Personnel Folder (eOPF)**
To download and save your entire eOPF, please follow the instructions below using **your ED account**:
- Go into the eOPF portal at OPM
- Click "My eOPF Print Folder" tab at the top
- Check "Select All"
- Click one of the two print buttons
- Click "My eOPF Print Status" tab at the top
  - Wait for the print request to process (this can take several minutes or longer depending on volume)
  - While waiting, read the instructions describing what the password will be for your document password
  - Password will be your last name plus the print number, which you will see in a box as the request is processing.  Example:  John Doe requested the print job and the system assigned 1234 as the job number.  The password would be Doe1234
- When "View" appears in the "Action" box, click on it.
- Save as a PDF
- Open the PDF in Adobe and enter password

**Outside Employment and Unemployment Benefits**
  **While on administrative leave**:
- You are not eligible to receive state unemployment benefits.
- You are free to accept other employment subject to the ethics rules for outside employment and applicable federal law; however, you may not accept employment with another federal agency.

**Once you are separated**:
- You are eligible to receive state unemployment benefits.
- You are free to accept federal or non-federal employment, subject to the post-government employment ethics rules and applicable federal law.
- You are entitled to reinstatement rights afforded all federal "displaced employees" for a period of three years.

**Retention Standing**
Your retention standing will be provided in your individual official RIF notice. Retention standing is an employee's relative standing on a retention register based on tenure, veterans' preference, and length of service augmented by performance credit.

**6.   CAREER TRANSITION**

**Available Employee Support**
- The Employee Assisstance Program (EAP) and WorkLife4You Program, provided by Federal Occupational Health (FOH), are available 24 hours a day, 7 days a week at 1-800-222-0364 (TTY: 1-888-262-7848) or at www.FOH4you.com or www.worklife4you.com (new user registration code: ED) at no cost to you!  You can also contact the benefits team at: BenefitsandWork/Life@ed.gov for additional information.

**Career Transition Assistance Plan (CTAP)**

The Career Transition Assistance Plan (CTAP) is an intra-agency program that helps surplus or displaced federal employees improve their chances of finding a new job in their agency, by giving them selection priority over other applicants, as long as they're qualified for the job.

You're eligible for CTAP if:

1. You're a current federal employee who meets the definition of a surplus or displaced employee— you've received official notice that your job is no longer needed or that you will lose your job by a Reduction in Force.
2. Your agency is accepting applications from within or outside of the permanent workforce.
3. You meet the qualifications and other requirements of the job you're applying for.

**Interagency Career Transition Assistance Plan (ICTAP)**

The Interagency Career Transition Assistance Plan (ICTAP) is an interagency program that helps surplus or displaced federal employees improve their chances of finding a new job at another agency (not their current or former agency), by giving them selection priority over other applicants from outside the agency.

You're eligible for ICTAP if:

1. You're a current federal employee who meets the definition of a surplus or displaced employee— you've received official notice that your job is no longer needed or that you will lose your job by a Reduction in Force.
2. The agency you're applying to is accepting applications from outside of their workforce.
3. The job you're applying to is in the local commuting area.
4. You meet the qualifications and other requirements of the job you're applying for. For more information on Career Transition, please visit the Employee's Guide to Career Transition

7. **CONTACTS**

➢ For additional information about Reductions in Force, visit the Office of Personnel Management RIF site.

➢ For general questions regarding next steps, please email workforcereshaping@ed.gov.

➢ For specific retirement or benefits questions, please contact benefits@ed.gov

➢ Use the Employee Assistance Program, if needed. The Employee Assisstance Program (EAP) and WorkLife4You Program, provided by Federal Occupational Health (FOH), are available 24 hours a day, 7 days a week at 1-800-222-0364 (TTY: 1-888-262-7848) or at www.FOH4you.com or www.worklife4you.com.

➢ Should you lose access or need IT support, please contact the Help Desk at ocioenterprisehelpdesk@ed.gov; or call 202-708-HELP (202-708-4357) and select Option 2.

➢

4

| | |
|---|---|
| **From:** | Benefits and Work/Life |
| **Cc:** | Benefits and Work/Life |
| **Subject:** | Office Hours – Retirement Paperwork and Process | Questions and Answers |
| **Date:** | Friday, February 21, 2025 8:31:05 AM |
| **Attachments:** | image001.png |
| | Office Hours - Retirement Paperwork and Process_Questions and Answers FINAL.pdf |
| | FERS Retirement Forms.zip |
| | CSRS Retirement Forms.zip |

---

**Distribution List:** Employees who attended the *"Office Hours – Retirement Paperwork and Process"* meeting on Tuesday, February 18, 2025, 12:00 PM-1:00 PM Eastern

Colleagues,

Thank you for joining me to discuss paperwork and process regarding retirement.  As promised, attached are the questions from the Teams Chat along with answers.

Thank you,


Mary Tittle
Branch Chief (Division of Benefits and Work/Life)
Office of Finance and Operations
U.S. Department of Education

Email: mary.tittle@ed.gov
Phone Number: (202) 987-1033

decorative