# EXHIBIT 62

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>    Plaintiffs,<br><br>             v.<br><br>LINDA McMAHON, *et al.*,<br><br>    Defendants. | C.A. No. 1:25-cv-10601<br><br>**DECLARATION OF DOE**<br>**DECLARANT 10** |

## DECLARATION OF DOE DECLARANT 10

I, DOE DECLARANT 10, declare as follows:

1.     I am over the age of 18 and have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.

2.     I am an employee of the Legacy Program Oversight Branch of the Vendor Performance Division, Federal Student Aid (FSA) of the Department of Education ("the Department"), where I have worked for approximately 15 years. I have worked for a total of 25 years at the Department.

3.     The Legacy Program Oversight Branch is the product of a reorganization of the previously named Financial Institution Oversight Service Group, which became effective on February 9, 2025. Our branch is responsible for administering oversight of guaranty agencies, lending institutions, and servicers participating in legacy loan programs, primarily in the Federal Family Education Loan (FFEL) Program. We perform our oversight role by completing program reviews and audits as required under the Higher Education Act of 1965, 20 U.S.C. Part B and 34 CFR 682 on a two-year cycle for the entities under our purview.

4.     The FFEL Program was a Title IV program that worked with contracted lenders and servicers to provide education loans guaranteed by the federal government. The FFEL Program ended in 2010, after which loans were then made through the the Federal Direct Loan Program. There remain large volumes of funding that had been borrowed under the FFEL Program that are still serviced until those loans are paid full. It is our job to conduct oversight over this legacy portfolio to ensure if servicers engage in any improprieties, they take necessary corrective action (including paying liabilities back to the Department).

5.     The Vendor Performance Division, of which my branch is a part, handles risk assessment and oversight reviews for FFEL loan portfolios, as well as the data mining in the National Student Loan Data System, which houses all loans disbursed by FSA nationwide. We review anomalies that are generated from the data mining conducted and reporting errors that need to be corrected. The Division performs the following functions:

    a.   Conduct risk assessment of guaranty agencies, lenders, and servicers participating in the Title IV programs;

    b.   Conduct comprehensive and/or focused program reviews of guaranty agencies, lenders, and servicers;

    c.   As required, monitor guaranty agencies, lenders, and servicers to obtain early warning and/or confirmation of issues related to program compliance and financial stability;

    d.   Evaluate and act upon the findings, conclusions, and recommendations produced by audit resolution;

    e.   Determine liabilities owed by guaranty agencies, lenders, or servicers and/or recommend fines that may be imposed against them;

    f.   Monitor the Common Claim Initiative;

    g.   Work closely with or refers matters to Office of General Counsel (OGC) and theOffice of the Operating Officer, Policy Implementation and Oversight; and

    h.   Review and update pertinent databases.

6.      On March 11, 2025, I received an email from the Chief Human Capital Officer, Jacqueline Clay, stating, "your organizational unit is being abolished along with all positions within the unit—including yours" ("the RIF Notice). The RIF Notice further informed me that I will be placed on administrative leave beginning March 21, 2025, and that I will receive an "official RIF notice" no earlier than 30 days after March 11, 2025. I understand the RIF Notice to mean that the entire Vendor Performance Division is being abolished, including three regional offices in Chicago, Dallas, and New York.

7.      Based on my knowledge and experience, I do not think that the Department of Education can meet its statutory obligations described above if the Vendor Performance Division is abolished.

8.      I believe the RIF will result in improprieties and errors by contracted agencies, resulting in potential harm to borrowers. The legacy loan portfolios that my Branch oversees includes billions of dollars that need to be serviced. As long as these loans are being serviced, we need monitoring and oversight of award-servicing contract entities.

9.      There is risk involved in leaving contracted agencies to police themselves. For example, my unit was responsible for catching interest billing errors by commercial servicer entities which could impact borrowers' payment and result in overbilling to the Department. We also ensure that guaranty agencies that promise to guarantee loans properly pay claims to the

lender or servicer because if they incorrectly submit insurance reports, we may never recoup millions of dollars owed to the government. In the absence of the gatekeeper, these entities may neglect their obligations under federal laws and regulations.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on March 22, 2025.

_Doe Declarant 10_

DOE DECLARANT 10