# EXHIBIT 81

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>  Plaintiffs,<br><br>    v.<br><br>LINDA McMAHON, *et al.*,<br><br>  Defendants. | C.A. No. 1:25-cv-10601<br><br>**DECLARATION OF BRITTANY COLEMAN** |

## <u>DECLARATION OF BRITTANY COLEMAN</u>

Pursuant to 28 U.S.C. § 1746, I, Brittany Coleman, hereby declare as follows:

1. I am a resident of Texas. I am over the age of 18 and have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the chief steward of AFGE Local 252, a role I have held since February 2020. I am also a Civil Rights Attorney at the Department of Education's Office of Civil Rights (OCR), a position I have also held for five years.

3. This declaration is submitted in support of the States' Request for a Preliminary Injunction.

4. As chief steward of AFGE Local 252, I oversee a team of union stewards and the work that we do representing bargaining unit employees in grievances, equal employment opportunity (EEO) matters, salary overpayments, and unfair labor practice complaints. I also attend bargaining sessions, formal union meetings, and assist AFGE Local 252's president, Sheria Smith, with any other tasks for the union.

5.      The bargaining unit for AFGE Local 252 includes roughly 2,800 employees nationwide who are non-supervisors, non-managers, and non-politically appointed employees in the Department of Education ("the Department").

6.      As chief steward of AFGE Local 252, I have personal knowledge and experience with the protocols required when an agency implements a RIF. I also have knowledge of what has happened at the Department since the RIF was initiated based on documents I have received, meetings I have attended, and conversations with Department staff and union members I have had in my capacity as chief steward of the union.

7.      The protocols and regulations that govern RIFs are laid out in 5 C.F.R. Part 351 and in AFGE Local 252's collective bargaining agreement (CBA) with the Department. According to RIF procedures, the agency must establish "competitive areas," which are parts of the agency that are impacted by a RIF and constitute the boundaries in which staff members can compete to be "retained" in the agency based on factors such as seniority, veteran status, or performance. Employees may have the right to "bump" (replace) another employee with lower retention standing in the same competitive level, or to "retreat" to a previously held position. According to our CBA, the Department also must provide affected employees with a "retention register" listing who has seniority, veteran status, and rehire rights. These procedures serve not only to protect employees' rights, but also to ensure that the Department does not eliminate the staff who are most experienced, qualified, and high performing in their duties.

8.      On March 11, 2025, AFGE Local 252 received a formal notice of the Department's "intent to implement a department-wide reduction-in-force (RIF)." A true and accurate copy of this notice is found at Exhibit 49 to ECF No. 70, Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction, at Exhibit 1 to the Sheria Smith

Declaration ("the March 11 RIF Notice"). Exhibit 2 to the Sheria Smith Declaration is a true and accurate copy of a chart provided by the Department attached to the same email which depicts the Department's determination of competitive areas ("the Competitive Areas Chart").

9. Also on March 11, 2025, in my capacity as an employee of the Department, I received an email from Chief Human Capital Officer, Jacqueline Clay, stating, "your organizational unit is being abolished along with all positions within the unit—including yours." I understood this email to mean by my "organizational unit," the Dallas Branch of OCR ("OCR-Dallas"). I understand that every staff person in OCR-Dallas has been included in the RIF.

10. It became clear to AFGE Local 252 that the Department had made the decision to eliminate entire units, as depicted in the red shaded areas of the Competitive Areas Chart, without examining individual positions within them. In one case, we assisted a bargaining unit employee in filing a grievance after he received notice he was subject to the RIF but the notice incorrectly listed him as belonging to a unit he did not work in. The Department rescinded this individual's RIF notice and reinstated him.

11. Following the March 11 RIF Notice, AFGE Local 252 requested briefings with the Department. Our first briefing took place on April 4, 2025. Sheria Smith and I were present on behalf of the union, as well as two counsel for the union. Representing the Department, the meeting was attended by Deputy Secretary Richard Smith, Mary Lewis (Labor and Employee Relations Specialist (Contractor)), Adriane Riase, the Director and Chief Negotiatior of the Labor Employee Relations Division of the Office of Human Resources, and Abel Hernandez (Labor and Employee Relations Specialist).

