# EXHIBIT 84

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| |
|---|
| STATE OF NEW YORK, *et al.*; |
| Plaintiffs, |
| v. |
| LINDA McMAHON, *et al.*; |
| Defendants. |

C.A. No. 1:25-cv-10601-MJJ

**<u>DECLARATION OF DOE DECLARANT 21</u>**

Pursuant to 28 U.S.C. § 1746, I, Doe Declarant 21, hereby declare and state as follows:

1.      I am over the age of 18 and have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.  In preparing this declaration, I have reviewed the transcript for a preliminary injunction hearing held on April 25, 2025 at 2:00 PM ET in the above-captioned matter.  At points below, I reference specific statements or claims made by counsel for the Federal Defendants during that hearing; where I do so, I refer to the page and line number at which such argument occurs within that transcript.

2.      This declaration is being submitted in support of the States' Request for a Preliminary Injunction.

3.      Prior to receiving a reduction-in-force ("RIF") notice from the U.S. Department of Education (the "Department"), I was employed as the Deputy Performance Improvement Officer within the Department.  I also served as the Acting Performance Improvement Officer.  I served in both capacities since January 2025.  All told, I have worked for the Department in various capacities for approximately ten years.

1

4.      Generally, the Performance Improvement Office for the Department reports to the Deputy Secretary of the Department.  Because that role was empty for the last several months, however, I reported directly to the Acting Secretary of the Department, Denise Carter.  I participated in biweekly meetings with Acting Secretary Carter from January until March 13, 2025.

5.      The Performance Improvement Officer role is statutorily mandated, and I reported in response to an agency-wide request that each of the nine members of my team's work aligned with statutory requirements.  Our functions are required by the Government Performance and Results Act Modernization Act of 2010, among other statutes.

6.      On March 11, 2025, I received an email notification from the Department's Chief Human Capital Officer informing me that my position and my team would be abolished by the RIF.  Shortly thereafter, my work phone ceased operating, and my work computer's functionality was severely limited.

7.      Upon learning that my team and I had been impacted by the RIF, I became concerned that the Department would be unable to fulfill its obligations under the Government Performance and Results Act Modernization Act of 2010.  In preparation for our biweekly meeting, I used our standard meeting agenda template to highlight for Denise Carter[1] my concerns and requested written responses to several questions pertaining to how the Department would continue to meet its statutory obligations and if, and to whom, the functions from my team would be transferred to among other remaining employees within the Department. A true and accurate screengrab of a portion of that agenda is included below:

---

[1] My understanding is that Denise Carter served as Acting Secretary of the Department from late January 2025 until early March 2025.  At the time I received the March 11, 2025 RIF email, my understanding is that Carter continued to serve as a senior officer within the Department.



Checkin Agenda 3-13-25

Executive Check-in Agenda

**Office Name: Performance Improvement Office**
**Date: 03/13/2025**

| Topic | Status, Including Resolution | Decision/ Guidance |
|---|---|---|
| **PROGRAM INITIATIVES/ PRIORITIES** | | |
| **Statutory Requirements and Agency Restructuring** | **Status**: The work of the PIO team is guided by statutory requirements. Primarily the Government Performance and Results Act Modernization Act of 2010 (Public Law No: 111-352), the Government Performance and Results Act of 1993 (Public Law No: 103-62), and the Federal Agency Performance Act of 2024 (Public Law No: 118-190). These laws and accompanying regulations, such as OMB Circular A-11, set out the requirements for the deliverables and processes produced and managed by the PIO team, such as the Agency Strategic Plan, Annual Performance Plan, Annual Performance Report, Agency Priority Goals, and Strategic Reviews, as well as the requirement for each agency to have a Performance Improvement Officer. The attached table further outlines the governance and alignment of PIO's work with statutes and other federal requirements.<br><br>**Questions** (written responses requested):<br>• With the abolition of the entire Performance Improvement Office, how will these statutory and regulatory obligations be met going forward?<br>• If this function is being transferred to another division, is there an opportunity for PIO staff to transfer with the work?<br>• If this function is being transferred to another division, please clarify which workstreams are being transferred to which divisions and the appropriate points of contact.<br><br>**Roadblock**: Current network restrictions will prevent the team from being able to share existing resources with others. | |

8. Because I could no longer access Teams on my work computer, Denise Carter's assistant forwarded our bi-weekly call invitation, scheduled for March 13, 2025, to my personal email. A true and accurate screengrab of that invitation is included here:



ODS PIO Status Update Meetings Inbox ×

**Hyatt, Shannon** <Shannon.Hyatt@ed.gov>
to me

Mar
13
Thu

ODS PIO Status Update Meetings
View on Google Calendar

When Thu Mar 13, 2025 3pm – 3:30pm (EDT)
Where Microsoft Teams Meeting
Who [redacted]ed.gov, richard.smith@ed.gov, Lucas, Richard J., Carter, Denise*

Yes Maybe No More options

---

**Microsoft Teams** Need help?

**Join the meeting now**

Meeting ID: 291 129 004 368

Passcode: er6Xz2WL

---

**Dial in by phone**

+1 202-991-0393,,813609853# United States, Washington

Find a local number

Phone conference ID: 813 609 853#

For organizers: Meeting options | Reset dial-in PIN

---

9. As a result, I spoke with Denise Carter and Richard Smith, another high-ranking Department official, on March 13, 2025 via Teams about the transfer of my team's statutory functions to others within the Department. This conversation occurred two days after the RIF was

initially announced and approximately seven days before President Trump issued his executive order calling for the dismantling of the Department.[2]

10.    During that call, I asked Carter about the transfer of statutory functions from my team to others.  Carter responded by informing me that another high-ranking official within the Department, Richard Lucas, would nominally be designated as Acting Performance Improvement Officer, in addition to his other responsibilities.  Lucas had, several weeks earlier, also been named the Department's Director of Budget Service, after the Department's long-serving prior Director of Budget Service left, having accepted the Deferred Resignation Program.  Carter instructed me to put together a transition memorandum for Lucas, explaining my team's responsibilities.

