# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, | |
| Plaintiffs, | Case No. 1:25-cv-10601-MJJ |
| v. | |
| LINDA McMAHON, *et al.*, | |
| Defendants. | |

| | |
|---|---|
| SOMERVILLE PUBLIC SCHOOLS, *et al.*, | |
| Plaintiffs, | Case No. 1:25-cv-10677-MJJ |
| v. | |
| DONALD J. TRUMP, *et al.*, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DISCOVERY

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................ii

INTRODUCTION ................................................................................................... 1

BACKGROUND ...................................................................................................... 2

ARGUMENT ........................................................................................................... 3

    I.      The Court Should Order Defendants to Complete the Record. ............................. 6

    II.     The Court Should Order Supplementation of the Record to Aid the Court's
           APA Review. ..................................................................................................... 10

    III.    The Court Should Order Extra-Record Discovery to Determine the True
           Reasoning Behind Defendants' Actions to Dismantle the Department................ 12

    IV.    The Court Should Order Discovery on the Harm to Plaintiffs and Other
           State and Local Education Agencies.................................................................... 15

CONCLUSION ...................................................................................................... 17

## INTRODUCTION

The State Plaintiffs and Somerville Plaintiffs (together, the Plaintiffs) allege that the Secretary of Education Linda McMahon (Secretary) and the U.S. Department of Education (together, the Agency Defendants, and with President Donald J. Trump, the Defendants) violated the Administrative Procedure Act (APA) and the U.S. Constitution by attempting to abolish a Congressionally established agency through an unlawful reduction in force (RIF) and reorganization. Plaintiffs are entitled to evidence pertinent to those claims, but the threadbare Administrative Record (AR) proffered by the Department of Education (Department) is plainly deficient. Critically, while the AR includes general materials such as organizational charts and instructions for terminated employees, it includes *no* documents adequately explaining how, why, or by whom the decision to terminate 1,300 Department of Education employees was made; why particular groups of employees were terminated; why the Department was reorganized and certain offices within the Department were completely hollowed out; or how the Department could carry out its statutory mandates with a halved workforce. These facts are essential to this Court's evaluation of the Department's adherence to or violation of the APA.

Accordingly, Plaintiffs respectfully request that the Court require Defendants to respond to the types of discovery that are permissible under the APA in circumstances like these. Plaintiffs ask the Court to: (1) direct Agency Defendants to complete the AR and produce a log of documents relevant to the claims but withheld from the AR on privilege grounds; (2) order supplementation of the AR with agency records related to the factors that an agency is required to consider under the APA before taking action, particularly when such action disturbs a long standing status quo; and (3) order extra-record discovery to clarify which of the various rationales the Defendants have publicly articulated for their actions were considered and endorsed by decisionmakers before the Reduction in Force (RIF) and reorganization were announced and to determine whether there were

bases for the actions that Agency Defendants have concealed from public view. In addition, Plaintiffs request that the Court permit narrowly tailored discovery on their assertions of irreparable harm. Attached for this Court's review is proposed discovery to achieve these goals, including Requests for Production (Exhibit A); Interrogatories (Exhibit B); Requests for Admission (Exhibit C); and a notice of a Rule 30(b)(6) deposition for the Department (Exhibit D).

## BACKGROUND

In March 2025, Plaintiffs sued President Trump and the Agency Defendants, seeking preliminary and permanent injunctive relief to stop the President and Agency Defendants from unlawfully dismantling the Department, including by terminating 1,300 Department employees, hollowing out offices, and transferring functions statutorily assigned to the Department to other agencies. (Doc. No. 1[1]; Doc. No. 1, 1:25-cv-10677). On May 22, 2025, this Court granted a preliminary injunction that barred Agency Defendants from implementing the RIF, the President's March 20, 2025 Executive Order to close the Department, and the President's March 21, 2025 Directive to transfer management of federal student loans and special education functions out of the Department. (Doc. No. 128). Defendants appealed.

Defendants also sought a stay of the injunction pending appeal, which both this Court and the First Circuit denied, but which the Supreme Court granted without explanation. *McMahon v. New York*, 145 S. Ct. 2643 (2025). Shortly thereafter, the Department took measures to dismantle the Department and implement the RIF. Around 1,000 Department employees have thus far been terminated. (Doc No. 164 at 2).

On August 1, 2025, Defendants produced documents that they say constitute the AR. (Doc No. 158). The AR is remarkably short, just 155 pages, and contains primarily (1) organizational

---

[1] References to the docket are to Case No. 1:25-cv-10601-MJJ, unless otherwise indicated.

charts, (2) forms that federal employees fill out upon retirement, (3) spreadsheets of impacted positions, (4) emails and instructions to terminated employees, and (5) a memorandum to the Office of Personnel Management (OPM) requesting "Waiver of 90-day Competitive Area Requirement for Reduction in Force" with minimal explanation.

