# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **STATE OF NEW YORK,** *et al.* , <br><br>     *Plaintiffs,* <br><br> v. <br><br> **LINDA McMAHON, in her official capacity as Secretary of Education,** *et al.*, <br><br>     *Defendants.* | No. 1:25-cv-10601-MJJ |
| **SOMERVILLE PUBLIC SCHOOLS,** *et al.* , <br><br>     *Plaintiffs,* <br><br> v. <br><br> **DONALD J. TRUMP, in his official capacity as President of the United States,** *et al.*, <br><br>     *Defendants.* | No. 1: 25-cv-10677-MJJ |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## MOTION FOR DISCOVERY

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ..................................................................................................................... 4

I.      There Is No Basis to Complete the Administrative Record. ............................................. 4

        A.      APA Cases Are Decided Based on an Administrative Record. ............................ 4

        B.      The Administrative Record Is Complete ............................................................. 7

        C.      There is No Basis to Allow Discovery ................................................................. 10

II.     There is No Evidence of Bad Faith or Improper Behavior to Justify Extra-Record
        Discovery ......................................................................................................................... 13

III.    There is No Basis to Require Supplementation of the Administrative Record ............... 17

IV.     Plaintiffs Should Provide Evidence of Their Own Harm. .............................................. 19

CONCLUSION .................................................................................................................. 20

## TABLE OF AUTHORITIES

**CASES**

*Ala.-Tombigbee Rivers Coal. v. Kempthorne,*
    477 F.3d 1250 (11th Cir. 2007) ........................................................................... 14

*Al-Saidi v. Noem,*
    No. 23-CV-4979 (VSB), 2025 WL 959094 (S.D.N.Y. Mar. 31, 2025) .................. 11

*Am. Wildlands v. Kempthorne,*
    530 F.3d 991 (D.C. Cir. 2008) ............................................................................. 13

*Bailey v. U.S. Army Corps of Eng'rs,*
    No. 02–639 (RHK/RLE), 2003 WL 21877903 (D. Minn. Aug.7, 2003) ................... 6

*BBX Cap. Corp. v. Fed. Deposit Ins. Corp.,*
    No. 17-62317-CIV-COHN/SELTZER, 2018 WL 6531601 (S.D. Fla. Aug. 15, 2018) .............. 7

*Bradley v. Weinberger,*
    483 F.2d 410 (1st Cir. 1973) ............................................................................. 5, 6

*Camp v. Pitts,*
    411 U.S. 138 (1973) ............................................................................................. 5

*Charlton Mem'l Hosp. v. Sullivan,*
    816 F. Supp. 50 (D. Mass. 1993) ...................................................................... 4, 5

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971),
    *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99 (1977) ................ 4, 7

*City of Taunton v. U.S. EPA,*
    895 F.3d 120 (1st Cir. 2018) ............................................................................. 17

*Clinch Coal. v. U.S. Forest Serv.,*
    693 F. Supp. 3d 643 (W.D. Va. 2023),
    *reconsideration denied,* 2024 WL 3454993 (W.D. Va. July 18, 2024) .................. 10

*Cmty. for Creative Non-Violence v. Lujan,*
    908 F.2d 992 (D.C. Cir. 1990) ............................................................................. 7

*Ctr. for Native Ecosystems v. Salazar,*
    711 F. Supp. 2d 1267 (D. Colo. 2010) ................................................................. 7

*Dep't of Com. v. New York,*
    588 U.S. 752 (2019) ........................................................................................... 14

*E. Bay Sanctuary Covenant v. Trump*,
    354 F. Supp. 3d 1094 (N.D. Cal. 2018) ........................................................... 19

*E. Bridge, LLC v. Chao*,
    320 F.3d 84 (1st Cir. 2003) ............................................................................... 6

*Eco Tour Adventures, Inc. v. Zinke*,
    249 F. Supp. 3d 360 (D.D.C. 2017) ................................................................. 19

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) ........................................................................................... 5

*Friends of the Boundary Mountains v. U.S. Army Corps of Eng'rs*,
    No. 1:12-cv-357-GZS, 2013 WL 4589466 (D. Me. Aug. 28, 2013) ................. 5

*Good Samaritan Med. Ctr. v. Sec'y of Health & Hum. Servs.*,
    776 F.2d 594 (6th Cir. 1985) ............................................................................. 6

*Goose Creek Physical Med., LLC v. Becerra*,
    No. 2:22-cv-03932-DCN, 2024 WL 942918 (D.S.C. Mar. 5, 2024) ................ 10

*Great Am. Ins. Co. v. United States*,
    No. 12 C 9718, 2013 WL 4506929 (N.D. Ill. Aug. 23, 2013) .......................... 12

*Harvard Pilgrim Health Care of New England v. Thompson*,
    318 F. Supp. 2d 1 (D.R.I. 2004) ....................................................................... 6

*Immigrant Defs. L. Ctr. v. U.S. DHS*,
    No. CV 21-00395 FMO (RAOx), 2021 WL 6882438 (C.D. Cal. Dec. 8, 2021) ... 17

*In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*,
    156 F.3d 1279 (D.C. Cir. 1998) ...................................................................... 10

*Int'l Junior Coll. of Bus. & Tech., Inc. v. Duncan*,
    937 F. Supp. 2d 202 (D.P.R. 2012), *aff'd*, 802 F.3d 99 (1st Cir. 2015) ............ 7

*Liston v. Unum Corp. Officer Severance Plan*,
    330 F.3d 19 (1st Cir. 2003) ......................................................................... 7, 13

*Malone Mortg. Co. Am. v. Martinez*,
    No. 3:02–CV–1870–P, 2003 WL 23272381 (N.D. Tex. Jan. 6, 2003) ............. 5

*Manker v. Spencer*,
    No. 3:18-cv-372 (CSH), 2019 WL 1506654 (D. Conn. Apr. 5, 2019) ............ 10

*Marcum v. Salazar*,
    751 F. Supp. 2d 74 (D.D.C. 2010) .............................................................. 7, 8

*Marine Mammal Conservancy, Inc. v. Dep't of Agric.,*
   134 F.3d 409 (D.C. Cir. 1998) ................................................................. 6

*Mayor & City Council of Balt. v. Trump,*
   429 F. Supp. 3d 128 (D. Md. 2019) ....................................................... 14

*McKart v. United States,*
   395 U.S. 185 (1969) ................................................................................. 6

*McMahon v. New York,*
   606 U.S. ----, 145 S. Ct. 2643 (2025) .................................................... 4

