IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>　Plaintiffs,<br><br>v.<br><br>LINDA McMAHON, *et al.*,<br><br>　Defendants. | Case No. 1:25-cv-10601-MJJ |

| | |
|---|---|
| SOMERVILLE PUBLIC SCHOOLS, *et al.*,<br><br>　Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>　Defendants. | Case No. 1:25-cv-10677-MJJ |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISCOVERY**

Defendants fired nearly half of the Department's staff in a deliberate bid to dismantle the Department. State Plaintiffs and Somerville Plaintiffs (together, "Plaintiffs") filed suit, arguing that this decision violated the Administrative Procedure Act ("APA") and the U.S. Constitution. Defendants provided a threadbare Administrative Record ("AR") with 155 pages of general materials, but no documents adequately explaining how or why the decision to terminate 1,300 Department employees, reorganize, and transfer the functions of the Department was made, who made it, how or whether alternatives were considered, or how or whether plans were made to ensure the Department could continue to meet its obligations. Defendants' attempt to defend the adequacy of their AR fails. Plaintiffs seek limited discovery that is directly relevant to the central issues in this case and tailored to provide this Court with the information necessary for adequate judicial review of agency action. And Plaintiffs are entitled to that discovery because it is necessary for a complete administrative record, for effective judicial review, and because Defendants have acted in bad faith by presenting this Court with pretextual reasons for their decision-making and omitting key documents from the AR. Accordingly, the Court should order completion of the record, production of a privilege log, supplementation of the record, and extra-record discovery.

## ARGUMENT

**I.  The Court Should Order Completion of the Record**

Plaintiffs have presented non-speculative reasons to believe that documents exist and were before agency decision makers. *Roe v. Mayorkas*, 22-cv-10808-ADB, 2024 WL 5198705, at *7 (D. Mass., Oct. 2, 2024); *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 13 (D.D.C. 2015). Indeed, Defendants acknowledge that many of these documents exist and simply have not been produced, concessions that undermine any claim of speculation.

For example, a sworn declaration from a former employee submitted in this litigation confirms the existence of lists describing statutorily required functions that should have been part of the AR.

1

(Doc. No. 102-11 at 4). Defendants do not dispute the existence of such documents and instead claim—without a single citation— that such documents are protected from production under the deliberative-process privilege, yet refuse to produce a privilege log or even properly invoke the privilege. *See, e.g.*, *Ascom Hasler Mailing Sys., Inc. v. USPS*, 267 F.R.D. 1, 4 (D.D.C. 2010) (describing requirements for invoking the privilege). Defendants' concession that these documents exist undermine any argument as to the "speculative" nature of Plaintiffs' claims and simultaneously contradict their claim that a privilege log is unnecessary here, particularly where Defendants may be relying on unsupportable claims of privilege to shield documents from production.[1]

In any event, "[t]he deliberative process privilege is qualified, not absolute," and it may be "overridden by other considerations," including the "need for accurate fact-finding." *AFGE, AFL-CIO v. Trump*, 791 F. Supp. 3d 1065, 1070 (N.D. Cal. 2025). As Plaintiffs describe below and in their Motion, that need is especially acute in this case, where evidence reflects that Defendants are saying one thing in court, and another to the public.

Defendants also appear to contend—unreasonably—that in firing 1,300 employees, they relied on no documents that identified (individually or collectively) the universe of employees singled out for termination. But even the anemic record and other information adduced by Plaintiffs belies this outlandish contention. Defendants do not deny, for example, that they sent a list of eliminated positions to union officials—a list that is more inclusive than any document in the record—but deny that this document was relevant or relied upon by the agency in terminating staff. (Doc. No. 186 at 15-16). Defendants' position—that they fired half their staff but will produce no documents reflecting or substantiating that decision—is untenable.

---

[1] *See AFGE, AFL-CIO v. Trump*, 155 F.4th 1082, 1092 (9th Cir. 2025) (rejecting governments' arguments attempting to bar production of purportedly privileged Agency RIF and Reorganization Plans).

