# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, | |
| Plaintiffs, | Case No. 1:25-cv-10601-MJJ |
| v. | |
| LINDA McMAHON, *et al.*, | |
| Defendants. | |

| | |
|---|---|
| SOMERVILLE PUBLIC SCHOOLS, *et al.*, | |
| Plaintiffs, | Case No. 1:25-cv-10677-MJJ |
| v. | |
| DONALD J. TRUMP, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' SECOND SET OF REQUESTS FOR**
**THE PRODUCTION OF DOCUMENTS**

The State Plaintiffs and Somerville Plaintiffs (together, the Plaintiffs) hereby serve upon defendants the U.S. Department of Education and Secretary Linda McMahon (the Agency Defendants) the following second set of requests for the production of documents. Plaintiffs requests that the Agency Defendants respond to these requests separately within thirty (30) days after service. These requests are subject to the instructions and definitions set forth herein and as specified in Rule 34 of the Federal Rules of Civil Procedure and Rule 34 of the Local Rules of the United States District Court for the District of Massachusetts.

1

**DEFINITIONS**

1. Plaintiffs incorporate by reference herein the Uniform Definitions in Discovery Requests set out in Local Rule 26.5 of the Local Rules of the U.S. District Court for the District of Massachusetts.

2. "Plaintiffs" shall mean the consolidated plaintiffs in the above-captioned matters.

3. "Agency Defendants" shall refer to the U.S. Department of Education, its secretary, Secretary Linda McMahon, and anyone acting on behalf of Secretary McMahon.

4. "Defendants" shall refer to the Agency Defendants and President Donald J. Trump.

5. "Department" shall refer to the U.S. Department of Education and any employees, agents, representatives, or contractors working on behalf of the U.S. Department of Education.

6. "Documents" means all records and other tangible media of expression of whatever nature however and wherever created, produced or stored (manually, mechanically, electronically, or otherwise), including all electronic mail ("e-mail"), instant messages, Slack messages, Teams messages, text messages, iMessages or other wireless device messages, voicemail, calendars, date books, appointment books, diaries, books, papers, files, notes, confirmations, correspondence, memoranda, reports, records, journals, registers, analyses, algorithms, data or databases, plans, minutes, notes or records or transcriptions of conversations or communications or meetings.

7. "Secretary" shall refer to defendant Secretary Linda McMahon and any employees, agents, representatives, or contractors working on behalf of defendant Secretary Linda McMahon.

8. The terms "and" and "or" as used herein shall, unless the context does not permit, be construed to mean "and/or."

9. The term "any" as used herein, shall, unless the context does not permit, be construed to mean "any and all."

10.    The terms "include" or "including" shall mean "include without limitation" and "including without limitation."

11.    "Employee(s)" means individuals who were in the past or are presently employed by the Department.

12.    The term "RIF" shall mean the reduction-in-force announced by the Department on March 11, 2025 and as described in paragraph one of the Complaint in *State of New York. et al. v. Linda McMahon, et al*, 1:25-cv-10601 (doc. no. 1).

13.    The term "March 2025 Executive Order" shall mean the Executive Order issued by President Trump on March 20, 2025 entitled "Improving Education Outcomes by Empowering Parents, States, and Communities."

14.    The term "OIE-DOI IAA" shall mean the Interagency Agreement between the Department and the U.S. Department of the Interior Relating to the Office of Indian Education, included as EDNY_00156 – EDNY_00166 in the administrative record.

15.    The term "OESE-DOL IAA" shall mean the Interagency Agreement between the Department and the U.S. Department of Labor relating to the Office of Elementary and Secondary Education, included as EDNY_00167-EDNY_00178 in the administrative record.

16.    The term "OCTAE-DOL IAA" shall mean the Interagency Agreement between the Department and the U.S. Department of Labor relating to the Office of Career, Technical, and Adult Education, included as EDNY_00179 – EDNY_00186 in the administrative record.

17.    The term "OPE-DOL IAA" shall mean the Interagency Agreement between the Department and the U.S. Department of Labor relating to Higher Education Programs, included as EDNY_00187 – EDNY_00199 in the administrative record.