12. During the April 4th briefing, we asked a number of questions that the Department could not answer. For example, we asked when staff would be provided the retention register and

were told that that was not yet "identified." We also asked how the agency determined which offices to eliminate and who made that determination. Richard Smith responded, "I don't have that information."

13. We further questioned how the Department made the decision to transfer the work of some units that were abolished to other units. For example, Sheria Smith stated that she sat in on a meeting with the Office of Safe and Supportive Schools (OSSS), within the Office of Elementary and Secondary Education (OESE), wherein staff stated that they are absorbing statutorily required work from the Office of English Language Acquisition (OELA), which was completely abolished. Ms. Smith asked how the determination was made to RIF all of OELA when some bargaining unit employees in OELA would have retention rights that superseded other staff people who remained in OSSS. The Department could not answer this question.

14. Ms. Smith further asked how the work of offices that were abolished in the RIF would be performed, and how the performance of remaining staff would be measured as their duties change to absorb the work of offices that were abolished. For example, she mentioned there was a reorganization in OCR that increased the docket for attorneys to 300 cases. The Department was not able to answer this question either.

15. On April 8, 2025, Adriane Riase sent to the AFGE Local 252 a document entitled "Agency Response to Follow-up Questions (Presented During April 4, 2025, Reduction in Force Briefing)." The email was sent to the AFGE Local 252 email address to which I have access. A true and accurate copy of this document is annexed hereto as **Exhibit 1**. The document reflects questions that AFGE Local 252 representatives asked verbally during the April 4th briefing and the Department's responses to these questions.

16. According to the document provided in Exhibit 1, as of April 8, 2025, the Department was still in the process of assessing what work from offices that were subject to the RIF would need to be reassigned and "[a] determination has not yet been made regarding any transfer of statutorily mandated functions."

17. On April 9, 2025, we had a second briefing with the Department. I attended on behalf of AFGE Local 252, in addition to one counsel and two other stewards of the union. The Department was represented by Adriane Riase, Stephanie Stone (Human Resources Specialist), and Mary Lewis (Labor and Employee Relations Specialist (Contractor)).

18. During the April 9th briefing, the Department was still not prepared to provide us the retention register. Adriane Riase informed us that the decisionmakers responsible for defining the competitive areas of the RIF were Denise Drew, Director of Talent Recruitment and Hiring, and Bonnie Hochhalter, Deputy Chief Human Capital Officer. Neither of these individuals were present at either briefing we had with the Department.

19. During the April 9th briefing, the Department was also not yet prepared to tell us exactly when the formal RIF notice would be sent out. They also said that employees who were sent the March 11th email notices of the RIF did not constitute the final list of employees being terminated in the RIF. However, they were unable to explain to us any difference in the universe of employees subject to the March 11th notice and the final RIF.

20. On April 10, 2025, I received by email a "specific RIF notice" that informed me that my position was being abolished. A true and accurate copy of this notice is annexed hereto as **Exhibit 2**. I understand that the specific RIF notice was sent to employees subject to the RIF across the Department.

21. I understand that even though the RIF has now been formalized, the Department has still not determined how it will complete its statutory functions without the terminated staff. Based on my experience sitting in on several staff meetings as a representative of AFGE Local 252, I understand that many Department offices have been left reeling in the wake of the RIFs and are still figuring out how—and if—they can complete their statutorily mandated work. For example, I sat in on an all staff meeting of the Institution for Educational Sciences (IES) on March 27, 2025, in which staff discussed how they would need to compile a list of core responsibilities that cannot be accomplished because the division was cut from 200 to 20 staff and/or because the remaining staff lacked the skills to perform them.

22. As another example, on April 9, 2025, AFGE Local 252 received an email from the Department informing us that 60 bargaining unit employees in FSA would be placed on a 120-day detail reassigning their duties to cover work that could not be performed because of RIFs and other staff lost through voluntary incentives in the Institution of Higher Education (IHE) Oversight and Enforcement, including the elimination of seven out of nine School Participation Sections. A true and accurate copy of this email is annexed hereto as **Exhibit 3**. The work includes adjudication of borrower defense applications required to be completed under the *Sweet v. Cardona* class action lawsuit and statutorily-mandated school eligibility determinations and oversight.