11.    When asked if my team would be allowed to transfer with our work to Budget Service, Carter then stated that Budget Service would not be performing the work, but that Lucas would oversee the winding down of the work. She stated that because the Department as an agency was winding down, and would not exist moving forward, it would not be responsible for meeting the statutory functions performed by the Performance Improvement Officer.  She told me that she had recently spoken with a counterpart at the U.S. Agency for International Development ("USAID"), and compared the Department's future to that of USAID, which has been functionally eliminated by the Trump Administration.  She told me that USAID, in this functionally eliminated state, had declined to meet other statutory obligations and compared it to the Department no longer

---

[2] Carter announced that she would be departing the Department a little less than three weeks after my conversation with her on March 13, 2025.  *See* "U.S. Department of Education Announces Retirement of FSA Chief Operating Officer," Ed.gov (Apr. 2, 2025), accessed at: https://www.ed.gov/about/news/press-release/us-department-of-education-announces-retirement-of-fsa-chief-operating-officer#:~:text=U.S.%20Department%20of%20Education%20Announces%20Retirement%20of%20FSA%20Chief%20Operating%20Officer,-April%202%2C%202025&text=The%20U.S.%20Department%20of%20Education,30%20years%20in%20public%20service.

meeting its obligations under the Government Performance and Results Act Modernization Act of 2010. It is my understanding that Carter made these statements based on her experience as Acting Secretary of the Department through early March 2025, and as a senior official within the Department following Secretary McMahon's confirmation.

12.    As noted above, in connection with preparing this declaration, I have had the opportunity to review a transcript of a hearing on the States' request for a preliminary injunction, which was held on April 25, 2025.  Based on my experience and my March 13, 2025 conversation with former Acting Secretary Carter, I believe that several representations and arguments presented to the Court by the Department of Justice during that hearing are, at best, inaccurate and misleading.

13.    The main thrust of Attorney Hamilton's argument to the Court appears to be that the RIF had no relationship to the administration's efforts to dismantle the Department, and the Executive Order and President Trump's and Secretary's McMahon's comments about the Department's future simply referred to the Trump administration's legislative agenda.   In his opening remarks, for instance, Attorney Hamilton states that President Trump's "administration has made it a legislative priority to close the Department of Education, but that's distinct from his administrative agenda to cut bureaucratic bloat wherever it exists.  That's a mandate that applies equally to the Department of Education and other agencies in the Federal Government."  Tr. 30:7-18.  In response to a question from the Court regarding the President's intent, Hamilton again responded that: "I think it's focusing on the legislative agenda of closing the Department of Education and giving states and local authorities more control over decision-making and so that there is less interference from Washington bureaucrats in the Department of Education, but again that's distinct from the administrative agenda of making the Department of Education as efficient

as it can be . . ." Tr. 31:19-25.  Again pushed by the Court to clarify the federal government's position and identify record evidence supporting his assertion, Hamilton stated: "I think the State Plaintiffs have attached a number of statements by the President and Secretary McMahon that talk about the goal of closing the Department of Education.  Defendants acknowledge that that requires an act of Congress, our brief says that, and the work that the Defendants are doing to make the Department more efficient today is separate from that legislative goal." Tr. 32:9-15.

14.    Hamilton's representations to the Court appear to conflict with former Acting Secretary Carter's representations to me, made before President Trump's executive order was formally issued and after the RIF had been announced.  My understanding from Carter's statements in March 2025 was that the RIF represented a concrete step towards the complete elimination of the Department, and I interpreted her reference to USAID and her indifference toward the Department's ability to fulfill its statutory functions, which includes statutorily required deliverables with deadlines due as early as this spring, to signify that she anticipated the Department would be eliminated in its entirety in short order.  Carter never mentioned a legislative agenda, pending legislation, or any parallel effort to seek Congressional approval prior to enacting the dismantling of the Department.  Rather, the analogy to USAID strongly suggests in my view that Carter believed that the Trump Administration could effectively dismantle the Department without Congressional approval, and that it had begun to do so with the RIF.

15.    Later in the hearing, Hamilton informed the Court that "the Department is committed to carrying out its statutory obligations until there is an act of Congress that changes the Department's statutory obligations." Tr. 41:17-19.  Based on Carter's statements to me on March 13, 2025, it is my belief and understanding that Hamilton's representation to the Court is

inaccurate, at least with respect to the statutory functions entrusted to the Performance Improvement Officer by the Government Performance and Results Act Modernization Act of 2010.

16.    If the Court wishes to question me on any of the information contained herein *in camera*, I stand ready to testify regarding the same at the Court's convenience.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.


Executed this 2nd day of May, 2025.

/s/ <u>Doe Declarant 21</u>
            Doe Declarant 21

8