The AR is inconsistent on its face, and lacks decisional documents that would enable this Court to understand who made the decision to dismantle the Department (including implementing the RIF, hollowing out specific offices, and transferring functions to other agencies); how the decision was made; or any of the particulars of the decision necessary for the Court to conduct review of Plaintiffs' APA claims.

Evidence establishing the basis for the Department's decision to eliminate half of its staff is especially critical given the Department's contradictory public and in-court statements on its rationale for instituting the RIF. In its Opposition to Plaintiffs' Motion for a Preliminary Injunction, the Department claimed, "[The RIF] is not intended to shutter the Department." (Doc No. 95 at 3). But just three weeks earlier—and ten days after announcing the RIF—the Secretary wrote in an op-ed, "I took office as secretary of Education with a mission unlike any of my predecessors: to oversee the responsible and permanent closure of the very department I now lead. This is not a routine mission." (Doc No. 102-1). The AR does not provide any evidence for the rationale behind the RIF and reorganization.

## ARGUMENT

The Court should order completion of the record, supplementation of the record, and extra-record discovery to aid its review of this case. In a case challenging agency action, "a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019); *see also Bos. Redev. Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 48 (1st Cir. 2016) ("In a traditional APA case, the focal

point for judicial review should be the administrative record already in existence. . . ." (internal quotation marks omitted)).  The full administrative record includes "not only materials directly considered by the agency decisionmaker, but also all materials that might have influenced the agency's decision, including any work and recommendations of subordinates on which the agency decisionmaker based his or her decision."  *Batalla Vidal v. Duke*, No. 16-cv-4756, 2017 WL 4737280, at *5 (E.D.N.Y. Oct. 19, 2017) (internal quotation marks omitted).  But "[t]he fact that review sometimes or often focuses on the initial administrative record does not mean it must, or always, will do so."  *Valley Citizens for a Safe Env't v. Aldridge*, 886 F.2d 458, 460 (1st Cir. 1989) (Breyer, J.).  "In order to permit meaningful judicial review, an agency must 'disclose the basis' of its action."  *Dep't of Com.*, 588 U.S. at 780 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167-69 (1962)).

A party may seek to add to the initially produced administrative record in several different ways.  First, where a party demonstrates that the agency failed to include in the record materials that influenced the decision-making process, a court may order the agency to complete the record. *Roe v. Mayorkas*, No. 22-cv-10808, 2024 WL 5198705, at *7 (D. Mass Oct. 2, 2024); *see also Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 14 (D.D.C. 2015).

Second, courts may order supplementation of the record with additional documents that should have been part of the decision-making process, but were left out of the administrative record, where the produced record is insufficient to allow for effective judicial review.  For example, a "district court is free to exercise its discretion to permit further discovery 'to ascertain the contours of the precise policy'" under review.  *His. Affs. Project v. Acosta,* 901 F.3d 378, 388 (D.C. Cir. 2018) (quoting *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 928 (D.C. Cir. 2008)); *see Housatonic River Initiative v. EPA*, 75 F.4th 248, 278-79 (1st Cir. 2023); *Camp v.*

*Pitts*, 411 U.S. 138, 142-43 (1973) (where there is "such failure to explain administrative action as to frustrate effective judicial review, the remedy [i]s . . . to obtain from the agency . . . such additional explanation of the reasons for the agency decision as may prove necessary); *City of Taunton v. EPA*, 895 F.3d 120, 127 (1st Cir. 2018) ("[W]e may consider supplemental evidence to facilitate our comprehension of the record or the agency's decision," such as "when we are faced with a failure to explain administrative action as to frustrate effective judicial review." (quotation marks and citation omitted)).  Indeed:

> Discovery beyond the [administrative] record may be appropriate where the record is incomplete; where additional information would provide helpful context; where supplemental information would assist the court in determining whether the agency failed to consider relevant factors; and, where the record's integrity has been impugned.

*Mayor & City Council of Balt. v. Trump*, 429 F. Supp. 3d 128, 137 (D. Md. 2021) (citation omitted).

Third, where an agency does not disclose the basis of its decision, or upon a "strong showing of bad faith or improper behavior," a court may permit extra-record discovery, including allowing discovery of a broader range of documents and use of other discovery devices, such as interrogatories or depositions.  *Housatonic River Initiative*, 75 F.4th at 278-79 (citation omitted); *see Dep't of Com.*, 588 U.S. at 781.

Completion of the record, supplementation of the record, and extra-record discovery are all appropriate here.  Consistent with *Dep't of Commerce*, Plaintiffs request that this Court first order the Defendants to complete and supplement the AR and, once any such production has been made, address the Plaintiffs' remaining extra-record discovery requests.  588 U.S. at 782. Plaintiffs have included all current discovery requests within this motion to ensure they preserve all rights with respect to discovery, and reserve the right to seek additional discovery.