*Mullins v. U.S. Dep't of Energy,*
   50 F.3d 990 (Fed. Cir. 1995) ................................................................ 14

*NVE, Inc. v. Dep't of Health & Hum. Servs.,*
   436 F.3d 182 (3d Cir. 2006) ................................................................... 7

*Oceana, Inc. v. Ross,*
   920 F.3d 855 (D.C. Cir. 2019) ............................................................. 12

*Olsen v. United States,*
   414 F.3d 144 (1st Cir. 2005) ..................................................... 7, 13, 14

*P.R. Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urb. Dev.,*
   59 F. Supp. 2d 310 (D.P.R. 1999) .......................................................... 6

*Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs,*
   448 F. Supp. 2d 1 (D.D.C. 2006) ........................................................... 8

*Patient Servs., Inc. v. United States,*
   No. 3:18-cv-00016, 2019 WL 267872 (E.D. Va. Jan. 18, 2019) .................. 19, 20

*Pleasant Valley Hosp., Inc. v. Shalala,*
   32 F.3d 67 (4th Cir. 1994) ...................................................................... 5

*Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs,*
   87 F.3d 1242 (11th Cir. 1996) .......................................................... 13-14

*Roe v. Mayorkas,*
   No. 22-CV-10808-ADB, 2024 WL 5198705 (D. Mass. Oct. 2, 2024) ......... 8, 12, 13

*Ruskai v. Pistole,*
   775 F.3d 61 (1st Cir. 2014) ................................................................... 17

*Sara Lee Corp. v. Am. Bakers Ass'n,*
   252 F.R.D. 31 (D.D.C. 2008) .................................................................. 8

*Save the Colo. v. Spellmon*,
  No. 18-cv-03258-CMA, 2023 WL 2402923 (D. Colo. Mar. 7, 2023)....................................12

*Sierra Club v. Marsh,*
  976 F.2d 763 (1st Cir. 1992) ...........................................................................................5

*Sierra Club v. U.S. Army Corps of Eng'rs*,
  No. 2:20-CV-00396-LEW, 2022 WL 2953075 (D. Me. July 26, 2022) ...................................5

*Skull Valley Band of Goshute Indians v. Cason*,
  No. 07-cv-0526-DME-DON, 2009 WL 10689787 (D. Utah Mar. 2, 2009) ..........................11

*St. Regis Paper Co. v. Marshall,*
  591 F.2d 612 (10th Cir. 1979)............................................................................................6

*Suffolk Reg'l Off Track Betting Corp. v. U.S. Small Bus. Admin.*,
  No. 24-cv-07058 (SJB) (JMW), 2025 WL 2173727 (E.D.N.Y. July 31, 2025) ......................8

*Tafas v. Dudas*,
  530 F. Supp. 2d 786 (E.D. Va.  2008)................................................................................12

*Texas v. U.S. DHS,*
  No. 6:23-cv-00007, 2023 WL 2842760 (S.D. Tex. Apr. 7, 2023)..........................................19

*Town of Winthrop v. Fed. Aviation Admin.*,
  535 F.3d 1 (1st Cir. 2008)................................................................................................14

*Trower v. Blinken*,
  No. 4:22-CV-77-JAR, 2022 WL 2304041 (E.D. Mo. June 27, 2022)....................... 11, 14, 17

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025).........................................................................................................20

*United States v. L.A. Tucker Truck Lines, Inc.,*
  344 U.S. 33 (1952)............................................................................................................6

*United States v. Shaffer Equip. Co.*,
  11 F.3d 450 (4th Cir. 1993)..............................................................................................14

*USA Grp. Loan Servs., Inc. v. Riley*,
  82 F.3d 708 (7th Cir. 1996)................................................................................................7

*Valley Citizens for a Safe Env't v. Aldridge,*
  969 F.2d 1315 (1st Cir. 1992)............................................................................................5

*WildEarth Guardians v. Salazar*,
  670 F. Supp. 2d 1 (D.D.C. 2009) .....................................................................................13

## STATUTES

5 U.S.C. § 706.............................................................................................. 2, 4

## RULES

Fed. R. Civ. P. 26......................................................................................... 10

## OTHER AUTHORITIES

CBS News, *Education Secretary Linda McMahon testifies about Trump admin priorities at budget hearing* (YouTube May 21, 2025), https://www.youtube.com/watch?v=j8IxYL5v_Ko............................................ 16

U.S. Dep't of Educ., *U.S. Department of Education Announces Earliest FAFSA Form Launch in Program History* (Sep. 24, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-announces-earliest-fafsa-form-launch-program-history.......................................................... 15

U.S. Dep't of Educ., *U.S. Department of Education Announces Release of Record $500 Million for Charter Schools Programs* (Sep. 24, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-announces-release-of-record-500-million-charter-schools-programs ...................................... 15

U.S. Dep't of Educ., *U.S. Department of Education Concludes Loudoun County Public Schools Violated Title IX and Retaliated Against Male Students Amid Sexual Harassment Claims* (Sep. 16, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-concludes-loudoun-county-public-schools-violated-title-ix-and-retaliated-against-male-students-amid-sexual-harassment............................................................................................ 15

U.S. Dep't of Educ., *U.S. Department of Education Initiates Reduction in Force* (Mar. 11, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-initiates-reduction-force ........................................................................................2, 14-15

U.S. Dep't of Educ., *U.S. Department of Education Issues Guidance to States on Ed-Flex Option to Encourage Local Innovation* (Sep. 17, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-issues-guidance-states-ed-flex-option-encourage-local-innovation................................................ 15

Video posted by Ingraham Angle, Fox News, *Education secretary says department took first steps to eliminate 'bureaucratic bloat'* (Mar. 11, 2025), https://www.foxnews.com/video/6369901522112 ............................................ 15

## INTRODUCTION

Defendants produced an administrative record to Plaintiffs on August 1, 2025 containing the rationale for the reduction-in-force ("RIF") by the Department of Education ("Department") as well as supporting evidence the decision-maker relied upon when deciding to perform the reduction-in-force. Plaintiffs wish for another administrative record, one with more details and documents that they claim should have been considered. But this is not the administrative record that exists. The brevity of the administrative record reflects the discretionary nature of determining a headcount at an agency—an agency does not need to exhaustively justify why any employee is hired or fired.