Likewise, Defendants' concessions with respect to the absence of process around the firings and reorganization support Plaintiffs' request for completion of the record and, as explained further below, for discovery. Defendants assert that documents made in the ordinary course of a RIF and reorganization—such as documentation about changes to the staffing plan and a Reorganization Plan—do not exist. (Doc. No. 186 at 16). If this is the case, this admission confirms the arbitrary and capricious nature of Defendants' actions and the bad faith that supports Plaintiffs' need for further production.

## II. The Court Should Order Supplementation of the Record Because Gaps in the Administrative Record Preclude Effective Judicial Review

Even if the Court were to credit Defendants' assertions that the AR is "complete," where the AR provided is insufficient to enable effective judicial review, supplementation of the record with documents they should have relied upon is appropriate. *City of Taunton v. EPA*, 895 F.3d 120, 127 (1st Cir. 2018).[2] Plaintiffs have shown an ample basis to believe that the AR contains significant gaps that hinder effective judicial review.

The AR provides no window into the nature or justifications for the Defendants' efforts to dismantle the Department or how the RIF and reorganization rationally accomplish that overhaul within the confines of existing statutory obligations. (Doc. No. 186 at 9). The AR includes one cursory statement about efficiency, statutory compliance, and fiscal sustainability, (*see* Doc. No. 173-8), which is wholly insufficient to provide for judicial scrutiny of the destruction of an agency.

The AR is also rife with internal contradictions. It includes multiple lists of terminated positions including Doc No. 173-5, Doc No. 173-6, and Doc No. 173-7, which are inconsistent with each other and with the Defendants' public representations about the RIF. Defendants argue that "documentation for the changes between [the lists of terminated positions] do [*sic*] not exist." (Doc.

---

[2] Defendants argue the standard in *Taunton* only applies to documents in Plaintiffs' possession. Not so. *See e.g.*, *Olsen v. United States*, 414 F.3d 144, 156 (1st Cir. 2005) (applying standard to agency materials).

3

No. 186 at 15). It strains credulity that *no* documents exist that explain why certain categories of positions within the Department that were slated for termination were not ultimately cut and vice versa. As noted above, the AR does not even contain a final or full accounting of the employees chosen for termination. Without that information, the Court cannot meaningfully assess whether the Department arbitrarily failed to consider its need to meet its statutory requirements in violation of the APA. That is precisely the kind of information that Plaintiffs' narrowly tailored discovery requests seek. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (U.S. 1971) (abrogated on other grounds) (courts can require "administrative officials who participated in the decision to give testimony explaining their action" where such explanatory documents do not exist).

Defendants attempt to rationalize the brevity of the AR by pointing to "the discretionary nature of determining a headcount at an agency." (Doc. No. 186 at 15). However, Defendants conflate the scope of agency discretion—a merits question as to whether Defendants' conduct was within the scope of that discretion—with the existence or not of documents showing how their determinations were made. Defendants do not argue that no documents exist that justify, explain, or describe their actions. Therefore, such documents should be produced to allow the Court to adequately review the challenged actions, or if not, discovery to reveal the reasoning (or lack therefore) behind those actions is warranted, as described below. Moreover, Plaintiffs are not simply challenging staffing changes; Plaintiffs are challenging Defendants' actions to close the Department as whole, including shuttering entire offices by zeroing out their staff, and transferring entire programs functions to other agencies—with the openly acknowledged goal of closing the Department. Failing to fulfill basic statutory obligations is not "discretionary" in nature.

### III.  Defendants' Bad Faith Warrants Further Discovery.

Defendants belabor the general principle that APA cases are typically decided based on the four corners of the AR. (Doc No. 186 at 11-12). But that principle is far from absolute (and moreover,

4

relies on complete and robust AR, which this is not). Where defendants act in bad faith, courts can, and do, inquire into the facts beyond the AR. *Housatonic River Initiative v. EPA*, 75 F.4th 248, 278 (1st Cir. 2023) (internal quotation marks and citation omitted).