18.     The term "CCAMPIS IAA" shall mean the Interagency Agreement between the Department and the U.S. Department of Health and Human Services, Administration for Children and Families relating to the CCAMPIS Program, included as EDNY_00200 – EDNY_00206 in the administrative record.

19.     The term "NCFMEA IAA" shall mean the Interagency Agreement between the Department and the U.S. Department of Health and Human Services Relating to the National Committee on Foreign Medical Education and Accreditation (NCFMEA).

20.     The term "IFLE IAA" shall mean the Interagency Agreement between the Department and the U.S. Department of State relating to International and Foreign Language Education (IFLE).

21.     The term "Section 117 IAA" shall mean the Interagency Agreement between the Department and the U.S. Department of State relating to Section 117 of the Higher Education Act of 1965.

22.     The term "FESSP IAA" shall mean the Interagency Agreement between the Department and the U.S. Department of Health and Human Services relating to  School Emergency Response to Violence (Project SERV), School Safety National Activities, Ready to Learn Programming, Full-Service Community Schools, Promise Neighborhoods, and Statewide Family Engagement Centers programs.

23.     The term "FSA-DOT IAA" shall mean the Interagency Agreement between the Department and the U.S. Treasury Department relating to certain Federal Student Aid functions.

24.     The "IAAs" refer to the OIE-DOI IAA, the OESE-DOL IAA, the OCTAE-DOL IAA, the OPE-DOL IAA, the CCAMPIS IAA, the NCFMEA IAA, the IFLE IAA, the Section 117

IAA, the FESSP IAA, the FSA-DOT IAA, and any other Interagency Agreement executed by the Department and any other federal body on or after January 20, 2025.

## INSTRUCTIONS

1.      Where a claim of privilege is asserted, the attorney asserting the privilege shall provide the information required by Rule 26(b)(5) of the Federal Rules of Civil Procedure and Local Rule 34.1(e) of the Local Rules of the United States District Court for the District of Massachusetts.

2.      Pursuant to Federal Rule of Civil Procedure 26(e), these discovery demands are to be deemed continuing in nature, so as to require further and supplemental responses if the Defendants receive or identify additional information after providing their initial responses to these requests.

## REQUESTS

1.      Documents sufficient to show how the following determinations were made with regard to the OIE-DOI IAA: (i) whether to enter into the Interagency Agreement; (ii) what programs and personnel were selected for inclusion in the OIE-DOI IAA and why; and (iii) how the Department plans to implement the OIE-DOI IAA.

2.      Documents reflecting how Defendants decided the OIE-DOI IAA will "further[] and improv[e]. . . American Indian education in the United States." EDNY_00156.

3.      Documents reflecting how Defendants decided the OIE-DOI IAA "(1) enables administrative reforms to agency policies and programmatic requirements; (2) provides process improvements to enhance the experience for American Indian education program participants; and (3) connects ED and DOI American Indian education programs to provide a coordinated federal Indian education system that centers the rights of families." EDNY_00156.

4.     Documents reflecting how Defendants decided the OIE-DOI IAA "will enhance opportunities to invest in, and improve, Indian education through collaboration with state, local, and tribal education providers."  EDNY_00156.

5.     Documents sufficient to show how the Department planned to "coordinat[e] program administration and grant administration with the Bureau of Indian Education at DOI" for ED funded-programs under the Elementary and Secondary Education Act, the Higher Education Act, the Strengthening Career and Technical Education for the 21st Century Act ("Perkins V"), Individuals with Disabilities Education Act, and vocational rehabilitation programs at the Department funded under the Rehabilitation Act of 1973 via the OIE-DOI IAA.  EDNY_00156.

6.     Any documents reviewed by the Department with respect to the statement that the OIE-DOI IAA "will . . . reduce the administrative burden on states, institutions of higher education, and tribes by reducing reporting requirements and aligning performance reporting requirements for programs covered under the agreement, to the extent permissible under existing statutory authorities."  EDNY_00156.

7.     Documents reflecting any consideration by the Department as to how it will fulfill its statutory obligations, given the transfer of functions contemplated by Section 3 of the OIE-DOI IAA.