23. I attended a meeting on April 11, 2025 with FSA staff who were being detailed in my capacity as chief steward of AFGE Local 252. Many staff voiced frustration that they were not trained or competent to complete this work, and that it did not make sense that the people who have expertise in completing this work were terminated if it still needed to be done. Management said they had no choice but to detail a certain number of people and they weren't

even sure that they had enough people to detail when they received the initial directive to detail their employees.

24. On April 16, 2025, further meetings were held with the detailed FSA employees. The manager overseeing these details said that she herself was not aware why senior leadership made the decisions to change FSA staffing and leadership, but that the managers were doing their best to implement the directives. The manager said the details were in place to assist their colleagues who were "stretched thin," "facing a lot of challenges," and had "a lot on their plate," in the wake of the RIFs. I also learned that because the detailed staff are from the Administrative Actions and Appeals Branch, Borrower Defense Branch, and Clery Branch, all of the Institution Enforcement Division, the work that those branches do—which is also statutorily required—will be paused for 120 days.

25. The specific RIF notice in Exhibit 2 defined my competitive area as OCR-Dallas. Prior to the RIF there were 12 regional OCR offices. Seven of the regional offices were eliminated in the RIF, leaving only five to complete the division's work. Because my competitive area was OCR-Dallas rather than all of OCR, the Department has effectively eliminated my right to take precedence over a less senior or highly performing employee in one of the regional OCR offices that remain. Despite our repeated requests, the Department has provided no explanation for why some regional offices were kept and others were abolished. Both Sheria Smith and I—vocal leaders of AFGE Local 252—were staff members of OCR-Dallas, which was eliminated in the RIF. In fact, every board member of AFGE Local 252 was included in the RIF except for two board members who had taken the Deferred Resignation Program offer.

26. OCR's work is mandated by statutes like the Civil Rights Act of 1964 and the Americans with Disabilities Act. OCR-Dallas was the largest OCR office with the most employees and the highest caseload—roughly 50 cases per attorney—prior to the RIF. I understand from an employee who still works at the Department that the average case load at the remaining OCR regional offices is now 300–350 and that the Kansas City OCR office is now responsible for all OCR-Dallas' cases in addition to their own. I do not believe OCR's statutorily mandated work can completed by the few staff remaining in OCR, especially with such impossibly heavy caseloads.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on April 17, 2025.

*Brittany Coleman*

_____
BRITTANY COLEMAN

# EXHIBIT 1

# Agency Response to Follow-up Questions
# (Presented During April 4, 2025, Reduction in Force Briefing)

**Questions re: Planned Movement of Work and Impact:**

1. Who is doing the work of the offices that have been closed. They mentioned OCR work being transferred from employees who have been identified to be RIF'ed to other employees not being RIF'ed.

    - **Response:** The agency will assess the work remaining at the Department and determine if a reorganization is necessary and/or reassignments of remaining employees.

2. Will we be updating the performance plans of the employees picking up the new work?

    - **Response:** If warranted and employees are reassigned to new PD, they will receive new performance plans

3. The transfer of statutorily mandated functions, how is this being carried out when employees who were doing this work were RIF'd?

    - **Response:** A determination has not yet been made regarding any transfer of statutorily mandated functions

4. AFGE stated that it heard that some persons on the impacted by RIF list were removed. They mentioned that employees in FSA were brought back—why were they returned and not others?

    - **Response:** Because the planned RIF has not yet been implemented, the proposed list of positions to be impacted is still being finalized. The final list will be created consistent with the agency's discretion to determine the positions that need to be retained.

5. AFGE said that it heard some employees were reassigned to a group that was not impacted by a RIF from one that was – Employee(s) moved from OELA to OSSS(OESE).

    - **Response:** All BU employees within OELA covered by RIF regulations received a letter of intent to RIF.

6. AFGE would like to know which employees (BUES), (by name), were not impacted by the impending RIF. Mr. Smith described this as a ("crosswalk").

    - **Response:** This retained BU list can be provided after it is finalized.

**Questions re: Process used to RIF employees:**

1. How the Agency identified waste, bloat, and insularity

    - **Response:** The agency reviewed the statutory required functions, the administration's priorities and determined the positions that would not need to be retained to accomplish those functions and support those who are accomplishing those functions.

2. How and who (specifically) identified the persons to be RIF'ed?

    - **Response:** The agency made the determination based on positions to that did not meet the criteria noted in #1 above.