## I. The Court Should Order Defendants to Complete the Record.[2]

Where, as here, the agency has omitted from the AR materials that were part of the decision-making process, the agency is required to complete the AR. *Roe*, 2024 WL 5198705, at *7 ("An administrative record must consist of 'all documents and materials directly or indirectly considered by [the] agency decision-makers and includes evidence contrary to the agency's position.'" (citation omitted)). Completion of the administrative record is warranted where a party provides "reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record." *Id.*; *see Univ. of Colo. Health*, 151 F. Supp. 3d at 13.

Here, even a cursory review of the AR shows that it is incomplete. The AR is internally inconsistent, contains no factual material supporting *any* reasoning (let alone any findings supporting the Secretary's publicly stated reasons for dismantling the Department), and lacks a privilege log.

*First*, the documents that the agency produced are inconsistent with each other. For example, the Department fails to explain why the list of terminated employees changed between February 24, 2025, EDNY_00001 (attached hereto as Ex. 5), and March 6, 2025, EDNY_00025 (attached hereto as Ex. 6). Additionally, the AR is inconsistent with the agency's actual actions. The document produced at EDNY_000152 (attached hereto as Ex. 7) seems to list all 4,113 employees at the Department as of February 28, 2025, with highlighting of the employees who were slated to be terminated. But that document is not consistent with the RIF that actually occurred. For example, EDNY_00152 indicates no cuts to the Office of English Language

---

[2] The Plaintiffs respectfully request that this Court order the Agency Defendants to complete the AR by responding to Requests for Production Nos. 1-11. Plaintiffs also request that Defendants respond to Interrogatory Nos. 1-8, and Requests for Admission Nos. 1-8, which relate to the completion of the record.

Acquisition ("OELA"), but the actual RIF terminated 12 OELA employees. (Doc No. 71-60 at 4). The Department should be required to produce documents explaining such inconsistencies, as well as specifying the final and complete list of eliminated positions. The Plaintiffs' proposed requests seek precisely these documents and information. *See* Ex. 1 (RFP Nos. 6, 7, 8); Ex. 2 (Interrogatory Nos. 3, 5, 6); Ex. 3 (RFA Nos. 1, 3, 4, 6).

*Second*, the AR is missing key documents that were produced in preparation for dismantling the agency. In late February, former Department director Lisa Tessitore explained, in a sworn declaration, that directors were asked to "submit lists to our supervisors describing which of our [unit's] functions are statutorily required." (Doc. No. 102-11 at 4). Ms. Tessitore stated that directors submitted preliminary versions of these lists before the RIF on March 11, 2025 and that they understood these lists to be part of the planning process for the RIF. *Id.* Additionally, Department staff created a list of eliminated positions and sent it to union officials on March 11. Despite Ms. Tessitore's sworn declaration referencing these and other materials, none of these documents are in the AR. The Department should complete the AR with such documents and any other documents relied upon to create and finalize the list of eliminated positions. The Plaintiffs' Requests for Production are calibrated to seek exactly those materials, with requests for the documents that Ms. Tessitore described in her declaration, as well as any internal analyses and memoranda relied upon by the Defendants. *See*, *e.g.*, Ex. 1 (RFP Nos. 4, 5, 9, 10); *see also* Ex. 2 (Interrogatory Nos. 4, 7, 8); Ex. 3 (RFA No. 7).

The AR is also missing the Agency RIF and Reorganization Plan (ARRP) required by OPM, or other documents created in the ordinary course of Department restructuring. Pursuant to a February 26, 2025 OPM memorandum, the Department was required to prepare and submit an ARRP to OPM identifying, among other things, statutes that establish the agency or

subcomponents of the agency, the specific cost savings associated with various strategies for reducing the workforce, and a "suggested plan for congressional engagement to gather input and agreement on major restructuring efforts."  Memorandum from Russell T. Vought, Dir. of OMB & Charles Ezell, Acting Dir. of OPM, on Guidance on Agency RIF and Reorganization Plans Requested by *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative* to the Heads of Exec. Dep'ts and Agencies, at 3–4 (Feb. 26, 2025) (available at https://perma.cc/6XLR-QTD2) ("OPM Memorandum").  But the AR does not contain an ARRP.  If one was created and submitted to OPM, the Department must produce it.  *See* Ex. 1 (RFP No. 2); Ex. 2 (Interrogatory Nos. 2, 4, 7, 8); Ex. 3 (RFA No. 5).