Plaintiffs' request to complete the record, for extra-record discovery, to supplement the record, and for discovery into harms should be denied. First, Plaintiffs' requests to complete the record are founded on mere speculation that documents exist, that these speculative documents were considered, and that these documents were then not included in the record. But motions to complete a record cannot be founded on mere speculation. Similarly, Plaintiffs' request for extra-record discovery is premised on speculation that, instead of right-sizing the Department, the Secretary was instead shuttering the Department. Yet, months after the RIF took effect, the Department continues to operate. Moreover, Plaintiffs' evidence of an intent to close the Department, when not selectively edited, demonstrates that the Secretary's goal for the closure of the Department requires congressional approval, and in the meantime the Secretary will be focusing on cutting bureaucratic bloat. Without evidence of bad faith, there is no reason to depart from the standard APA practice of not allowing discovery. The same applies to the motion to supplement the record, which is just a request for extra-record discovery by a different name. Finally, Plaintiffs' request for discovery into the harms Plaintiffs suffer borders on being non-sensical—it is Plaintiffs who know their harms, not the Defendants. The Defendants (purported) knowledge of potential harm to Plaintiffs is not relevant to the facts of the harms they suffer, and discovery into the harms of non-parties cannot be relevant to the question of irreparable harm to Plaintiffs.

Finally, Plaintiffs' discovery requests are not narrowly tailored to the alleged deficiencies in the administrative record. For that reason as well, Plaintiffs' motion for extra-record discovery should be denied.

## BACKGROUND

The Department is in the midst of an overhaul. As part of the overhaul, the Department has implemented a RIF, which impacted "[a]ll divisions within the Department," with some divisions requiring "significant reorganization to better serve students, parents, educators, and taxpayers." U.S. Dep't of Educ., *U.S. Department of Education Initiates Reduction in Force* (Mar. 11, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-initiates-reduction-force. The purpose of the RIF is "efficiency, accountability, and ensuring that resources are directed where they matter most: to students, parents, and teachers." *Id.*

The States Plaintiffs filed a Complaint on March 13, 2025 seeking declaratory relief at the broadest level of generality; namely, that "President Trump's Directive to dismantle the Department of Education, and the Department of Education's implementation of the Directive are unlawful." Compl. at Prayer for Relief ¶ i, *New York v. McMahon*, No. 25-cv-10601-MJJ, ECF No. 1 ("States Compl.").

The Complaint includes five counts. Count One requests a declaratory judgment and a permanent injunction of the President's Directive based on an alleged "Violation of the Separation of Powers Doctrine" for "Usurping Legislative Authority." States Compl. ¶¶ 149-59. Count Two seeks the same relief under the Take Care Clause. *Id.* ¶¶ 160-65. Count Three seeks *ultra vires* review of the President's Directive and acts taken pursuant to that Directive. *Id.* ¶¶ 166-71. Counts Four and Five invoke the APA. *Id.* ¶¶ 172-95. In Count Four, Plaintiffs claim that Defendants lack "authority to implement the Directive as it calls for actions that are not authorized by statute, and are in direct contravention of statutory authority governing the creation and operation of the Department of Education" and have thus violated 5 U.S.C. § 706(2)(C). States Compl. ¶ 179. And in Count Five, Plaintiffs claim that "the Agency Defendants' actions implementing the Directive violate the APA because they are arbitrary and capricious." *Id.* ¶ 193.

The Somerville Plaintiffs filed a Complaint on March 24, 2025, seeking similarly broad relief; namely, "declaratory and injunctive relief against Defendants' unlawful effort to eliminate the Department of Education through the March 11, 2025, decision to fire half of the Department's staff and President Trump's Executive Order on March 20, 2025, seeking to abolish the Department as a whole." Compl. ¶ 9, *Somerville Pub. Schs. v. Trump*, No. 25-cv-10677-MJJ, ECF No. 1 ("Somerville Compl.").

The Complaint includes seven counts. Count One alleges that the President's actions to close the Department, move sections of the Department to other agencies, and implement reductions-in-force violate Separation of Powers principles. *Id*. ¶¶ 209-14. Count Two alleges that the President's actions to close the Department will interrupt funding required by statute, and thus violate the Take Care clause. *Id*. ¶¶ 215-19. Count Three seeks *ultra vires* review of the President's Directive and alleged acts to close the Department, move sections of the Department to other agencies, and implement reductions-in-force. *Id*. ¶¶ 220-27. Counts Four, Five, Six, and Seven invoke the APA. *Id*. ¶¶ 228-61. In Count Four, Plaintiffs allege that the President's actions to close the Department, move sections of the Department to other agencies, and implement reductions-in-force violate are actions contrary to a constitutional right. *Id*. ¶ 232. In Count Five, Plaintiffs allege that "Defendants lack authority to dismantle the Department, in whole or in part, including by effectuating mass terminations of the Department's staff or otherwise implementing the Executive Order's directive." *Id*. ¶ 239. In Count Six, Plaintiffs allege that "Defendants' actions to incapacitate the Department of Education are in contravention of numerous Congressional directives requiring federal support for education." *Id*. ¶ 250. In Count Seven, Plaintiffs allege that the "effective dismantlement of the Department of Education is arbitrary and capricious." *Id.* ¶ 253.

Both Plaintiffs filed motions for a preliminary injunction, which the Court granted on May 22, 2025. Mem. & Order on Consolidated Pls.' Mots. for Prelim. Inj., ECF No. 128. Defendants appealed to the First Circuit and requested a stay of the preliminary injunctions. *New York v. McMahon*, Nos. 25-1495, 25-1500 (1st Cir.). The First Circuit denied a stay.  On July 14,

2025, however, the Supreme Court entered a stay pending appeal. *McMahon v. New York*, 606 U.S. ----, 145 S. Ct. 2643 (2025). With Defendants' assent, Plaintiffs requested an indicative ruling from this Court providing that "[t]he Court would grant the Consolidated Plaintiffs' motion to vacate the preliminary injunction if the United States Court of Appeals for the First Circuit were to remand the case for this purpose." Ex. A at 2 (Proposed Indicative Ruling Pursuant to Fed. R. Civ. P. 62.1) ECF No. 163-1. The Court issued the proposed indicative ruling on August 11, 2025, confirming that it would vacate the preliminary injunctions if given jurisdiction to do so. Indicative Ruling Pursuant to Federal Rule of Civil Procedure 62.1, ECF No. 165. After the First Circuit issued its mandate to return jurisdiction to this Court, Defendants moved to vacate the preliminary injunction. Assented-to Mot. to Vacate the Prelim. Injs., ECF No. 177.

On August 1, 2025, Defendants produced the administrative record to Plaintiffs. Not. of Produc. of Administrative R., ECF No. 158.