Plaintiffs have presented evidence that Defendants purported rationales for the RIF are pretextual. "Pretext is the paradigm of agency bad faith," and can be the basis for allowing extra-record discovery. *Sweet v. DeVos*, 495 F. Supp. 3d 835, 844, 846 (N.D. Cal. 2020) (permitting extra-record discovery where "the evidence tells a story that does not match the explanation" given by the agency); *see also Dep't of Com. v. New York*, 588 U.S. 752, 783 (2019). Plaintiffs have catalogued, time and again, that Defendants have made public statements that directly contradict the representations they have made before this Court. Defendants have told this Court that the RIF was designed to increase "efficiency, accountability, and ensur[e] that resources are directed where they matter most: to students, parents, and teachers" and the RIF reorganized the Department to "better serve students, parents, educators, and taxpayers." (Doc. No. 186 at 9). But Defendants have publicly asserted, informally through statements and emails and formally through citations to an Executive Order, that they intend to ignore the clear requirements of numerous federal statutes and permanently "shut down the Department of Education."[3]

Counsel for the Department fault Plaintiffs for "selectively" quoting statements by the Secretary that expressed an intent to dismantle the Department, (Doc. No. 168 at 8), because the administration has paid lip service to the fact that it must work with Congress to legally shut down the Department. (*Id.* at 23). Yet such arguments fall flat given Defendants' continued statements and actions. Secretary McMahon and the Department's official account have repeatedly affirmed that they view the Department as unnecessary, that closing it is a Halloween "treat," and that it was the

---

[3] Sareen Habeshian, *Education Secretary Says Mass Layoffs First Step Toward Shutting Down DoE*, Axios (Mar. 11, 2025), https://perma.cc/AB39-A36G.

Defendants' desire that furloughed employees would be "out of office" for good.[4] In a November 17, 2025, statement the President openly declared that his administration is "dismantling the Department of Education."[5] The following day, on November 18, 2025, the Department announced that, pursuant to legally dubious Inter-Agency Agreements, billions of dollars in funds and functions of the Department were being transferred to other federal agencies. Simply put, counsel's arguments continue to conflict with the public statements and actions of Defendants, all of which underscore an attempt to abolish the Department of Education, which is contrary to congress's legally binding instruction.

The pretextual nature of Defendants' assertions is further evident from the barebones AR they produced, which contains almost no reasoning as to the decision to hollow out the agency. The AR offers only three perfunctory rationales without elaboration or record support: "[e]nhanc[ing] operational efficiency by consolidating functions and eliminating duplicative roles," "[e]nsur[ing] compliance with statutory mandates for the Department while discontinuing non-essential programs," and "[i]mprov[ing] fiscal sustainability by significantly reducing personnel costs." (*See* Doc. No. 173-8). But no documents in the AR reflect that Defendants relied on this justification or did any analysis as to efficiency or accountability. The AR contains no documentation indicating how or on what basis those competing goals were balanced or evaluated, strongly suggesting that those rationales are not the true reasons behind the action. This Court is "not required to exhibit a naiveté from which ordinary citizens are free" when there is a "disconnect between the decision made and the explanation given." *Dep't of Com.*, 588 U.S. at. 785 (citation omitted).

---

[4] Secretary Linda McMahon (@EdSecMcMahon), X (Nov. 28, 2025, 4:55 PM), https://perma.cc/AV88-CRMJ; Secretary Linda McMahon (@EDSecMcMahon), X (Oct. 15, 2025, 1:01PM), https://perma.cc/32E9-BA8Y; Secretary Linda McMahon (@EDSecMcMahon), X (Oct. 31, 2025, 12:51PM), https://perma.cc/T3E9-VC5J; U.S. Department of Education (@usedgov), X (Nov. 14, 2025, 9:00AM), https://perma.cc/MQ25-DK97. On November 13, 2025, the Department's official account posted a video of clips from Keeping up with the Kardashians (a reality TV show) with the caption, "Government shutdown is over, and we're baaackkkkk! But let's be honest: did you really miss us at all?" U.S. Department of Education (@usedgov), X (Nov. 13, 2025, 8:00AM), https://perma.cc/4KT3-T7SE.
[5] The White House, *Presidential Message on American Education Week* (Nov. 17, 2025), https://perma.cc/TCR3-N4X5.