8.     Documents reflecting any consideration of the detailing of Department personnel to the Department of the Interior in the decision to enter into the OIE-DOI IAA.

9.     Documents reflecting communications between the Department and the Department of Interior during the decision-making process the OIE-DOI IAA, including without limitation any documents and communications regarding the division of labor between the Department of Interior and the Department under the terms of the OIE-DOI IAA.

6

10.    Documents sufficient to show how the following determinations were made with regard to the OESE-DOL IAA: (i) whether to enter into the Interagency Agreement; (ii) what programs and personnel were selected for inclusion in the OESE-DOL IAA, and why; and (iii) how the Department would implement the OESE-DOL IAA.

11.    Documents reflecting how the Department decided the OESE-DOL IAA will "empower parents and states, promote innovation, and deliver process improvements in pursuit of better outcomes for students in elementary and secondary education in the United States, by establishing a partnership that (1) enables administrative reforms to agency policies and programmatic requirements; (2) provides process improvements to enhance the experience for education and workforce program participants; and (3) connects ED education and workforce development programs with DOL workforce programs to provide a coordinated federal education and workforce system." EDNY_00167.

12.    Documents reflecting how the Department decided the OESE-DOL IAA will "enhance opportunities to invest in the education and upskilling of American students to meet rapidly evolving skill demands of industries; provide common programmatic requirements for identifying alternatives to the 4-year college degree path that are consistent with the specific skill needs of prospective employers; promote flexibilities to empower greater state and local alignment between education and workforce systems; and implement efficiencies to streamline information collection by harmonizing performance reporting, reducing the burden on state and local educational institutions, and ensuring that performance outcomes are measured using the most reliable data sources." EDNY_00167.

13.    Documents concerning how the Department anticipated fulfilling its "performance" obligations under Section 3 of the OESE-DOL IAA.

7

14.	Documents reflecting any consideration by the Department as to how the Department will fulfill its statutory obligations, given the transfer of functions contemplated by Section 3 of the OESE-DOL IAA.

15.	Documents reflecting any consideration of the detailing of Department personnel to the Department of Labor in the decision to enter into the OESE-DOL IAA.

16.	Documents and communications between the Department and the Department of Labor during the decision-making process of the OESE-DOL IAA, including without limitation any documents and communications regarding the division of labor between the Department of Labor and the Department under the terms of the OESE-DOL IAA.

17.	Documents sufficient to show how the following determinations were made with regard to the OCTAE-DOL IAA: (i) whether to enter into the Interagency Agreement; (ii) what programs and personnel were selected for inclusion in the OCTAE-DOL IAA, and why; and (iii) how the Department plans to implement the OCTAE-DOL IAA.

18.	Documents reflecting how the Department decided the OCTAE-DOL IAA will "(1) enable[] administrative reforms to agency policies and programmatic requirements; (2) provide[] process improvements to enhance the experience for education and workforce program participants; and (3) connect[] ED education and workforce development programs with DOL workforce programs to provide a coordinated federal education and workforce system, consistent with Executive Order No. 14278 signed on April 23, 2025."  EDNY_00179.

19.	Documents reflecting how the Department decided the OCTAE-DOL IAA will "return authority over education to the States and local communities while ensuring the effective and uninterrupted delivery of services, programs, and benefits on which Americans rely. . . ." EDNY_00179.

8

20.     Documents reflecting how the Department decided the OCTAE-DOL IAA will "enhance opportunities to invest in the upskilling of American students and workers to meet rapidly evolving skill demands of industries, including the use of Artificial Intelligence in the workplace; provide common programmatic requirements for identifying and making transparent alternative credentials and assessments to the 4-year college degree that can be mapped to the specific skill needs of prospective employers; and implement efficiencies to streamline information collection by harmonizing performance reporting, reducing the burden on grantees, and ensuring that performance outcomes are measured using the most reliable data sources." EDNY_00179.

21.     Documents reflecting how the Department decided the OCAE-DOL IAA will allow the Department and the Department of Labor to "coordinat[e] program administration and grant administration funds appropriated to ED's Office of Career, Technical, and Adult Education (OCTAE) for the adult education and family literacy programs funded under Title II of WIOA and career and technical education (CTE) programs funded by Perkins V." EDNY_00179.