3. AFGE requested a more detailed explanation of retention registers (competitive levels)

    - **Response:** A "retention register" is a list of employees that is ranked in the order of their relative retention standing. A "competitive level" consists of positions in the competitive area that are: (a) in the same grade (or occupational level); (b) in the same classification series; and (c) similar enough in duties, qualification requirements, pay schedules, and working conditions, so that an agency may reassign the incumbent of one position to any of the other positions in the level without causing undue interruption in the agency's work.

4. AFGE requested a more detailed explanation of the competitive area.

    - **Response:** Each agency must establish competitive areas that are the boundaries within which employees compete for retention under the RIF regulations. The competitive area includes all employees within the organizational unit(s) and geographical location(s) that are included in the competitive area definition. In any one RIF, an agency may not use one competitive area for the first round of competition, and a different competitive area for the second round of competition. Employees in a competitive area compete for retention under the RIF regulations only with other employees in the same competitive area. Employees do not compete for retention with employees of the agency who are in a different competitive area. There is no minimum or maximum number of employees in a competitive area. An employee who teleworks competes in RIF on the basis of the duty station or work site documented for the employee's official position of record.

5. Are the grievance rights in the RIF notice, correct? (Providing a template might resolve that concern.)

    - **Response:** See attached copy of the notice to be issued.

6. How do retention and reemployment rights work in this situation?

    - **Response:** If there are current Career Transition Assistance Plan (CTAP) eligibles in ED (i.e., ED employees in a RIF notice period), then every vacancy subject to the internal CTAP (as defined by the regulations) will be announced in the appropriate commuting area on USAJOBS.gov. It is permissible for a merit promotion announcement to be issued concurrent with CTAP advertising. However, the widest recruitment area allowed initially will be ED-wide. If no well-qualified CTAP eligibles are found, then recruitment outside the agency may proceed.

        ED maintains a Reemployment Priority List (RPL) for employees in accordance with the current regulations and will continue to do so in order to give appropriate rehiring priority to employees separated by RIF.

**Questions re: Employees Encumbering Positions Impacted by RIF:**

1. How impacted BUEs must handle outside employment and what effect such employment would have on their severance

    - **Response:** Reemployment in the Federal government or the government of the District of Columbia would end severance pay. Employment in private sector would not.

2. E-OPF Access for employees who no longer have access?

    - **Response:** Employees can email eopf@ed.gov and request a copy of their eOPF.


**AFGE Request to Hold Issuance of RIF notices Until Response to Questions is Provided:**

1. The Union would like to reconvene once the Agency has responses to the Union's questions. The Union requests that the Agency not send RIF letters to BUEs until the parties have discussed the Agency's responses to the aforementioned queries. AFGE offers Friday, April 18, 2025, at 10:00am – 11:30am to continue this discussion because both parties have identified availability at that time.

    - **Response:** The agency can accommodate AFGE's request to meet tomorrow morning; however, one (1) or more of the briefing participants may not be available for the meeting.

2. If the Agency must send RIF notices before that day, please inform the Union when the Agency is available to reconvene to discuss the unanswered questions prior to the dissemination of RIF notices.

    - **Response:** The agency intends to issue RIF notices as early as Wednesday, April 9, 2025, or soon thereafter.

# EXHIBIT 2

UNITED STATES DEPARTMENT OF EDUCATION

April 10, 2025

**MEMORANDUM**

TO:  Coleman, Brittany A
GENERAL ATTORNEY( CIVIL RI, GS-905-13
OCR, TEAM G (DALLAS)

FROM:  Jacqueline Clay
Deputy Assistant Secretary
Chief Human Capital Officer
Office of Human Resources
Office of Finance and Operations

SUBJECT:  Notice of Separation Due to Reduction in Force

In accordance with the Executive Order titled *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative*, dated February 11, 2025, it is with great regret that I must inform you that your position of GENERAL ATTORNEY( CIVIL RI, GS-905-13 is being abolished and you have been reached for reduction in force (RIF) action. This memorandum constitutes a specific RIF notice.

Effective June 10, 2025, ED will conduct a RIF within your competitive area. This action is a result of the abolishment of your position in OCR, TEAM G (DALLAS).