Additionally, when an office within the Department intends to reorganize, it was agency practice to submit a Reorganization Plan to the Office of Finances and Operations.  Such plan must typically include a justification memo, current and proposed organization charts, the current and proposed functional statement, and the current and proposed staffing plan.  The Reorganization Plan is reviewed by Department decision makers, including the Department Chief Human Capital Officer and Office of General Counsel, before being submitted to the Secretary for final approval. The Department must produce any such Reorganization Plans created here. *See* Ex. 1 (RFP No. 3).

*Third*, the AR does not contain any factual material explaining the agency's reasoning. The AR consists primarily of documents that have little to no bearing on the decision-making process.  For example, the Department produced nearly 75 pages (nearly half of the entire AR) of paperwork that terminated employees needed to fill out and messages related to that paperwork. The AR provides no information about the factors the Agency Defendants considered in deciding which positions would be eliminated, how the agency would continue to meet statutory

obligations, or any alternatives considered.  There is no evidence of who the decision makers were, what they considered, or why the decision was made.  Only one document offers the following cursory reasoning:

> Strategic realignment is necessary to:
> - Enhance operational efficiency by consolidating functions and eliminating duplicative roles.
> - Ensure compliance with statutory mandates for the Department while discontinuing non-essential programs.
> - Improve fiscal sustainability by significantly reducing personnel costs.

EDNY_00058 (attached hereto as Ex. 8).  But the AR offers no further explanation of how eliminating half the Department, functionally closing offices, and transferring functions out of the Department achieves these goals.  For example, there is no analysis of (i) which "functions" should be "consolidated," (ii) what was found to be "duplicative" about the unspecified "roles," (iii) which programs were found to be "non-essential," (iv) what legal or other analysis supported the attempt to "ensure compliance with statutory mandates," and (v) why the Department was found to be fiscally unsustainable.  It is implausible that there is no other correspondence or analysis supporting a decision of this magnitude.  Moreover, as the sworn declaration of Ms. Tessitore and other current and former Department employees confirm, documents relevant to this determination should be in the possession of the Agency Defendants.  The Department must produce any such materials it has failed to produce to date.  *See* Ex. 1 (RFP Nos. 4, 10); Ex. 2 (Interrogatory Nos. 2, 4, 7, 8); Ex. 3 (RFA No. 7).

*Fourth,* the Department did not produce a privilege log, so it is impossible for Plaintiffs to understand which documents, if any, are being withheld on the basis of a privilege claim and which privileges the Agency Defendants may be invoking.  There is a "growing consensus among district courts . . . that agencies must submit a log if they withhold privileged materials from an AR."  *Save the Colo. v. Spellmon*, No. 18-cv-03258, 2023 WL 2402923, at *4 (D. Colo. Mar. 7, 2023) (citing

*Clinch Coal. v. U.S. Forest Serv.*, 597 F. Supp. 3d 916, 924-25 (W.D. Va. 2022), *Friends of the Clearwater v. Higgins*, 523 F. Supp. 3d 1213, 1226-28 (D. Idaho 2021), *Bartell Ranch LLC v. McCullogh*, No. 3:21-cv-00080, 2021 WL 6118738, at *3 (D. Nev. Dec. 27, 2021)); *see also New York v. Wolf,* No. 20-CV-1127, 2020 WL 2049187, at *3 (S.D.N.Y. Apr. 29, 2020) (privilege log necessary to determine if the government has produced the "whole record" for review). Particularly where, as here, the government contends that it has taken consequential actions based on a sparse AR devoid of decision-making documents (such as an ARRP or Reorganization Plan), a privilege log is appropriate.  *See Wolf*, 2020 WL 2049187, at *2-3 (ordering production of privilege log based on the importance of the government decision at issue in contrast with the "sparse" administrative record).  As described below, there is also evidence of bad faith and improper motives on the part of Agency Defendants, further justifying the necessity of a log in this case. *See Roe*, 2024 WL 5198705, at *9-11 (requiring a showing of bad faith or improper behavior before requiring a privilege log).[3]  Without a log, Plaintiffs cannot challenge (and the Court cannot remedy) any improper or overbroad privilege assertions.

## II.    The Court Should Order Supplementation of the Record to Aid the Court's APA Review.[4]

---

[3] While the Court ultimately rejected plaintiffs' request for a full privilege log in *Roe*, *Roe* is easily distinguishable, and its factual and procedural history highlight why a log is necessary here. There, the request for a privilege log was predicated, in large part, on the withholding of several attachments to emails produced with the *Roe* AR on deliberative process grounds. The federal defendants in *Roe* produced a limited log describing the basis for withholding the specific documents at issue.  Moreover, the Court concluded that the plaintiffs had not made any showing of bad faith or improper purpose that might provide further grounds for a broader disclosure order. *See Roe*, 2024 WL 5198705, at *9-11. And the plaintiffs did not argue that such log was appropriate in light of wide-spread bad faith. By contrast, the Agency Defendants have not produced a log alongside their abbreviated AR, and the record contains indicia of bad faith and improper motives. *See infra* at § III.