In the meantime, the parties proposed a schedule whereby Defendants would produce the administrative record, and that schedule built-in a mechanism for Plaintiffs to challenge the administrative record. Assented to Mot. for a Scheduling Order, ECF No. 169. Pursuant to that schedule, on September 12, 2025, Plaintiffs moved for discovery. Pls.' Mot. for Disc., ECF No. 172.

## ARGUMENT

### I.    There Is No Basis to Complete the Administrative Record.

#### A.  APA Cases Are Decided Based on an Administrative Record.

In the APA, Congress directs that courts evaluate agency action upon "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Thus, judicial review in an APA case is based upon the "full administrative record that was before [the agency] at the time [it] made [its] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971), *abrogated on*

*other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *see also Charlton Mem'l Hosp. v. Sullivan*, 816 F. Supp. 50, 51 (D. Mass. 1993) ("In general, judicial review of agency action taken on the basis of a formal record is based on that record and not to any extent based on evidence received in the district court."). "[T]he agency's designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity." *Sierra Club v. U.S. Army Corps of Eng'rs*, No. 2:20-CV-00396-LEW, 2022 WL 2953075, at *1 (D. Me. July 26, 2022) (quoting *Friends of the Boundary Mountains v. U.S. Army Corps of Eng'rs*, No. 1:12-cv-357-GZS, 2013 WL 4589466, at *1 (D. Me. Aug. 28, 2013)).

The focal point of judicial review under the APA is the administrative record already in existence and not a new record made by the reviewing court. *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743 (1985) (quoting *Camp v. Pitts,* 411 U.S. 138, 142 (1973)); *accord Sierra Club v. Marsh,* 976 F.2d 763, 772 (1st Cir. 1992); *Valley Citizens for a Safe Env't v. Aldridge,* 969 F.2d 1315, 1319 (1st Cir. 1992); *Bradley v. Weinberger,* 483 F.2d 410, 414 (1st Cir. 1973); *Charlton Mem'l Hosp.,* 816 F. Supp. at 51. It is inappropriate for courts reviewing agency decisions to consider information not before the administrative agency. *Pleasant Valley Hosp., Inc. v. Shalala,* 32 F.3d 67, 70 (4th Cir. 1994). *See also Sierra Club,* 976 F.2d at 772–73 (noting that in an action before the district court, no new rationalizations for the agency's decision should be included, and if included, they should be disregarded). As such, broad-ranging discovery aimed at matters not included in the administrative record is inappropriate. *Malone Mortg. Co. Am. v. Martinez,* No. 3:02–CV–1870–P, 2003 WL 23272381, at *2 (N.D. Tex. Jan. 6, 2003) (citing *Camp,* 411 U.S. at 143).

This requirement that federal courts base their review solely on the administrative record serves to limit courts to their proper role. *Bradley,* 483 F.2d at 415. Reviewing courts are to determine whether an agency's action was arbitrary or capricious in light of the information the agency confronted. *Id.* The First Circuit has characterized this task as requiring a "re-view, a second look at the same material, not a re-doing." *Id.*

Limiting a district court's review to the administrative record reflects policies of fairness, orderly procedure, and competence, which are similar to those underlying the doctrine of exhaustion of administrative remedies. *Id. See also United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37 (1952) (noting that considerations of fairness require the general rule that courts not topple over administrative decisions unless the administrative agency erred and did so against an objection made at the appropriate time under agency practice). These policies give agencies an opportunity to correct their own errors, afford parties and courts the benefit of the agency's expertise, allow for the compilation of an adequate record for judicial review, and promote judicial efficiency. *See generally McKart v. United States,* 395 U.S. 185, 194–95 (1969); *Marine Mammal Conservancy, Inc. v. Dep't of Agric.,* 134 F.3d 409, 414 (D.C. Cir. 1998); *Good Samaritan Med. Ctr. v. Sec'y of Health & Hum. Servs.,* 776 F.2d 594, 599 (6th Cir. 1985); *St. Regis Paper Co. v. Marshall,* 591 F.2d 612, 613–14 (10th Cir. 1979).

Constitutional claims accompanying an APA challenge do not grant the right to discovery. "The APA's restriction of judicial review to the administrative record would be meaningless if any party seeking review based on statutory or constitutional deficiencies was entitled to broad-ranging discovery." *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 10 (D.R.I. 2004); *see also E. Bridge, LLC v. Chao,* 320 F.3d 84, 91 (1st Cir. 2003) ("[T]he present constitutional claim is really just a recharacterization of their administrative claim, and we will not allow plaintiffs to circumvent the statutory review process with an agile game of word play."); *Marine Mammal,* 134 F.3d at 413 (noting that there is no bright line rule allowing litigants to bypass administrative processes simply because one or all of their claims are constitutional in nature); *Bailey v. U.S. Army Corps of Eng'rs,* No. 02–639 (RHK/RLE), 2003 WL 21877903, at *2 (D. Minn. Aug.7, 2003) (noting, in an APA case, that a due process challenge to an agency's decision is reviewed on the administrative record that was certified and submitted to the court); *P.R. Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urb. Dev.,* 59 F. Supp. 2d 310, 327 (D.P.R. 1999) (noting that even when constitutional claims are present, a court reviewing an administrative record should not blindly authorize wide-ranging discovery).

Accordingly, a "very good reason is needed to overcome the strong presumption that the record on review is limited to the [administrative] record before the [agency]." *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19, 23 (1st Cir. 2003); *see also NVE, Inc. v. Dep't of Health & Hum. Servs.*, 436 F.3d 182, 195 (3d Cir. 2006) ("[t]here is a strong presumption against discovery into administrative proceedings[.]"); *USA Grp. Loan Servs., Inc. v. Riley*, 82 F.3d 708, 715 (7th Cir. 1996) ("Discovery is rarely proper in the judicial review of administrative action."); *Int'l Junior Coll. of Bus. & Tech., Inc. v. Duncan*, 937 F. Supp. 2d 202, 204-05 (D.P.R. 2012) ("[T]he narrowness of the APA action for judicial review weighs heavily against discovery."), *aff'd*, 802 F.3d 99 (1st Cir. 2015). Thus, to allow discovery, there must be a "strong showing of bad faith or improper behavior," and discovery must provide the "only possibility for effective judicial review." *Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 997 (D.C. Cir. 1990) (citing *Overton Park*, 401 U.S. at 420); *see also Olsen v. United States*, 414 F.3d 144, 155 (1st Cir. 2005) ("the district court 'may' (although it is not required to) supplement the record where there is a 'a strong showing of bad faith or improper behavior' by agency decision makers." (quoting *Overton Park*, 401 U.S. at 420)).