Additionally, evidence suggesting that the agency's determination was rushed, and that it was the product of political influence, further weigh in favor of extra-record discovery here. *See Stand Up for Cal. v. Dep't of Interior*, 315 F. Supp. 3d 289, 291-92 (D.D.C. 2018) (granting limited discovery where agency acted in bad faith demonstrated by "a rushed review process, culminating in a decision issued on the eve of the change in Presidential Administrations."); *Tummino v. Hamburg*, 936 F. Supp. 2d 162, 196 (E.D.N.Y. 2013) (granting discovery where plaintiffs made a "strong showing of bad faith and improper political influence"). Secretary McMahon was confirmed on March 3, 2025.[6] The RIFs were announced on March 11, 2025.[7] The rationale for the RIFs appears in a document from February 28, 2025. (Doc. No. 173-8). It is not clear who at the agency initiated the RIF process, or how the Secretary was able to confirm in seven days that the RIF met the Department's stated rationale and was cutting "bureaucratic bloat" instead of essential Departmental programming.[8] This rushed process is no surprise given the political pressure put on the Department by the President who has openly stated his goal of abolishing the Department.[9] In nominating Secretary McMahon to lead the Department, President Trump directed her to "put [her]self out of a job."[10] The Agency Defendants' actions are consistent with that edict, and not with the post-hoc "efficiency" rationale they are putting forth in this case.

Despite the unexplained gaps in the AR, the inconsistent public narrative, and the inherent absurdity of Defendants' decision to gut whole offices within the Department and terminate half of its employees on a 155-page record, Defendants assert that Plaintiffs cannot overcome the presumption of regularity accorded to agency action. (Doc. No. 186 at 21). However, the presumption

---

[6] Kara Arundel, *McMahon Confirmed as Education Secretary*, K-12 Dive (Mar. 3, 2025), https://perma.cc/SD4U-RZ7J.
[7] Press Release, Dep't of Educ., U.S. Department of Education Initiates Reduction in Force (Mar. 11, 2025), https://perma.cc/3D77-T8KF.
[8] Arundel, *supra* note 5.
[9] Graham Kates, *Can Trump Dismantle the Department of Education? It Won't Be Easy, Experts Say*, CBS News (Feb. 4, 2025), https://perma.cc/Z22T-DTER.
[10] Ryan King, *Trump Says Education Secretary's Goal Will Be to 'Put Herself Out of a Job' as He Pushes to Abolish DOE*, N.Y. Post (Feb. 4, 2025), https://perma.cc/YSN3-KXCV.

7

is merely that, a presumption that can be overcome, which it has here, and in many other recent cases challenging this administration's actions. *See Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 92 (D.D.C. 2025) ("In just six months, the President of the United States may have forfeited the right to such a presumption of regularity."); *id.* 88-92 (citing cases).[11]

Similarly, Defendants' claims that Plaintiffs' requests for discovery as to irreparable harm call for documents within the possession of Plaintiffs miss the point. To be sure, Plaintiffs are aware of the harm to their agencies and institutions stemming from the continued dismantling of the Department. Yet Defendants are incorrect that such harm would not be within their possession, custody, or control. Information as to how many civil rights complaints have been abandoned and how federal student aid is being addressed (or not) is precisely the type of information that is within the control of the Defendants and relevant to Plaintiffs' claims of harm.

### IV. Plaintiffs' Interrogatories and Deposition Requests Are Sufficiently Tailored to Information Necessary to Resolve the Case.

Defendants challenge Plaintiffs' interrogatories as overbroad and assert that Plaintiffs seek information protected by the deliberative-process privilege. They are wrong on both counts.

Plaintiffs' interrogatories are narrowly tailored to the needs of this case. Interrogatory 1 seeks the identity of all individuals who were involved in the decision-making process for the RIF, reorganization, or transfer of funds and programs to other agencies. (Doc. No. 173-3 at 7). This interrogatory is necessary to determine who made the relevant decisions and under what authority. Interrogatory 3 seeks the identification of all individuals affected by the RIF and the date they were added to the list of employees to be terminated. *Id.* Plaintiffs allege that the RIF is a pretextual attempt to destroy the Department. Particularly given that the Defendants have produced no document identifying a complete list of eliminated employees (and have claimed that a document that does

---

[11] *See* Ryan Goodman, et al., *The "Presumption of Regularity" in Trump Administration Litigation*, Just Security (Nov. 20, 2025), https://perma.cc/4NFN-CVPG.

contain this complete list is not subject to discovery), their objection to this interrogatory is not credible. The identity of individual roles included in the RIF is critical for determining what functions of the Department may have been disabled and whether the Department can continue to perform statutorily mandated functions. Additionally, the timing of the RIF plans is crucial for understanding what, if any, considerations were made after external individuals or employees raised objections or concerns about the Department's ability to carry out statutory functions.