22.     Documents reflecting how the Department decided the OCAE-DOL IAA will "leverage WIOA Title I adult, youth, and dislocated worker program funds; WIOA Title II adult education and family literacy funds; WIOA Title III Wagner-Peyser funds; and Perkins CTE program funds, in order to provide a seamless workforce development system designed to assist youth and adults with receiving training and postsecondary education needed to enter into, and persist in, high-wage, high-demand, high-skill occupations." EDNY_00179 – EDNY_00180.

23.     Documents concerning how the Department anticipated fulfilling its "performance" obligations under Section 3 of the OCTAE-DOL IAA.

9

24.    Documents reflecting any consideration by the Department as to how the Department will fulfill its statutory obligations, given the transfer of functions contemplated by Section 3 of the OCTAE-DOL IAA.

25.    Documents reflecting any consideration of the detailing of Department personnel to the Department of Labor in the decision to enter into the OCTAE-DOL IAA.

26.    Documents reflecting communications between the Department and the Department of Labor during the decision-making process of the OCTAE-DOL IAA, including without limitation any documents and communications regarding the division of labor between the Department of Labor and the Department under the terms of the OCTAE-DOL IAA.

27.    Documents sufficient to show how the following determinations were made with regard to the OPE-DOL IAA: (i) whether to enter into the Interagency Agreement; (ii) what programs and personnel were selected for inclusion in the OPE-DOL IAA, and why; and (iii) how the Department would implement the OPE-DOL IAA.

28.    Documents reflecting how the Department decided the OPE-DOL IAA will "promote innovation and process improvements in pursuit of better employment and earnings outcomes for students and other stakeholders in higher education institutions, by establishing a partnership that (1) enables administrative reforms to agency policies and programmatic requirements; (2) provides process improvements to enhance the experience for students and stakeholders in higher education institutions; and (3) connects ED education programs with DOL programs to provide a coordinated federal approach to higher education and workforce development."  EDNY_00187.

29.    Documents concerning how the Department anticipated fulfilling its "performance" obligations under Section 3 of the OPE-DOL IAA.

30.     Documents reflecting any consideration by the Department as to how the Department will fulfill its statutory obligations, given the transfer of functions contemplated by Section 3 of the OPE-DOL IAA.

31.     Documents reflecting any consideration of the detailing of Department personnel to the Department of Labor in the decision to enter into the OPE-DOL IAA.

32.     Documents reflecting communications between the Department and the Department of Labor during the decision-making process of the OPE-DOL IAA, including without limitation any documents and communications regarding the division of labor between the Department of Labor and the Department under the terms of the OPE-DOL IAA.

33.     Documents sufficient to show how the following determinations were made with regard to the CCAMPIS IAA: (i) whether to enter into the Interagency Agreement; (ii) what programs and personnel were selected for inclusion in the CCAMPIS IAA, and why; and (iii) how the Department plans to implement the CCAMPIS IAA.

34.     Documents reflecting how the Department decided the CCAMPIS IAA will "further[] and improv[e]. . . childcare support for parents in school through the Child Care Access Means Parents in Schools (CCAMPIS) program." EDNY_00200.

35.     Documents reflecting how the Department decided the CCAMPIS IAA will "promote innovation and process improvements in pursuit of better outcomes for parents and children, by establishing a partnership that (1) enables administrative reforms to agency policies and programmatic requirements; (2) provides process improvements by better leveraging the expertise and resources of HHS-ACF to provide campus-based child care students to low-income students." EDNY_00200.

36.    Documents reflecting how the Department decided the CCAMPIS IAA will "reduce the administrative burden on States by reducing reporting requirements and aligning performance reporting requirements for programs covered under the agreement, to the extent permissible under existing statutory authorities."  EDNY_00200.

37.    Documents concerning how the Department anticipated fulfilling its "performance" obligations under Section 3 of the CCAMPIS IAA.

38.    Documents reflecting any consideration by the Department as to how the Department will fulfill its statutory obligations, given the transfer of functions contemplated by Section 3 of the CCAMPIS IAA.