This RIF is in accordance with current law and regulations, which include Chapter 35 of Title 5, United States Code, 5 Code of Federal Regulations, Part 351, internal U.S. Department of Education (ED) policy, and where applicable, the governing collective bargaining agreement between AFGE and ED. In accordance with these provisions, ED will release you from your competitive level, and you do not have an assignment right to another position in your competitive area. As a result, your separation from the Federal service by RIF on June 10, 2025.

To conduct the RIF, the Office of Human Resources (OHR) prepared retention registers which listed employees in retention standing order based on civil service tenure, veterans' preference, length of Federal service and performance ratings. We used the following information to determine your retention standing as of the RIF effective date:

**Competitive Area:** ECD6
**Service Type:** Excepted
**Position Title, Pay Plan, Series and Grade:** GENERAL ATTORNEY( CIVIL RI, GS-905-13
**Competitive Level:** C6F

**Tenure Group:** 1, CAREER APPT OR EXC (NOT ON TRIAL PD & W/O TIME LIMIT)
**Retention Tenure/ Subgroup:** 1B
**Service Computation Date (SCD):** July 7, 2019
**Latest Three Performance Evaluations:**
Rating Performance and Pattern FY24: 3
Rating Performance and Pattern FY23: 3
Rating Performance and Pattern FY22: 5
**SCD adjusted by latest three performance ratings:** July 7, 2001

Attached to this letter is an Employee Guide to RIF Benefits which contains information regarding leave and other benefits available to employees separated by RIF, as well as information on the ED Career Transition Assistance Plan. In addition, you may authorize OHR to release your qualification information to Federal, state, and private sector agencies and organizations by completing the attached release authorization. Information regarding benefits available under the Workforce Investment Act of 1998 Program, including unemployment insurance is located at
http://www.doleta.gov/usworkforce/WIA/planstatus.cfm.

You may be eligible to receive severance pay. If you are eligible for severance, we will process payment upon separation. If you think you may be eligible for discontinued service or regular retirement, please see the Employee Guide to RIF Benefits for more information or contact benefits@ed.gov. **Note:** You are not eligible for severance pay if you are eligible for an immediate annuity under Minimum Retirement Age (MRA) +10, optional or discontinued service retirement.

If you resign on or before the RIF effective date of June 10, 2025, ED will still consider your separation involuntary. Please be advised that you may affect your appeal rights if you resign. You are strongly encouraged to contact OHR for information if you are considering resigning during this specific notice period.

OHR staff are available to assist you by explaining this proposed action and will provide you with copies of pertinent regulations, benefits information, or other material related to this action that you may wish to review. Title 5 of the Code of Federal Regulations Part 351 contain the RIF regulations. OHR will provide a copy to you upon request. You may also inspect the appropriate retention register through the OHR. You may obtain any information in writing by sending your request to the ED RIF Team, email: WorkforceReshaping@ed.gov.

You may have the right to appeal this action to the Merit Systems Protection Board (MSPB). Should you elect to appeal to the MSPB, your appeal must be in writing and submitted no later than 30 calendar days after the effective date of the reduction in force action. For more information, please visit www.mspb.gov or contact your local MSPB regional or field office (see attached). However, if you are a bargaining unit employee, you must use the negotiated grievance procedures and may not appeal to the MSPB unless you allege that the RIF action was based upon discrimination.

Alternatively, you may file an electronic appeal at https://e-appeal.mspb.gov/. See *How to File an Appeal* at http://www.mspb.gov/appeals/appeals.htm.  If you file an appeal the MSPB must serve an acknowledgement order to the following address:

Office of the General Counsel,
U.S. Department of Education
400 Maryland Ave, SW
Washington, DC  20202

If you believe this action is because of a prohibited personnel practice other than discrimination based on your race, color, religion, sex, national origin, age, disability, marital status, or political affiliation, you may seek corrective action with the Office of the Special Counsel (OSC). Your decision to file an MSPB appeal or to seek corrective action from the OSC is exclusive and irrevocable.  See Prohibited Personnel Practices Overview for more information about seeking corrective action.

If you believe this action is because of race, color, religion, sex (including pregnancy), national origin, physical disability, genetic information, or age, you may file a complaint with Office of Equal Employment Opportunity Services by email at ODS_OEEOS@ed.gov. To initiate a complaint, you must contact an ED Equal Employment Opportunity Counselor within 45 days of the effective date of this action.