[4] The Plaintiffs respectfully request that the Court order the Agency Defendants to supplement the AR by responding to Requests for Production Nos. 12-20 and Interrogatory Nos.  9-15.

The First Circuit permits supplementation of the AR to facilitate the court's "comprehension of the record or the agency's decision," or where there is a "failure to explain administrative action as to frustrate effective judicial review." *City of Taunton*, 895 F.3d at 127 (quoting *Camp*, 411 U.S. at 142-43); *see Ruskai v. Pistole*, 775 F.3d 61, 66 (1st Cir. 2014) (supplementation permitted "when necessary to determine whether the agency considered all relevant factors in making its decision" (quoting *WildWest Inst. v. Bull,* 547 F.3d 1162, 1176 (9th Cir. 2008))). The Plaintiffs will need to prove that the Department violated the APA when it eliminated statutorily mandated functions of the Department and sought to dismantle the Department absent congressional and constitutional authority. Here, because the AR is missing documents that the Court needs to evaluate whether the Department met its obligations under the APA, supplementation of the record is warranted.

For example, the AR lacks any documents addressing critical questions related to the RIF and reorganization, including why some field offices were slated for closure, how positions were eliminated, and how the Department determined that it could meet its statutory mandates. Moreover, as discussed above, the documents that were provided are both internally inconsistent and inconsistent with the government's actual decisions. This inadequate record prevents this Court from reviewing whether the elimination of half of the Department staff, as well as the hollowing out and transfer out of the Department of statutorily mandated offices, complies with the APA.

Moreover, the AR is devoid of documents that an agency would be expected to consider for a RIF and reorganization of this magnitude. For example, the AR does not include any documents analyzing other recent Department reorganization plans or statutory obligations. Nor does the AR include workload surveys, efficiency analyses, records of services provided to state

and local governments, human capital reports, or staff evaluations.  But such documents should have been consulted.  (*See* Doc. No. 27-5 at 5-7, 1:25-cv-10677).  Absent such documents, the Court's ability to determine whether the agency "considered all relevant factors in making its decision" is frustrated.  *Ruskai*, 775 F.3d at 66 (quoting *WildWest,* 547 F.3d at 1176).

Plaintiffs thus request that the Court order the Department to supplement the AR with all documents that provide a basis for the dismantlement of the Department, including internal memoranda and analyses, decision-making templates, and any other information about how the Department implemented the RIF and reorganization. *See* Ex. 1 (RFP Nos. 12-20); Ex. 2 (Interrogatory Nos. 9-15).

**III.    The Court Should Order Extra-Record Discovery to Determine the True Reasoning Behind Defendants' Actions to Dismantle the Department.[5]**

Beyond supplementation of the record with the documents described above, additional documents and different forms of extra-record discovery, are appropriate where there is "a significant mismatch between the decision the Secretary made and the rationale [s]he provided," *Biden v. Texas*, 597 U.S. 785, 811-12 (2022) (citing *Dep't of Com.*, 588 U.S. at 783), or where "there is a strong showing of bad faith or improper behavior," *Housatonic River Initiative*, 75 F.4th at 278-79 (internal quotation marks and citation omitted).  Given the documentary deficiencies and internal inconsistencies in the AR, and the Department's conflicting justifications in court and in public for the RIF and reorganization, Plaintiffs respectfully request that the Court order the Department to submit to extra-record discovery.

---

[5] In the event that the Court determines that extra-record discovery is warranted in this matter, the Plaintiffs will request that this Court order the Agency Defendants to respond to Requests for Production Nos. 21-32, Interrogatory Nos.  16-17, and Requests for Admission 9-10, subject to additional discovery requests that may arise.

Courts may infer improper behavior or bad faith, and thus allow extra-record discovery, where there is evidence that an agency's explanation for its decision is pretextual. *Dep't of Com.*, 588 U.S. at 783 ("[T]his evidence established that the Secretary had made up his mind to reinstate a citizenship question 'well before' [the ostensible reason for doing so occurred], and did so for reasons unknown but unrelated to the [stated reasoning in the AR]." (internal quotations and citation omitted)).

Here, the Secretary has emphasized repeatedly that the true purpose of the RIF and reorganization was to implement the President's directive to "shut down the Department of Education."[6]  Indeed, on her first day in office, the Secretary issued a memorandum titled "Our Department's Final Mission," the implementation of which would result in the "elimination" of the Department.  (Doc. No. 71-3).  And she wrote an op-ed less than three weeks later titled, "My Vision for Eliminating the Department of Education."  (Doc. No. 102-1).