### B. The Administrative Record Is Complete.

The administrative record produced by Defendants is complete, and the documents requested by Plaintiffs were not considered directly or indirectly by the decision maker. Nonetheless, Plaintiffs seek to have the Department "complete" the administrative record. This Court should deny that request.

A party may seek to "*complete*" the administrative record by including materials "which were actually considered by the agency, yet omitted from the administrative record." *BBX Cap. Corp. v. Fed. Deposit Ins. Corp.*, No. 17-62317-CIV-COHN/SELTZER, 2018 WL 6531601, at *1–2 (S.D. Fla. Aug. 15, 2018) (quoting *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1274 (D. Colo. 2010)). Completing the administrative record is appropriate if the agency "did not include materials that were part of its record, whether by design or accident[.]" *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010). But to overcome the presumption of regularity,

"a plaintiff must put forth concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers." *Id.* (quoting *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008)). To make that showing, a plaintiff must do more than simply assert "that materials were relevant or were before an agency when it made its decision." *Id.* "Instead, the plaintiff 'must identify reasonable, *non-speculative grounds* for its belief that the documents were *considered* by the agency and not included in the record.'" *Id.* (quoting *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006)); *Roe v. Mayorkas*, No. 22-CV-10808-ADB, 2024 WL 5198705, at *7 (D. Mass. Oct. 2, 2024) (adopting nonspeculative standard)

Plaintiffs document requests are grounded in mere speculation that the documents were considered or even exist.

Plaintiffs argue that the record must be completed because the documents in the administrative record are inconsistent with each other. Mem. of Law in Supp. of Pls.' Mot. for Disc. at 6-7, ECF No. 173 ("Disc. Mot."). Plaintiffs' alleged inconsistencies are that the employees listed for termination changed between February 24, 2025, February 28, 2025, and March 6, 2025, which then differ from the employees finally terminated. But it is no surprise that the list of individuals to be terminated changed as the agency continued its plan to reorganize. That is not an inconsistency—it is an agency evaluating its needs before making a final decision. But even if there were inconsistencies, "[m]ere inconsistencies in the administrative record . . . only go[] to whether the underlying decision was arbitrary and capricious and should be overturned," not whether a plaintiff is entitled to discovery. *Suffolk Reg'l Off Track Betting Corp. v. U.S. Small Bus. Admin.*, No. 24-cv-07058 (SJB) (JMW), 2025 WL 2173727, at *4 (E.D.N.Y. July 31, 2025). Based on a reasonable search, documentation for the changes between these documents does not exist.

Plaintiffs also assert that a document sent to a union is missing from the administrative record. Disc. Mot. at 7. But an administrative record is not a record of all documents created at an agency—it is merely the documents that the decisionmaker directly or indirectly relied upon.

Plaintiffs speculate, without providing any evidence, that the decisionmakers used these lists. Speculation is not a basis to require additional discovery to "complete" an administrative record.

Plaintiffs further speculate that "other documents [were] created in the ordinary course of Department restructuring" and not included in the administrative record. *Id.* at 7-8. Plaintiffs' inability to name specific documents or types of documents that should exist and failure to articulate why they were in front of the decision-maker fails to overcome the presumption of regularity.

Plaintiffs also argue, without evidence, that it was "agency practice" to submit a Reorganization Plan that "typically" included "a justification memo, current and proposed organization charts, the current and proposed functional statement, and the current and proposed staffing plan." *Id.* at 8. But the administrative record does contain organizational charts and staffing plans. Plaintiffs' speculation that there would be other documents, or that this plan would exist at all, is not sufficient to overcome the presumption of regularity. Indeed, based on a reasonable search, a reorganization plan does not exist.

Plaintiffs argue that the administrative record does not contain "any factual material explaining the agency's reasoning" and that "[i]t is implausible that there is no other correspondence or analysis." *Id.* at 8-9. But these bare assertions, without evidence, do not warrant discovery or completion of the administrative record. To be sure, the information in the administrative record includes only a high-level explanation for the reduction-in-force—unsurprising given the traditionally unreviewable nature of the decision it reflects. But this is no basis to conclude that the record is incomplete.

Plaintiffs rely upon a declaration from a former employee to argue that lists of statutorily required functions are missing from the administrative record, *id.* at 7, and rely upon an OMB memorandum to assert that an agency RIF and Reorganization Plan (ARRP) is missing from the administrative record. *Id.* at 7-8. These documents are privileged under the deliberative process privilege.

On arbitrary and capricious review, absent a showing of bad faith or improper behavior, "[a]gency deliberations not part of the record are deemed immaterial." *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 156 F.3d 1279, 1279-1280 (D.C. Cir. 1998). Because predecisional documents are "immaterial," they are not "discoverable." Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .").

The lists of statutorily required functions and ARRP plan are deliberative. The lists were used to make the ARRP plan and thus fall within its ambit. The ARRP reflects deliberations before the final decision to conduct a RIF or otherwise reorganize itself. The plans do not embody any final decisions on RIFs or reorganizations. This is reflected by the OMB memorandum's requirement to submit monthly progress reports – the actual RIF plan may be different from the ARRP plan.

### C. There is No Basis to Allow Discovery.

It is well-settled that discovery is generally inappropriate in APA cases. Thus, when a plaintiff can avail itself of an APA discovery exception, the resulting discovery must be tailored only to information necessary to resolve that exception. *See, e.g.*, *Goose Creek Physical Med., LLC v. Becerra*, No. 2:22-cv-03932-DCN, 2024 WL 942918, at *11 (D.S.C. Mar. 5, 2024) (permitting extra-record discovery only on the "properly identified" and "specific[ly] excluded records" that were needed to complete the administrative record); *Manker v. Spencer*, No. 3:18-cv-372 (CSH), 2019 WL 1506654, at *5 (D. Conn. Apr. 5, 2019) (holding that every APA discovery request "require[s] a reason, such as filling a specific gap in the administrative record"). This is because the purpose of APA discovery is not to open the floodgates to whatever a plaintiff wants to find; it is only to fill concrete gaps or deficiencies in the administrative record. *See, e.g.*, *Clinch Coal. v. U.S. Forest Serv.*, 693 F. Supp. 3d 643, 653–54 (W.D. Va. 2023) ("Given the presumption of completeness, I do not find additional discovery would be appropriate, which would essentially allow the plaintiffs to conduct a fishing expedition to hunt for unidentified documents, when there is no indication that other documents actually exist."),

*reconsideration denied,* 2024 WL 3454993 (W.D. Va. July 18, 2024); *Trower v. Blinken*, No. 4:22-CV-77-JAR, 2022 WL 2304041, at *4 (E.D. Mo. June 27, 2022) (permitting discovery in an APA case only to complete the record where it was incomplete and refusing requests that amounted to a "fishing expedition"); *Skull Valley Band of Goshute Indians v. Cason*, No. 07-cv-0526-DME-DON, 2009 WL 10689787, at *23 (D. Utah Mar. 2, 2009) (granting protective order where discovery requests "appear[ed] to be merely fishing expeditions, too speculative to warrant the limited discovery available only rarely in APA litigation"); *Al-Saidi v. Noem*, No. 23-CV-4979 (VSB), 2025 WL 959094, at *3 (S.D.N.Y. Mar. 31, 2025) ("[I]n the context of an APA proceeding against a federal agency that has produced the administrative record of the challenged decision, 'a party seeking discovery cannot simply engage in a fishing expedition based on bare speculation that additional data might reveal something beneficial.'" (citation omitted)).