Defendants criticize Interrogatory Nos. 2, 4, and 7 as intruding on "agency internal deliberations." (Doc. No. 186 at 18). But the information sought through these interrogatories bears directly on the central question before this Court in this case: what, if any, reasoning went into this decision which has been challenged as arbitrary and capricious? Interrogatory 2 asks Defendants to "[i]dentify all documents and communications setting forth directives, instructions, data, analyses, criteria, considerations, or other bases that were used in the decision-making process related to the RIF." (Doc. No. 173-3 at 7). If such records are not in the administrative record, Defendants should be required to explain why. Interrogatory 4 asks Defendants to "[d]escribe the process by which the Agency Defendants identified the individuals and Offices listed in EDNY_00145-EDNY_00155 as being subject to the RIF, identifying in the response which offices, if any, the Department at any point planned to eliminate." *Id.* And Interrogatory 7 asks Defendants to "Describe what steps the Department took to identify which statutorily-mandated functions each employee within the Department fulfilled, when these steps were taken, and identify any document(s), including any spreadsheet(s), concerning the information collected." *Id.* at 8. Each of these interrogatories will help Plaintiffs identify the nature and extent of deliberations pertaining to Defendants' otherwise unexplained decision-making, and so are directly relevant to whether the agency considered the necessary consequences of the RIF and whether they were, in fact, acting in bad faith.

For all the reasons that Plaintiffs' Interrogatories are tailored to the precise discovery needs of this case, so too, their 30(b)(6) notice seeks similar information otherwise absent from the AR and critical to resolving key issues before the Court. Notably, Defendants do not identify which of the topics set forth in Plaintiffs' 30(b)(6) notice are "unnecessary and inappropriate," as they claim, or why. (Doc. No. 186 at 24). Defendants fault Plaintiffs for seeking a deposition seeking "duplicate information already available in the [AR]," id., but this essential information is missing from the AR. Likewise, Defendants cannot contend that the deposition is duplicative of written discovery requests when they also simultaneously refuse to provide responses to those discovery requests."

## V.     The Court Should Order Defendants to Produce a Privilege Log for Withheld Documents.

Defendants acknowledge the growing consensus that "agencies must submit a log if they withhold privileged materials from an AR." *Save the Colo. v. Spellmon*, No. 18-cv-03258-CMA, 2023 WL 2402923, at *4 (D. Colo. Mar. 7, 2023). Because, as they have conceded, Defendants withheld documents from the AR here, they should be ordered to produce a log. *See* (Doc. No. 186 at 16) ("These documents are privileged under the deliberative process privilege."); *cf. id.* at 26 ("[T]he Department has certified that there is no other, non-privileged material that was relied upon by the decision-maker.").

Defendants rely on *Roe* to argue that they need not produce a log because the Court has not yet concluded that they have acted in bad faith. But *Roe* provides Defendants no safe harbor. In *Roe*, the government initially improperly withheld two sets of documents but cured that omission, and the Court concluded that the initial omission, standing alone, was insufficient to support a finding of bad faith and so denied the Plaintiffs' request for a privilege log. *Roe*, 2024 WL 5198705, at *11. Here, by contrast, Defendants have cured none of their omissions from the AR, and as discussed above, their actions satisfy the bad faith standard. Accordingly, they should be required to produce a privilege log.

10

RESPECTFULLY SUBMITTED this 5th day of December 2025.