39.    Documents reflecting any consideration of the detailing of Department personnel to the Department of Health and Human Services in the decision to enter into the CCAMPIS IAA.

40.    Documents reflecting communications between the Department and the Department of Health and Human Services during the decision-making process of the CCAMPIS IAA, including without limitation any documents and communications regarding the division of labor between the Department of Health and Human Services and the Department under the terms of the CCAMPIS IAA.

41.    Documents sufficient to show how the following determinations were made with regard to the NCFMEA IAA: (i) whether to enter into the Interagency Agreement; (ii) what programs and personnel were selected for inclusion in the NCFMEA IAA, and why; and (iii) how the Department plans to implement the NCFMEA IAA.

42.    Documents reflecting how the Department decided the NCFMEA IAA will assist the Department in "evaluating the standards of accreditation of foreign medical schools attended

by U.S. citizens who receive Federal student loans to ensure comparability with equivalent schools in the U.S." EDNY_00207.

43.    Documents reflecting how the Department decided the NCFMEA IAA "provides process improvements to enhance existing NCFMEA procedures for determining whether accreditation standards used by a foreign country to accredit medical schools are comparable to standards applied to medical schools in the United States . . . ." EDNY_00207.

44.    Documents reflecting how the Department decided the NCFMEA IAA "provides the NCFMEA with access to HHS medical education and accreditation subject matter expertise. . . ." EDNY_00207.

45.    Documents reflecting how the Department decided the NCFMEA IAA "provides a coordinated approach by the Federal government to consistent standards of accreditation for medical education of all U.S. physicians, 25 percent of whom are graduates of foreign medical schools." EDNY_00207.

46.    Documents reflecting how the Department decided the NCFMEA IAA will "better ensure that U.S. students can only receive federal student loans for enrollment at foreign medical schools that are subject to standards of accreditation determined by the NCFMEA to be comparable to the standards applied to U.S. medical schools, consistent with section 102 of the Higher Education Act." EDNY_00207.

47.    Documents reflecting how the Department decided the NCFMEA IAA will "improve[] assurance that graduates of foreign medical schools can meet the educational requirements necessary to pursue postgraduate medical education (i.e., residencies) in the U.S." EDNY_00207.

48.     Documents concerning how the Department anticipated fulfilling its "performance" obligations under Section 3 of the NCFMEA IAA.

49.     Documents reflecting any consideration by the Department as to how the Department will fulfill its statutory obligations, given the transfer of functions contemplated by Section 3 of the NCFMEA IAA.

50.     Documents reflecting any consideration of the detailing of Department personnel to the Department of Health and Human Services in the decision to enter into the NCFMEA IAA.

51.     Documents reflecting communications between the Department and the Department of Health and Human Services during the decision-making process of the NCFMEA IAA, including without limitation any documents and communications regarding the division of labor between the Department of Health and Human Services and the Department under the terms of the NCFMEA IAA.

52.     Documents sufficient to show how the following determinations were made with regard to the IFLE IAA: (i) whether to enter into the Interagency Agreement; (ii) what programs and personnel were selected for inclusion in the IFLE IAA, and why; and (iii) how the Department plans to implement the IFLE IAA.

53.     Documents reflecting how the Department decided the IFLE IAA will "further[] and improv[e]. . . the Title VI and Fulbright-Hays grant and fellowship programs that prepare U.S. students, teachers, and citizens to address global challenges by fostering a deeper understanding of languages, cultures, places, and peoples currently administered by the Office of International and Foreign Language Education." EDNY_00213.

54.     Documents reflecting how the Department decided the IFLE IAA will "(1) enable[] administrative reforms to agency policies and programmatic requirements; (2) provide[] process

14

improvements to enhance the experience for program participants; (3) restructure[] and consolidate[] education programs; and (4) connect[] ED education programs with State to provide a coordinate system." EDNY_00213.