This RIF action is not a reflection upon your performance or conduct. It is solely due to the reduction in the number of positions as described earlier in this letter. ED appreciates the service you have rendered. We deeply regret that this decision affects you, and we recognize the difficulty of the moment.

**Attachments:**
RIF Information Sheet
Employee Guide to RIF Benefits
ED Placement Programs
Reemployment Priority List Registration Form
Authorization to Release Qualifications Information
Severance Pay Information
MSPB Appeal Offices Locations

Sent by email to: ███████████████████

No hard copy to follow

# EXHIBIT 3



AFGE Local 252 <​█████████████████████>

# Courtesy Notice Federal Student Aid (FSA) Employee Details for Priority Workload
2 messages

**Labor Relations** <​████████████████████>  Wed, Apr 9, 2025 at 12:43 PM
To: "████████████████" <​████████████​>
Cc: Labor Relations <​████████████████​>, "Steuerman, Mel (Contractor)" <​████████████████​>, "Alix, Cheryl (Contractor)" <​████████████████​>

CONTROLLED UNCLASSIFIED INFORMATION

**CONTROLLED UNCLASSIFIED INFORMATION**

Hello AFGE,

This is a courtesy notice that approximately 60 bargaining unit employees in Federal Student Aid (FSA) will be placed on a 120-day detail, in accordance with Article 19, Non-competitive Reassignments and Details, to unclassified duties that is necessitated by workload. FSA and Department leadership directed that Institution of Higher Education (IHE) Oversight and Enforcement and IHE Program Management reallocate staffing resources to prioritize two FSA workstreams with existing backlogs or imminent deadlines:

1. Adjudication of borrower defense applications covered by the *Sweet* class action settlement that must be completed by January 2026; and,
2. School eligibility determinations and related Oversight work.

The bargaining unit employees will be detailed from the Investigations Branch, the Administrative Actions and Appeals Branch, and the Clery Branch of the Enforcement Division, and the Training and Information Services Branch within the IHE Program Management. In addition, bargaining unit employees from the Oversight Division Front Office, Cohort Default Rate Branch and the Performance Management Branch of the Oversight Division will be detailed. The attached spreadsheet contains the names of the bargaining unit employees who will be detailed, the offices from which they will be detailed, their detail workload assignment (Oversight as listed on the spreadsheet as SEOSB or Sweet Ligation listed on the spreadsheet as BD), and their rating and reviewing officials for the detail. Employees who are detailed will receive appropriate training based on their level of experience with the workload they are assigned. In addition, the employees will receive performance plans for their detail assignments within 30-calendar days after the beginning of the detail.

The above details will begin on or about Friday, April 11, 2025, due to pressing work conditions that preclude a full 10-day advance notice to the affected employees. The details are expected to remain in effect for a period of 120 days and may be extended if needed. The details will be recorded on a SF-52, Request for Personnel Action, as a permanent record in the employees' eOPF. All other work within Oversight and Enforcement will be temporarily de-prioritized to provide the resources necessary to assist in resolving these two priority workloads.

An oral explanation will be given to the affected employees when the notice of detail is given (for example, notice may be given at an upcoming staff meeting), with a written explanation, such as an email to everyone being detailed within 5 workdays from the effective date of the details.

Impacted offices may schedule staff meetings with employees to go over the details with them. AFGE will be given appropriate notice and invited to attend these meetings.

If you have any questions, please contact Mel Steuerman at ▓▓▓▓▓▓▓▓▓▓▓▓ or Cheryl Alix at ▓▓▓▓▓▓▓▓▓▓.

Thank you for your understanding.

**Sensitive in accordance with 32 CFR Part 2002**

Controlled by Department of Education OFO LERD

**Labor and Employee Relations Division**

Office of Human Resources

U.S. Department of Education

Email Address: ▓▓▓▓▓▓▓▓▓▓

**Sensitive in accordance with 32 CFR Part 2002**


**Copy of Assignments_BU Notification_4.7.2025.xlsx**
28K

---

**AFGE Local 252** <▓▓▓▓▓▓▓▓▓▓>  Wed, Apr 9, 2025 at 1:29 PM
To: Denise Alves <▓▓▓▓▓▓▓▓▓▓>

[Quoted text hidden]


**Copy of Assignments_BU Notification_4.7.2025.xlsx**
28K