A single document in the AR claims the RIF and transfer of functions out of the Department was being motivated by "efficiency."  Ex. 8 (EDNY_00058).  Yet the AR is devoid of any support for that reasoning, thus suggesting that this explanation was pretextual.  The inconsistencies between the Secretary's and President's publicly stated intent to close the Department, and the Department's subsequent in-court assertions to the contrary (Doc. No. 95 at 3), similarly illustrate the pretextual and unreliable nature of the Department's explanations, as the Court itself recognized.  (Doc No. 128 at 60) (describing the Department's explanation as "incongruent with

---

[6] Sareen Habeshian, *Education secretary says mass layoffs first step toward shutting down DoE*, Axios (Mar. 11, 2025), https://perma.cc/AB39-A36G; *Ingraham Angle: Education Secretary Says Department Took First Steps to Eliminate 'Bureaucratic Bloat'* (Fox News television broadcast Mar. 11, 2025), https://www.foxnews.com/video/6369901522112; CBS News, Testimony of Sec. McMahon to Appropriations Committee of the U.S. House of Representatives (YouTube, streamed May 21, 2025), https://www.youtube.com/watch?v=j8IxYL5v_Ko at 48:30 (discussing "the fact that we are looking to wind down the Department").

what the record reveals about the agency's priorities and decision-making process" (quoting *Dep't of Com.*, 588 U.S. at 785)).[7] Additionally, the Department recently posted positions for Education Research Analysts in the Institute of Education Services (IES),[8] despite having just terminated many of those positions via the RIF. *See* Ex. 9 (EDNY_00145). In addition to the potential inconsistency with RIF regulations, this about-face raises additional questions about the Department's explanation for its actions.[9]

Given Defendants' behavior and shifting explanations for their actions, extra-record discovery is necessary to understand the "genuine justification" for their actions. *Dep't of Com.*, 588 U.S. at 785 ("The reasoned explanation requirement of administrative law, after all, is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public. Accepting contrived reasons would defeat the purpose of the enterprise."). Plaintiffs thus request that the Court order Defendants to respond to relevant document requests, and submit to interrogatories, depositions, and requests for admissions

---

[7] Secretary McMahon also suggested that performance metrics were taken into account in terminating Department employees, stating "We wanted to make sure that we kept all of the right people, the good people. . . .". Arthur Jones II, *Sen. Elizabeth Warren warns of 'dire consequences' of Education Department firings for student loans*, ABC News (Mar. 20, 2025), https://perma.cc/4XZS-KMSR, at 48:30. There is no evidence in the current AR that supports that account.

[8] *Education Research Analyst GS-1730-14 (MP) & (DE),* USA Jobs, https://perma.cc/Y6QP-JPBP; https://perma.cc/TH5M-WAX9 (captured Sept. 5, 2025). In fact, Secretary McMahon stated in a May 2025 Congressional hearing that the Department of Education had brought back approximately 74 employees who had initially been designated for termination via the RIF. *See* Testimony of Sec. McMahon to Appropriations Committee of the U.S. House of Representatives, *supra* n.4, at 54:20.

[9] Applicants for these positions are subject to new questions related to their loyalty to the Administration's agenda. *Vacancy Details*, U.S. Dep't of Educ., https://perma.cc/2YNQ-V5SV (last captured Sept. 5, 2025); *see* Fedweek Staff, *Upcoming Questions on Federal Job Applications Decried as Trump Loyalty Test*, FEDweek (June 3, 2025), https://perma.cc/6EQ5-FRKF.

to establish the true reasoning behind their actions to dismantle the Department. *See* Ex. 1 (RFP Nos. 21-32); Ex. 2 (Interrogatory Nos. 16-17); Ex. 3 (RFA Nos. 9-10).[10]

In particular, a Rule 30(b)(6) deposition of one or more representatives designated by the Department is required to understand the absence of these seemingly critical documents from the AR and any analyses supposedly performed to ensure the Defendants could comply with their obligations under the law. *See* Ex. 4 (Rule 30(b)(6) Deposition Notice). Particularly if Defendants fail to produce the sought-after discovery – for example, because it turns out that no analyses were conducted to ensure the Department could continue to perform the duties it is obligated to perform by statute – a Rule 30(b)(6) deposition may be the only way to learn how positions and offices were eliminated and tasks assigned both inside and outside the Department. *See In re U.S. Dep't of Edu.*, 25 F.4th 692, 704 (9th Cir. 2022) (observing that written interrogatories and a Rule 30(b)(6) deposition of the Department of Education would have been a "reasonable alternative source[]" to the requested deposition of the Secretary of the Department of Education).