Rather than being narrow, Plaintiffs' proposed discovery is facially overbroad. Start with the interrogatories. Interrogatory No. 1 seeks the identity of all individuals who were involved in the decisionmaking process in the RIF, reorganization, or transfer of functions. Ex. 2 (Pls.' First Set of Interrogs. to Defs.), ECF No. 173-3 ("First ROG"). The identification of these individuals is not relevant to how the agency ultimately decided on the RIF, reorganization, or transfer of functions, and the identification of these individuals would not be part of a properly constructed administrative record. Similarly, Interrogatory No. 3 seeks the identification of all individuals included in the RIF and the date they were included in the RIF. *Id.* The relevance of this interrogatory to Plaintiffs claims is unclear, and it does not seem to be related to completing the administrative record. Interrogatory No. 2 seeks the identification of all documents setting forth bases used in the decisionmaking process for the RIF. *Id.* Interrogatory No. 4 seeks the process and back and forth of the decisionmaking of the RIF, which intrudes into agency internal deliberations and does not go to the actual reasons for the RIF, which Plaintiffs contend is missing. *Id.* And Interrogatory No. 7 seeks the steps the Department took to determine statutory

functions – which involves internal deliberations and does not seek the justifications that any one function was found to be statutorily mandated or not. *Id.*

Plaintiffs fare no better with their requests for production. Request No. 5 seeks documents sufficient to show how the various challenged actions were determined. Ex. 1 (Pls.' First Set of Reqs. for the Produc. of Docs.), ECF No. 173-2 ("First RFP"). And Request No. 11 seeks all documents provided to the Secretary that she relied upon in determining the challenged actions. *Id.* These requests are in no way targeted to complete the record, but are rather asking for a new administrative record.

Finally, Plaintiffs seek a privilege log. Disc. Mot. at 9-10. "Given that privilege logs are only required when 'a party withholds information otherwise discoverable by claiming that the information is privileged' and since predecisional and deliberative documents are by their nature not discoverable under the APA, 'they are not required to be placed on a privilege log.'" *Roe*, 2024 WL 5198705, at *10 (citation omitted); *see also Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) ("The District Court correctly observed that 'predecisional and deliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record.'" (citation omitted)); *Great Am. Ins. Co. v. United States*, No. 12 C 9718, 2013 WL 4506929, at *9 (N.D. Ill. Aug. 23, 2013) ("[R]equiring [defendant] to identify and describe on a privilege log all of the deliberative documents would invite speculation into an agency's predecisional process and potentially undermine the limited nature of review available under the APA"); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008) ("A complete administrative record . . . does not include privileged materials, such as documents that fall within the deliberative process privilege, attorney-client privilege, and work product privilege.").

Plaintiffs suggest that there is "growing consensus among district courts . . . that agencies must submit a log if they withhold privileged materials from an AR." Disc. Mot. at 9-10 (quoting *Save the Colo. v. Spellmon*, No. 18-cv-03258-CMA, 2023 WL 2402923, at *4 (D. Colo. Mar. 7, 2023)). However, this Court in *Roe v. Mayorkas*, No. 22-CV-10808-ADB, 2024 WL 5198705, at

*10 (D. Mass. Oct. 2, 2024) acknowledged this "consensus" and cited many of the cases relied upon by Plaintiffs, before ultimately concluding that deliberative documents not included in an administrative record are "not discoverable" and thus "are not required to be placed on a privilege log." *Id.* (citation omitted). Although Plaintiffs try to distinguish *Roe* by arguing that *Roe* did not have allegations of bad faith and had a limited privilege log, Disc. Mot. at 10 & n.3, the Court in *Roe* did not cabin its decision on those facts – it unequivocally stated that a privilege log is not required for deliberative documents not included in an administrative record. *Roe*, 2024 WL 5198705, at *10. This Court should follow its decision in *Roe* and hold that an administrative record does not include deliberative documents, these documents are not discoverable, and thus a privilege log is not required.

## II.    There is No Evidence of Bad Faith or Improper Behavior to Justify Extra-Record Discovery

As a general rule, discovery is not allowed in an action for judicial review upon an administrative record for the same reasons that supplementation is generally not permitted. *Olsen,* 414 F.3d at 155–56. "[A]t least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator. . . . It is almost inherent in the idea of reviewing agency or other administrative action for reasonableness; how could an administrator act unreasonably by ignoring information never presented to it?" *Liston,* 330 F.3d at 23 (footnote omitted).

A party may seek extra-record "evidence that was not initially before the agency but [which] the party believes should nonetheless be included in the administrative record[.]" *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009). In these circumstances, a stringent standard applies. To "justify[] a departure from [the] general rule" that review "is to be based on the full administrative record that was before the Secretary at the time he made his decision," *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (citations omitted), a party must meet one of the unusual circumstances enumerated by courts, such as "a strong showing of agency bad faith or improper behavior." *Pres. Endangered Areas of Cobb's*

*Hist., Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 n.1 (11th Cir. 1996); *Ala.-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1262 (11th Cir. 2007) (courts should consider extrarecord evidence "only where there is initially 'a strong showing of bad faith or improper behavior' by the agency.") (citation omitted); *Town of Winthrop v. Fed. Aviation Admin.*, 535 F.3d 1, 14 (1st Cir. 2008) (supplementation is permissible where there is a "strong showing of bad faith or improper behavior" by the agency (quoting *Olsen*, 414 F.3d at 155)).