By: /s/ *Kali Schellenberg*

Rachel F. Homer (MA State Bar No. 693642)
Kali Schellenberg (MA State Bar No. 694875)
Will Bardwell* (DC Bar No. 90006120)
Elena Goldstein* (NY State Bar No. 4210456)
Victoria S. Nugent* (DC Bar No. 470800)
Adnan Perwez* (DC Bar No. 90027532)
Shiva Kooragayala* (Ill. Bar No. 6336195)
Paul R.Q. Wolfson* (DC Bar No. 414759)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
Telephone: 833-391-4732
Facsimile: 202-796-4426
rhomer@democracyforward.org
kschellenberg@democracyforward.org
wbardwell@democracyforward.org
egoldstein@democracyforward.org
vnugent@democracyforward.org
aperwez@democracyforward.org
skooragayala@democracyforward.org
pwolfson@democracyforward.org
Counsel for Plaintiffs

* Admitted *pro hac vice*

*Counsel for Somerville Plaintiffs*

**ANDREA JOY CAMPBELL**
Attorney General for the Commonwealth of Massachusetts

By: /s/ *Michelle Pascucci*
Katherine Dirks (BBO No. 673674)
Chief State Trial Counsel
Michelle Pascucci (BBO No. 690899)
State Trial Counsel
Yael Shavit (BBO No. 695333)
Chief, Consumer Protection Division
Anna Lumelsky (BBO No. 677708)
  Deputy State Solicitor
Elizabeth Carnes Flynn (BBO No. 687708)
Nathaniel Hyman (BBO No. 698506)

**LETITIA JAMES**
Attorney General for the State of New York

By: /s/ *Rabia Muqaddam*
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Molly Thomas-Jensen*
Special Counsel
Gina Bull*
Assistant Attorney General
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
molly.thomas-jensen@ag.ny.gov

11

Arjun Jaikumar (BBO No. 691311)
Assistant Attorneys General
1 Ashburton Pl.
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
yael.shavit@mass.gov
anna.lumelsky@mass.gov
elizabeth.carnes-flynn@mass.gov
nathaniel.j.hyman@mass.gov
arjun.k.jaikumar@mass.gov

gina.bull@ag.ny.gov

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes*
Solicitor General
Ewan C. Rayner*
Caitlyn B. Carpenter*
Deputy Solicitors General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov
ewan.rayner@hawaii.gov
caitlyn.b.carpenter@hawaii.gov

**ROB BONTA**
Attorney General for the State of California

By: */s/ Lucia Choi*
Lucia J. Choi*
Deputy Attorney General
Michael L. Newman**
Senior Assistant Attorney General
Srividya Panchalam*
James E. Stanley*
Supervising Deputy Attorneys General
Natasha A. Reyes*
Deputy Attorneys General
California Attorney General's Office
300 South Spring Street
Los Angeles, CA 90013
(213) 269-6364
Lucia.Choi@doj.ca.gov
Michael.Newman@doj.ca.gov
Srividya.Panchalam@doj.ca.gov
James.Stanley@doj.ca.gov
Natasha.Reyes@doj.ca.gov

**PHIL WEISER**
Attorney General for the State of Colorado

By: */s/ David Moskowitz*
David Moskowitz*
Deputy Solicitor General
1300 Broadway, #10

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: */s/ Clinten N. Garrett*
Clinten N. Garrett**
Senior Appellate Counsel
2005 North Central Avenue
Phoenix, AZ 85004

Denver, CO 80203
(720) 508-6000
David.Moskowitz@coag.gov

**KATHLEEN JENNINGS**
Attorney General for the State of Delaware

By: */s/ Ian R. Liston*
Ian R. Liston**
Director of Impact Litigation
Vanessa L. Kassab**
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Andrew Mendrala*
Andrew Mendrala*
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

(602) 542-3333
Clinten.Garrett@azag.gov

**WILLIAM TONG**
Attorney General for the State of Connecticut

By: */s/ Patrick Ring*
Patrick Ring*
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808 5020
Patrick.ring@ct.gov

**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Karyn L. Bass Ehler*
Karyn L. Bass Ehler*
Assistant Chief Deputy Attorney General
Katharine P. Roberts*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-4985
karyn.bassehler@ilag.gov
katharine.roberts@ilag.gov

## CERTIFICATE OF SERVICE

I certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

By: /s/ *Kali Schellenberg*
Kali Schellenberg