55.    Documents reflecting how the Department decided the IFLE IAA will "streamline program funding to enhance opportunities to invest in the education and understanding of participants; to respond to the ongoing national need for individuals with expertise and competence in world languages and areas or international studies; to advance national security by developing a pipeline of highly proficient linguists and experts in critical world region; to contribute to developing a globally competent workforce able to engage with a multilingual and multicultural clientele at home and abroad; to expand access to international and foreign language learning, especially for traditionally underserved students; to support teaching and research on critical world regions, languages, and issues; and to implement efficiencies to streamline information collection by harmonizing performance measures, reducing the burden on grantees, and ensuring that performance outcomes are measured using the most reliable data sources."  EDNY_00213.

56.    Documents concerning how the Department anticipated fulfilling its "performance" obligations under Section 3 of the IFLE IAA.

57.    Documents reflecting any consideration by the Department as to how the Department will fulfill its statutory obligations, given the transfer of functions contemplated by Section 3 of the IFLE IAA.

58.    Documents reflecting any consideration of the detailing of Department personnel to the Department of Health and Human Services in the decision to enter into the IFLE IAA.

59.    Documents reflecting communications between the Department and the Department of State during the decision-making process of the IFLE IAA, including without

15

limitation any documents and communications regarding the division of labor between the Department of State and the Department under the terms of the IFLE IAA.

60. Documents concerning the decision to transfer any Congressionally-appropriated funds from the Department to any other federal agency under the terms of and pursuant to one of the IAAs.

61. Documents, including briefing materials, provided to the Secretary or upon which the Secretary relied, in deciding to enter into any of the IAAs.

62. Documents concerning any alternatives the Department considered prior to or instead of the IAAs.

63. Documents concerning any consideration by the Department of the impacts to students, schools, states, state education agencies, unions, loan servicers serving higher education loans, and other individuals or organizations relying on the Department's services due to the IAAs.

64. Documents analyzing the ability of other agencies to perform statutory functions of the Department (e.g., analyses of whether agency personnel are capable of handling those functions) prior to execution of IAAs with those agencies.

65. Documents and communications providing a rationale for the IAAs.

66. Documents and communications evincing how the IAAs further Executive Order 14,242, to the extent considered when entering into the IAAs.

67. Documents and communications analyzing efficiencies or economies of scale caused by the Department's entry into the IAAs, to the extent considered when entering into the IAAs.

68. Documents and communications analyzing costs associated with the Department's entry into the IAAs, to the extent considered when entering into the IAAs.

16

69. Documents reflecting any consideration of the combined impact of the March RIF and the IAAs on the Department's ability to perform its statutorily mandated functions, to the extent considered when entering into the IAAs.

70. Any after-action reports or retrospective analyses performed of the OCTAE-DOL IAA in the fall of 2025 that were completed prior to the execution of any other of the IAAs.

71. Documents sufficient to show how the following determinations were made with regard to the Section 117 IAA: (i) whether to enter into the Interagency Agreement; (ii) what programs and personnel were selected for inclusion in the Section 117 IAA, and why; and (iii) how the Department would implement the Section 117 IAA.

72. Documents concerning how the Department anticipated fulfilling its "performance" obligations under the Section 117 IAA.

73. Documents reflecting any consideration by the Department as to how the Department will fulfill its statutory obligations, given the transfer of functions contemplated by the Section 117 IAA.

74. Documents reflecting any consideration of the detailing of Department personnel to the Department of State in the decision to enter into the Section 117 IAA.

75. Documents reflecting communications between the Department and the Department of State during the decision-making process of the Section 117 IAA, including without limitation any documents and communications regarding the division of labor between the Department of State and the Department under the terms of the Section 117 IAA.

76. Documents sufficient to show how the following determinations were made with regard to the FEESP IAA: (i) whether to enter into the Interagency Agreement; (ii) what programs

and personnel were selected for inclusion in the FEESP IAA, and why; and (iii) how the Department would implement the FEESP IAA.

77.     Documents concerning how the Department anticipated fulfilling its performance obligations under the FEESP IAA.

78.     Documents reflecting any consideration by the Department as to how the Department will fulfill its statutory obligations, given the transfer of functions contemplated by the FEESP IAA.

79.     Documents reflecting any consideration of the detailing of Department personnel to the Department of Health and Human Services in the decision to enter into the FEESP IAA.