## IV.    The Court Should Order Discovery on the Harm to Plaintiffs and Other State and Local Education Agencies.

Courts routinely rely on evidence outside the administrative record when assessing irreparable harm because "there usually will be no administrative record developed" on the issue. *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 369 n.7 (D.D.C. 2017); *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1108 (N.D. Cal. 2018) ("Defendants cannot plausibly

---

[10] Plaintiffs raise constitutional claims in this case on which they are entitled to discovery. (Doc. No. 1 ¶¶ 149-165 (Counts I-II); (Doc. No. 1 ¶¶ 209-27 (Counts I-III); 1:25-cv-10677). Where the AR is insufficient, courts permit extra-record discovery for constitutional claims pled alongside APA claims. *See Puerto Rico Pub. Housing Admin. v. U.S. Dep't of Housing & Urban Dev.*, 59 F. Supp. 2d 310, 327-28 (D.P.R. 1999) (finding that the complete absence of an administrative record with respect to certain issues required discovery). The APA discovery requested above is relevant to the constitutional claims and would overlap with discovery Plaintiffs could seek on those claims. For that reason, Plaintiffs request discovery on their constitutional claims to the extent the Court grants discovery on the APA claims.

suggest that a court can assess the balance of hardships between the *parties*, based solely on the administrative record." (internal quotation marks and citation omitted)); *see also Texas v. DHS*, No. 6:23-cv-00007, 2023 WL 2842760, at *2 (S.D. Tex. Apr. 7, 2023) ("In APA cases, courts routinely rely on extra-record evidence on the issue of whether the plaintiff has the requisite standing."); *Patient Servs., Inc. v. United States*, No. 3:18-cv-00016, 2019 WL 267872, at *11 (E.D. Va. Jan. 18, 2019) (permitting discovery on standing where the "Administrative Record does not, and could not, include the post-decision information necessary to determine what harm Patient Services suffered").

Notwithstanding this Court's conclusions in May about the harm suffered by Plaintiffs, the government continues to dispute that any harm has occurred or will occur. Plaintiffs require discovery of the government's knowledge of, and Department documents reflecting, the harm suffered by Plaintiffs—*i.e.*, evidence only in Defendants' possession. Because 50 state education agencies and thousands of local education agencies share the Department's finite technical assistance and other services, Plaintiffs should be permitted discovery into the demands on these shared resources, and not just the Department's interactions with Plaintiffs. Moreover, Plaintiffs are entitled to documents reflecting how the Department's remaining employees are staffed and which responsibilities they are executing. For this reason, the Requests for Production include, among other things, requests for materials documenting how civil rights complaints have been resolved or abandoned since the closure of multiple Department offices across the country, how federal student aid is being addressed, and which tasks are currently being allocated to agencies or organizations outside the Department. *See* Ex. 1 (RFP Nos. 27-30). Such information will enable Plaintiffs to establish causation, to demonstrate that the harms are universal and predictable rather than unique, and the likelihood that these harms will continue. Without this evidence, neither the

16

Court nor Plaintiffs can adequately assess the enduring harms Plaintiffs will face absent relief, and accordingly tailor relief to remedy those harms. Thus, the Court should grant Plaintiffs discovery regarding irreparable harm.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order Defendants to complete and supplement the record. Following such order and completion of the record by Defendants, the Court should then order extra-record discovery, and permit discovery on Plaintiffs' allegations of irreparable harm.

Dated: September 12, 2025                    Respectfully submitted,

/s/ *Rachel Homer*
Rachel F. Homer (MA State Bar No. 693642)
Kali Schellenberg* (MA State Bar No. 694875)
Will Bardwell* (DC Bar No. 90006120)
Elena Goldstein* (NY State Bar No. 4210456)
Victoria Nugent* (DC Bar No. 470800)
Adnan Perwez* (DC Bar No. 90027532)
Shiva Kooragayala** (Ill. Bar No. 6336195)
Paul R.Q. Wolfson** (DC Bar No. 414759)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
Telephone: 833.391.4732
Facsimile: 202.796.4426
rhomer@democracyforward.org
kschellenberg@democracyforward.org
wbardwell@democracyforward.org
egoldstein@democracyforward.org
vnugent@democracyforward.org
aperwez@democracyforward.org
skooragayala@democracyforward.org
pwolfson@democracyforward.org

* Admitted *pro hac vice*
** *Pro hac vice* pending

*Counsel for Somerville Plaintiffs*

**ANDREA JOY CAMPBELL**
Attorney General for the Commonwealth
of Massachusetts

By: */s/ Michelle Pascucci*
Katherine Dirks (BBO No. 673674)
Chief State Trial Counsel
Michelle Pascucci (BBO No. 690899)
State Trial Counsel
Yael Shavit (BBO No. 695333)
Chief, Consumer Protection Division
Anna Lumelsky (BBO No. 677708)
Deputy State Solicitor
Elizabeth Carnes Flynn (BBO No. 687708)
Nathaniel Hyman (BBO No. 698506)
Arjun Jaikumar (BBO No. 691311)
Assistant Attorneys General
1 Ashburton Pl.
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
michelle.pascucci@mass.gov
yael.shavit@mass.gov
anna.lumelsky@mass.gov
elizabeth.carnes-flynn@mass.gov
nathaniel.j.hyman@mass.gov
arjun.k.jaikumar@mass.gov