First, a plaintiff must ground a claim of bad faith in the final agency action being challenged; it cannot rely on alleged contradictions in collateral matters. *See Trower*, 2022 WL 2304041, at *3 (denying request for discovery in APA case because "[m]any of Plaintiffs' allegations of bad faith . . . simply have no bearing on the issue before the Court at this stage of the litigation"). And even after that hurdle is cleared, "mere allegations of bad faith are inadequate to overcome the presumption of regularity accorded to agency action." *Mayor & City Council of Balt. v. Trump*, 429 F. Supp. 3d 128, 138 (D. Md. 2019). Rather, "a plaintiff must put forth a 'strong showing' of impropriety to peer beyond the record." *Id.* (quoting *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019)). The standard is not satisfied by disagreement with the agency, but by something akin to a "showing of fraud or clear wrongdoing," *Mullins v. U.S. Dep't of Energy*, 50 F.3d 990, 993 (Fed. Cir. 1995), or where an agency employee filed fraudulent documents and "perjured himself repeatedly," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 460–61 (4th Cir. 1993).

Plaintiffs fail to meet their burden. Their allegation of bad faith stems from their contention that the Secretary is using the RIF to shut down the Department of Education rather than to eliminate bureaucratic bloat and improve efficiencies. Disc. Mot. at 13. But they do not have any evidence that the Secretary is seeking to unilaterally shut down the Department via RIFs or that this was the goal of the RIF.

Instead, the evidence paints quite a different picture: The Department has retained approximately 50% of its employees. U.S. Dep't of Educ., *U.S. Department of Education Initiates Reduction in Force* (Mar. 11, 2025), https://www.ed.gov/about/news/press-release/us-

department-of-education-initiates-reduction-force. OCR has continued to investigate civil rights violations. U.S. Dep't of Educ., *U.S. Department of Education Concludes Loudoun County Public Schools Violated Title IX and Retaliated Against Male Students Amid Sexual Harassment Claims* (Sep. 16, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-concludes-loudoun-county-public-schools-violated-title-ix-and-retaliated-against-male-students-amid-sexual-harassment. The FAFSA has been made available at the earliest in point in its history. U.S. Dep't of Educ., *U.S. Department of Education Announces Earliest FAFSA Form Launch in Program History* (Sep. 24, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-announces-earliest-fafsa-form-launch-program-history. The Department continues to provide guidance to States. U.S. Dep't of Educ., *U.S. Department of Education Issues Guidance to States on Ed-Flex Option to Encourage Local Innovation* (Sep. 17, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-issues-guidance-states-ed-flex-option-encourage-local-innovation. And the Department is awarding grants. U.S. Dep't of Educ., *U.S. Department of Education Announces Release of Record $500 Million for Charter Schools Programs* (Sep. 24, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-announces-release-of-record-500-million-charter-schools-programs. This is not a shutdown Department.

In contrast, Plaintiffs' evidence of a purported intent to shut down the Department is anything but. Plaintiffs rely on characterizations of a Fox News interview. Disc. Mot. at 13-14. But in that interview, the Secretary stated that she planned to keep 50% of the Department "related to expenditures and key programs" for which Congress has appropriated money. Video posted by Ingraham Angle, Fox News, *Education secretary says department took first steps to eliminate 'bureaucratic bloat'* at 02:00-02:07 (Mar. 11, 2025), https://www.foxnews.com/video/6369901522112.

Plaintiffs also rely on Secretary McMahon's "Final Mission" letter to the Department and her op-ed written a few weeks later. Disc. Mot. at 13-14. In her Final Mission letter, Secretary McMahon described the coming months at the Department as an "overhaul" to "review . . . our

programs" and "eliminate unnecessary bureaucracy."  Ex. 3 (U.S. Dep't of Educ., *Secretary McMahon: Our Department's Final Mission* (Mar. 3, 2025)), ECF No. 71-3. In her op-ed, Secretary McMahon was clear that shutting down the Department would happen "in coordination with Congress." Ex. 70 at 6 (Linda McMahon, *My vision for eliminating the Department of Education* (Mar. 21, 2025), Fox News), ECF 102-1.

Similarly, Plaintiffs cherry-pick Secretary McMahon's congressional testimony where she said she is looking to wind down the Department.  Disc. Mot. at 13 n.6.  In the next few sentences, she said that she is looking closely at staffing, has brought individuals back, is delivering on statutory functions, and is making sure there is no overlap in employees.  CBS News, *Education Secretary Linda McMahon testifies about Trump admin priorities at budget hearing*, at 48:30 (YouTube May 21, 2025), https://www.youtube.com/watch?v=j8IxYL5v_Ko.

All of this evidence, taken in context, shows that the RIFs at the Department were to return the Department to providing only statutorily mandated functions and those discretionary functions that advance the democratically elected administration's policy goals.  The dismantling of the Department is an administration goal, but it has consistently been repeated that it will take partnering with Congress to achieve that goal.  Accordingly, Plaintiffs cannot show evidence of bad faith sufficient to warrant extra-record discovery.

What's more, not a single discovery request seeks evidence on this purported "bad faith" basis for planning and executing the RIF.  There is not a single request on dismantling the Department or stopping functions.  Rather, the interrogatories seek unrelated discovery of the identity of employees who were RIFd and then rehired (Interrogatory 17) or the identity of DOGE personnel (Interrogatory 16). First ROG.  Similarly, the requests for production seek tracking of OCR complaints (Request No. 28), technical assistance (Request No. 29), and Office of Federal Student Aid activity (Request Nos. 30, 31).  First RFP.  These requests seek discovery into the day to day operations of the Department, not evidence of a bad faith intent by the Secretary or decisionmaker in planning and executing the RIFs.

As set forth above, discovery in this case is both unnecessary and inappropriate. But should the Court order discovery, it should not order any depositions. Depositions are particularly disfavored in APA cases, because they are—by their nature—difficult to cabin to the narrow exceptions purportedly authorizing discovery in the first place. *See Immigrant Defs. L. Ctr. v. U.S. DHS*, No. CV 21-00395 FMO (RAOx), 2021 WL 6882438, at *6 (C.D. Cal. Dec. 8, 2021) (observing in an APA case that it "would be difficult to sufficiently narrow or define any deposition topics such that the deposition testimony would be appropriately targeted"); *Trower*, 2022 WL 2304041, at *4 (finding that a deposition in an APA case risked a "fishing expedition into sensitive issues" that offered "minimal assistance to the Court"). Depositions are inappropriate where they duplicate information already available in the administrative record or that could be obtained through properly limited written discovery. *See Immigrant Defs. L. Ctr.*, 2021 WL 6882438, at *6 (denying plaintiff's request for a deposition in an APA case because the information sought "overlap[ped] with Plaintiffs' written discovery requests" and such information could be obtained through limited written discovery). Plaintiffs' proposed 30(b)(6) topics should further be denied as duplicative of their written discovery requests, as their proposed topics overlap with the proposed interrogatories.