80.     Documents reflecting communications between the Department and the Department of Health and Human Services during the decision-making process of the FEESP IAA, including without limitation any documents and communications regarding the division of labor between the Department of Health and Human Services and the Department under the terms of the FEESP IAA.

81.     Documents sufficient to show how the following determinations were made with regard to the FSA-DOT IAA: (i) whether to enter into the Interagency Agreement; (ii) what programs and personnel were selected for inclusion in the FSA-DOT IAA, and why; and (iii) how the Department would implement the FSA-DOT IAA.

82.     Documents concerning how the Department anticipated fulfilling its performance obligations under the FSA-DOT IAA.

83.     Documents reflecting any consideration by the Department as to how the Department will fulfill its statutory obligations, given the transfer of functions contemplated by the FSA-DOT IAA.

18

84.    Documents reflecting any consideration of the detailing of Department personnel to the Treasury Department in the decision to enter into the FSA-DOT IAA.

85.    Documents reflecting communications between the Department and the Treasury Department during the decision-making process of the FSA-DOT IAA, including without limitation any documents and communications regarding the division of labor between the Treasury Department and the Department under the terms of the FSA-DOT IAA.

86.    The Section 117 IAA, the FESSP IAA, and the FSA-DOT IAA.

Dated: March 27, 2026

Respectfully submitted,

/s/ *Kali Schellenberg*
Rachel F. Homer (MA State Bar No. 693642)
Kali Schellenberg* (MA State Bar No. 694875)
Will Bardwell* (DC Bar No. 90006120)
Elena Goldstein* (NY State Bar No. 4210456)
Victoria Nugent* (DC Bar No. 470800)
Adnan Perwez* (DC Bar No. 90027532)
Shiva Kooragayala** (Ill. Bar No. 6336195)
Paul R.Q. Wolfson** (DC Bar No. 414759)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
Telephone: 833.391.4732
Facsimile: 202.796.4426
rhomer@democracyforward.org
kschellenberg@democracyforward.org
wbardwell@democracyforward.org
egoldstein@democracyforward.org
vnugent@democracyforward.org
aperwez@democracyforward.org
skooragayala@democracyforward.org
pwolfson@democracyforward.org

* Admitted *pro hac vice*
** *Pro hac vice* pending

*Counsel for Somerville Plaintiffs*

**ANDREA JOY CAMPBELL**
Attorney General for the Commonwealth
of Massachusetts

By: /s/ *Nathaniel J. Hyman*
Katherine Dirks (BBO No. 673674)
Chief State Trial Counsel
Michelle Pascucci (BBO No. 690899)
State Trial Counsel
Yael Shavit (BBO No. 695333)
Chief, Consumer Protection Division
Anna Lumelsky (BBO No. 677708)
Deputy State Solicitor
Elizabeth Carnes Flynn (BBO No. 687708)
Nathaniel Hyman (BBO No. 698506)

**LETITIA JAMES**
Attorney General for the State of New York

By: /s/ *Rabia Muqaddam*
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Molly Thomas-Jensen*
Special Counsel
Gina Bull*
Assistant Attorney General
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
molly.thomas-jensen@ag.ny.gov

Arjun Jaikumar (BBO No. 691311)
Assistant Attorneys General
1 Ashburton Pl.
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
michelle.pascucci@mass.gov
yael.shavit@mass.gov
anna.lumelsky@mass.gov
elizabeth.carnes-flynn@mass.gov
nathaniel.j.hyman@mass.gov
arjun.k.jaikumar@mass.gov

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes*
Solicitor General
Ewan C. Rayner*
Caitlyn B. Carpenter*
Deputy Solicitors General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov
ewan.rayner@hawaii.gov
caitlyn.b.carpenter@hawaii.gov

**ROB BONTA**
Attorney General for the State of California

By: */s/ Lucia Choi*
Lucia J. Choi*
Deputy Attorney General
Michael L. Newman*
Senior Assistant Attorney General
James E. Stanley*
Supervising Deputy Attorney General
Natasha A. Reyes*
Francisco V. Balderrama*
Deputy Attorneys General
California Attorney General's Office

gina.bull@ag.ny.gov

**PHIL WEISER**
Attorney General for the State of Colorado

By: */s/ David Moskowitz*
David Moskowitz*
Deputy Solicitor General
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
David.Moskowitz@coag.gov