**LETITIA JAMES**
Attorney General for the State of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Molly Thomas-Jensen*
Special Counsel
Gina Bull*
Assistant Attorney General
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
molly.thomas-jensen@ag.ny.gov
gina.bull@ag.ny.gov

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes*
Solicitor General
Ewan C. Rayner*
Caitlyn B. Carpenter*
Deputy Solicitors General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

**ROB BONTA**
Attorney General for the State of California

By: */s/ Lucia Choi*
Lucia J. Choi*
Deputy Attorney General
Michael L. Newman**
Senior Assistant Attorney General
Srividya Panchalam*
James E. Stanley*
Supervising Deputy Attorneys General
Natasha A. Reyes*
Deputy Attorneys General
California Attorney General's Office

ewan.rayner@hawaii.gov
caitlyn.b.carpenter@hawaii.gov

300 South Spring Street
Los Angeles, CA 90013
(213) 269-6364
Lucia.Choi@doj.ca.gov
Michael.Newman@doj.ca.gov
Srividya.Panchalam@doj.ca.gov
James.Stanley@doj.ca.gov
Natasha.Reyes@doj.ca.gov
Megan.Rayburn@doj.ca.gov

**PHIL WEISER**
Attorney General for the State of Colorado

By: */s/ David Moskowitz*
David Moskowitz*
Deputy Solicitor General
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
David.Moskowitz@coag.gov

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: */s/ Clinten N. Garrett*
Clinten N. Garrett**
Senior Appellate Counsel
2005 North Central Avenue
Phoenix, AZ 85004
(602) 542-3333
Clinten.Garrett@azag.gov

**KATHLEEN JENNINGS**
Attorney General for the State of Delaware

By: */s/ Ian R. Liston*
Ian R. Liston**
Director of Impact Litigation
Vanessa L. Kassab**
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov

**WILLIAM TONG**
Attorney General for the State of Connecticut

By: */s/ Patrick Ring*
Patrick Ring*
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808 5020
Patrick.ring@ct.gov

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Andrew Mendrala*
Andrew Mendrala*
Assistant Attorney General

**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Karyn L. Bass Ehler*
Karyn L. Bass Ehler*
Assistant Chief Deputy Attorney General
Katharine P. Roberts*

Public Advocacy Division
Office of the Attorney General for the
District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-4985
karyn.bassehler@ilag.gov
katharine.roberts@ilag.gov


**AARON M. FREY**
Attorney General for the State of
Maine

By: */s/ Sean D. Magenis*
Sean D. Magenis*
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME  04333-0006
(207) 626-8800
sean.d.magenis@maine.gov

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Keith M. Jamieson*\*
Keith M. Jamieson*
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6960
kjamieson@oag.state.md.us


**DANA NESSEL**
Attorney General for the People of
Michigan

By: */s/ Neil Giovanatti*
Neil Giovanatti*
Kathleen Halloran*
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
HalloranK1@michigan.gov

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Liz Kramer*
Liz Kramer*
Solicitor General
445 Minnesota Street, Suite 1400
St. Paul, MN, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us


**AARON D. FORD**
Attorney General for the State of Nevada

By: */s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney
General
1 State of Nevada Way, Ste. 100

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: */s/ Jessica L. Palmer*
Jessica L. Palmer*
Amanda Morejon
*Deputy Attorney General*
25 Market Street
Trenton, NJ 08625-0093

Las Vegas, NV 89119
HStern@ag.nv.gov

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: */s/ Elleanor H. Chin*
Elleanor H. Chin*
Senior Assistant Attorney General
100 SW Market Street
Portland, OR 97201
(971) 673-1880
elleanor.chin@doj.oregon.gov

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 793-1646
Jonathan.rose@vermont.gov

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: */s/ Charlotte Gibson*
Charlotte Gibson**
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 957-5218
gibsoncj@doj.state.wi.us

\*Admitted *Pro Hac Vice*
\*\* Motion for *Pro Hac Vice* pending or forthcoming

(609) 696-4607
Jessica.Palmer@law.njoag.gov

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

By: */s/ Kathryn T. Gradowski*
Kathryn T. Gradowski*
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2810
kgradowski@riag.ri.gov

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: */s/ Spencer W. Coates*
Spencer W. Coates*
Assistant Attorney General
Cristina Sepe*
Deputy Solicitor General
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
spencer.coates@atg.wa.gov
cristina.sepe@atg.wa.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

*/s/ Rachel F. Homer*
Rachel Homer