Accordingly, the Court should deny all of Plaintiffs' requests for discovery including, as relevant here, Requests for Production Nos. 21-32, Interrogatory Nos. 16-17, Requests for Admission 9-10, and the request to take a 30(b)(6) deposition.

### III.    There is No Basis to Require Supplementation of the Administrative Record.

Plaintiffs seek to "supplement the record"—apart from their requests to either complete the record or for extra-record discovery. Disc. Mot. at 17. But there is no legal basis for ordering discovery to supplement the record separate and apart from ordering extra-record discovery.

Plaintiffs rely on rely on *City of Taunton v. U.S. EPA*, 895 F.3d 120, 127 (1st Cir. 2018) and *Ruskai v. Pistole*, 775 F.3d 61, 66 (1st Cir. 2014) for the proposition that the record may be

supplemented to facilitate the court's "comprehension of the record or the agency's decision," or where there is a "failure to explain administrative action as to frustrate effective judicial review." Disc. Mot. at 11 (citation omitted). However, these cases dealt with a *Plaintiff* seeking to enter into evidence documents *in Plaintiff's possession* for the court's review in an APA case. In those circumstances, the standard articulated by Plaintiffs may be appropriate. But it is no basis to order discovery into an agency for additional documents to add to the administrative record.

If the Court were to construe Plaintiffs request as asking to supplement the record under the more stringent bad-faith test, articulated above, Plaintiffs would not meet their burden. Plaintiffs identify several categories of documents that they argue the Department should have considered, or would reflect Department considerations when making its RIF decisions. But the absence of these documents and information does not show bad faith.

The Court should deny the requested discovery even if it applies the standard that supplementation is appropriate to facilitate the court's "comprehension of the record or the agency's decision," or where there is a "failure to explain administrative action as to frustrate effective judicial review." The administrative record contains organizational charts, employees designated for the RIF, and at least one statement for the reason for the reduction in force:

> Strategic realignment is necessary to:
> - Enhance operational efficiency by consolidating functions and eliminating duplicative roles.
> - Ensure compliance with statutory mandates for the Department while discontinuing non-essential programs.
> - Improve fiscal sustainability by significantly reducing personnel costs.

EDNY_00058.

The Court is now equipped with the rationale for the reduction-in-force and the evidence the Department relied upon to support that rationale and affect its goals via the RIF. The Court can then decide whether that rationale is sufficient for the RIF, and whether those rationales were adequately supported based on the evidence in the administrative record. Nothing will frustrate

the Court from achieving these objectives, and the Department has certified that there is no other, non-privileged material that was relied upon by the decision-maker.

Rather than seeking to enable judicial review, Plaintiffs' requests read like a wish-list of what they would like the administrative record to be. But the administrative record has been compiled, and Defendants are prepared to defend the decision of the Department based on that record.

Accordingly, the Court should deny all discovery requests including, as relevant to this issue, Requests for Production Nos. 12-20 and Interrogatory Nos. 9-15, which the Plaintiffs requested on the grounds to "supplement the record."

**IV.    Plaintiffs Should Provide Evidence of Their Own Harm.**

Finally, Plaintiffs seek discovery "of the government's knowledge of, and Department documents reflecting, the harm suffered by Plaintiffs—*i.e.*, evidence only in Defendants' possession." Disc. Mot. at 16. There is no basis for the Court to grant any discovery into these topics. First, Plaintiffs cite no case law for the proposition that opposed discovery on a federal defendant is ever warranted on the harms suffered by a plaintiff in an APA case. Rather, they rely on cases that have allowed evidence submitted by plaintiffs on the harm they suffer, unopposed discovery, or discovery into the plaintiff by the Government. *See Eco Tour Adventures, Inc. v. Zinke,* 249 F. Supp. 3d 360, 369 n.7 (D.D.C. 2017) ("As support for their pending motions, the parties rely on declarations that are not in the AR"); *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1106 (N.D. Cal. 2018) ("In response to the Organizations' motion for a preliminary injunction, Defendants filed a motion to strike various attached or incorporated materials, arguing that they were improper extra-record evidence in this administrative review case"); *Texas v. U.S. DHS,* No. 6:23-cv-00007, 2023 WL 2842760, at *2 (S.D. Tex. Apr. 7, 2023) (allowing discovery when neither party opposed); *Patient Servs., Inc. v. United States*, No. 3:18-cv-00016, 2019 WL 267872, at *11 (E.D. Va. Jan. 18, 2019) (allowing discovery into plaintiff).

Plaintiffs are in the best position, and only position, to provide evidence of their own harms. Indeed, one case cited by Plaintiffs for the proposition that discovery is allowed into harm allegations was an order allowing the *Government* to take discovery on *plaintiffs* because the Government could not know the harms suffered by Plaintiffs. *Patient Servs., Inc.*, 2019 WL 267872, at *11 (E.D. Va. Jan. 18, 2019). The Government cannot know better than the Plaintiffs or have better evidence than Plaintiffs on their specific harms. And whether or not the Government knew that Plaintiffs might suffer harm is irrelevant to the question of whether or not Plaintiffs are, in fact, suffering irreparable harm.

Plaintiffs appear to ground their request partially in the hope of obtaining discovery on how non-parties are harmed by Defendants' actions. *See* Disc. Mot. at 16 ("Because 50 state education agencies and thousands of local education agencies share the Department's finite technical assistance and other services, Plaintiffs should be permitted discovery into the demands on these shared resources, and not just the Department's interactions with Plaintiffs"); *see also id.* ("Such information will enable Plaintiffs to establish causation, **to demonstrate that the harms are universal** and predictable rather than unique, and the likelihood that these harms will continue." (emphasis added)). But the interests of non-parties are not at issue here, and any remedy that results from this case should be tailored only to the Plaintiffs in this case. *Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025) ("But to the extent respondents argue that [the complete-relief principle] justifies the award of relief to nonparties, they are mistaken.").

Accordingly, Plaintiffs should not be able to receive a universal remedy premised on the harms of non-parties. Any discovery into the harms of non-parties, therefore, is irrelevant and should not be allowed.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for discovery.

DATED: November 20, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

BRAD P. ROSENBERG
Special Counsel

*/s/ Michael Bruns*
Michael Bruns
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
michael.bruns@usdoj.gov

*Counsel for Defendants*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the NEF (NEF)


Dated: November 20, 2025                      /s/ Michael Bruns

                                              Michael Bruns