21

300 South Spring Street
Los Angeles, CA 90013
(213) 269-6364
Lucia.Choi@doj.ca.gov
Michael.Newman@doj.ca.gov
James.Stanley@doj.ca.gov
Natasha.Reyes@doj.ca.gov
Francisco.Balderrama@doj.ca.gov

**KATHLEEN JENNINGS**
Attorney General for the State of Delaware

By: /s/ *Ian R. Liston*
Ian R. Liston**
Director of Impact Litigation
Vanessa L. Kassab**
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: /s/ *Clinten N. Garrett*
Clinten N. Garrett*
Senior Appellate Counsel
2005 North Central Avenue
Phoenix, AZ 85004
(602) 542-3333
Clinten.Garrett@azag.gov

**BRIAN L. SCHWALB**
Attorney General for the District of
Columbia

By: /s/ *Andrew Mendrala*
Andrew Mendrala*
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the
District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

**WILLIAM TONG**
Attorney General for the State of Connecticut

By: /s/ *Patrick Ring*
Patrick Ring*
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808 5020
Patrick.ring@ct.gov

22

**AARON M. FREY**
Attorney General for the State of
Maine

By: */s/ Paul E. Suitter*
Paul E. Suitter
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME  04333-0006
(207) 626-8800
paul.suitter@maine.gov

**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Karyn L. Bass Ehler*
Karyn L. Bass Ehler*
Assistant Chief Deputy Attorney General
Katharine P. Roberts*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-4985
karyn.bassehler@ilag.gov
katharine.roberts@ilag.gov

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Keith M. Jamieson*
Keith M. Jamieson*
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6960
kjamieson@oag.maryland.gov

**DANA NESSEL**
Attorney General for the People of Michigan

By: */s/ Neil Giovanatti*
Neil Giovanatti*
Kathleen Halloran*
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
HalloranK1@michigan.gov

**KEITH ELLISON**
Attorney General for the State of
Minnesota

By: */s/ Liz Kramer*
Liz Kramer*
Solicitor General
445 Minnesota Street, Suite 1400
St. Paul, MN, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

**RAÚL TORREZ**
Attorney General of the State of New
Mexico

By: */s/ Olivia den Dulk*
Olivia den Dulk**
Assistant Attorney General
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
(505) 270-4332
odendulk@nmdoj.gov

**AARON D. FORD**
Attorney General for the State of Nevada

By: */s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney
General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov


**DAN RAYFIELD**
Attorney General for the State of Oregon

By: */s/ Elleanor H. Chin*
Elleanor H. Chin*
Senior Assistant Attorney General
100 SW Market Street
Portland, OR 97201
(971) 673-1880
elleanor.chin@doj.oregon.gov


**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 793-1646
Jonathan.rose@vermont.gov


**JOSHUA L. KAUL**
Attorney General for the State of
Wisconsin

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: */s/ Jessica L. Palmer*
Jessica L. Palmer*
Amanda Morejon
*Deputy Attorney General*
25 Market Street
Trenton, NJ 08625-0093
(609) 696-4607
Jessica.Palmer@law.njoag.gov


**PETER F. NERONHA**
Attorney General for the State of Rhode
Island

By: */s/ Kathryn T. Gradowski*
Kathryn T. Gradowski*
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2810
kgradowski@riag.ri.gov


**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: */s/ Spencer W. Coates*
Spencer W. Coates*
Assistant Attorney General
Cristina Sepe*
Deputy Solicitor General
Office of the Washington State Attorney
General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
spencer.coates@atg.wa.gov

24

cristina.sepe@atg.wa.gov

By: */s/ Charlotte Gibson*
Charlotte Gibson**
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 957-5218
gibsoncj@doj.state.wi.us


*Admitted *Pro Hac Vice*
** Motion for *Pro Hac Vice* pending or
forthcoming

25