**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br>Plaintiffs,<br>v.<br>LINDA McMAHON, *et al.*,<br>Defendants. | Case No. 1:25-cv-10601-MJJ |
| SOMERVILLE PUBLIC SCHOOLS, *et al.*,<br>Plaintiffs,<br>v.<br>DONALD J. TRUMP, *et al.*,<br>Defendants. | Case No. 1:25-cv-10677-MJJ |

**CONSOLIDATED PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO ENFORCE THIS COURT'S DISCOVERY ORDER AND TO COMPEL**

On February 11, 2026, this Court stated, clearly and plainly, that the deliberative process privilege "does not apply here." Doc. No. 202[1] at 10. Notwithstanding this ruling, Defendants continue to withhold highly relevant documents on the basis of the deliberative process privilege. The withheld documents are central to the claims asserted by Consolidated Plaintiffs and are needed for Plaintiffs to adequately prepare for the depositions of Jacqueline Clay, Deputy Assistant Secretary of the Office of Human Resources at the U.S. Department of Education (the "Department"), and of Lindsey Burke, Deputy Chief of Staff for Policy and Programs at the

[1] References to the docket are to Case No. 1:25-cv-10601-MJJ, unless otherwise indicated.

Department, in October and November 2026.[2] As but one example, Defendants have withheld an email, dated February 11, 2025, with the subject "Strategy for Downsizing, and ultimately closing, the Department of Education Operations," a document presumably relevant to Consolidated Plaintiffs' claim that Defendants intend to close the Department in violation of the law. Having chosen not to appeal the Court's Order finding that no deliberative process privilege applies, Defendants must produce these materials. This Court has every authority to enforce its own Order and compel Defendants to produce these withheld documents. *See* Fed. R. Civ. P. 37(b)(2)(A) ("If a party . . . fails to obey an order to provide or permit discovery, the court . . . may issue further just orders.").

Defendants incorrectly claim that the Court only held that the deliberative process privilege does not apply to Agency RIF and Reorganization Plans ("ARRPs"). Even if Defendants' interpretation of the Court's Order were correct, the Court should compel production of all documents withheld solely on the basis of the deliberative process privilege. The deliberative process privilege is a discretionary one, and the withheld documents are critical to assess the relevant claims. In addition, further evidence of bad faith underscores why the deliberative process privilege should not apply here. Defendants also seek to apply the deliberative process privilege

[2] Plaintiffs sought to bring this motion as soon as they became aware of the extent of relevant, substantive documents withheld on the basis of the deliberative process privilege, which became evident when Defendants produced their revised Privilege Log on September 1, 2026. At that time, the deposition of Ms. Clay was scheduled to begin within three weeks, on September 17, 2026. The parties held a meet and confer on the afternoon of Friday, September 4. *See* D. Mass. Local Rule 37.1. Defendants agreed to reschedule Ms. Clay's deposition to a date in late October or early November to provide time for motion practice and disposition by the Court and, on September 10, agreed to produce additional documents from the privilege log. Ms. Burke's deposition is currently scheduled for October 25-26. Given the timing, this motion is not exhaustive of all issues raised by the privilege log, for example, whether Defendants accurately identified documents that were subject to the deliberative process privilege as to Inter-Agency Agreements if the privilege were found to apply to this case; whether the attorney-client and work product privileges were properly applied; or whether there may be additional responsive documents that Defendants have yet to identify or produce.

to documents for which it is clearly inapplicable, including documents that postdate Defendants' decision to implement the RIF.

Lastly, Defendants refuse to produce documents in their original file format, also known as their "native" format, and instead have only produced Adobe PDF versions of emails, other Outlook files, and Word documents. This atypical means of production strips documents of critical metadata and impedes efficient review. Consolidated Plaintiffs request that the Court compel production of documents in their native format as is customary for electronic discovery.

## BACKGROUND

This litigation began in March 2025, when Plaintiffs sued President Donald Trump, the Department, and Secretary of Education Linda McMahon based on their unlawful dismantling of the Department. To date, this dismantling has included the abrupt termination of at least 1,300 Department employees, the hollowing of entire offices of the Department, and Interagency Agreements ("IAAs") transferring functions statutorily assigned to the Department to other agencies.

On August 1, 2025, Defendants produced documents that they claimed constituted the complete Administrative Record ("AR"). Doc No. 158. The AR was devoid of relevant documents, and, on September 12, 2025, Plaintiffs moved for discovery on the basis that the AR was woefully incomplete. Doc. Nos. 172-73. Defendants strenuously opposed Consolidated Plaintiffs' claims, labeling arguments that additional documents were missing from the AR "mere speculation." Doc. No. 186 at 15. In February 2026, the Court ultimately agreed with Consolidated Plaintiffs, emphasizing that when "deciding how to exercise its discretion" as to whether the discretionary process privilege applies, "an inquiring court should consider, among other things, the interests of the litigants, society's interest in the accuracy and integrity of

factfinding, and the public's interest in honest, effective government." Doc. No. 202 at 10 (citing *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995)). Finding that Plaintiffs demonstrated "a strong showing of arbitrariness," the Court ordered Defendants to complete the AR; supplement the record with information sufficient to aid the court in understanding the Department's decision-making; and comply with Consolidated Plaintiffs' requests for extra-record discovery to the extent those requests are narrowly tailored toward understanding the true reason behind the RIF. Doc. No. 202 at 10, 17. Confirming Consolidated Plaintiffs' expectations, Defendants have now identified hundreds of additional relevant documents.

Defendants identified approximately 1,212 responsive documents[3] on June 8, 2026, of which approximately 1,072 were withheld on the basis of privilege and the rest were produced. The Defendants produced a privilege log listing the withheld materials on June 12. The production is replete with problems. Among other things, Defendants produced few documents concerning the RIF; withheld numerous documents on the basis of the deliberative process privilege despite this Court's Order holding that the deliberative process privilege did not apply; and failed to produce documents in their native file format, frustrating Consolidated Plaintiffs' ability to see all relevant metadata and efficiently and effectively review these materials. *See* Ex. 1 (Pls' Deficiency Letter). At Consolidated Plaintiffs' request, the parties held a meet and confer at which counsel for Defendants claimed that the Court's decision as to the deliberative process privilege was only

[3] Plaintiffs refer to these counts as "approximate" because they are based on Plaintiffs' analysis of documents produced by Defendants and uploaded to their document review systems. The lack of metadata, as described in Section IV *supra*, frustrates efforts to easily quantify how many documents were produced and determine which documents might be duplicates and which have been withheld. Further, Defendants did not provide cover letters with their productions specifying how many documents were produced and withheld.

relevant to narrow categories of documents. Nevertheless, counsel for Defendants committed to review and produce additional documents and re-review documents previously marked privileged to assess whether additional materials identified on the privilege log might be produced.

On August 14, 2026, Defendants identified an additional approximately 1,274 responsive documents of which 229 documents were withheld as privileged. On September 1, 2026, Defendants provided a revised privilege log listing all withheld documents, including documents that continued to be withheld from the first production (Ex. 2). The updated log identified a total of approximately 1,301 documents, of which 374 were no longer designated as privileged and were produced. Unlike their first production, this production included hundreds of documents regarding the RIF. The privilege log revealed that Defendants continued to withhold highly relevant documents on the basis of the deliberative process privilege. Such documents include memoranda, worksheets, and communications, many of which post-date the Department's decision to execute the challenged agency actions, written by, sent to, and received by Ms. Clay and Ms. Burke, the very individuals that Defendants have identified for purposes of the Rule 30(b)(6) depositions scheduled for October and November. For example, withheld materials include a Word document titled "RIF Brief," which is authored by Ms. Clay and dated March 6, 2025, only five days before the Department publicly announced the RIF on March 11, 2025 (Ex. 2, EDNY_00001806). Similarly, the privilege log abounds with emails containing titles such as "RE: IAA check-in" (*id.*, passim) sent and received by Ms. Burke. These materials are central to understanding the decision-making behind Defendants' unlawful dismantling of the Department—the very discovery the Court ordered in February.

## ARGUMENT

Having already decided that the deliberative privilege does not apply, the Court has every right to enforce its own order allowing discovery and compel Defendants to produce documents

withheld subject to the deliberative process privilege. *See* Fed. R. Civ. P. 37(2)(A). Further, even if the Court's Order were as limited as Defendants claim, their actions continue to evince the very malfeasance that this Court found warranted a decision that the deliberative process privilege did not apply. The privilege log references documents containing information central to Plaintiffs' claims that Defendants stated, under oath, did not exist. These documents do exist, and Defendants must produce them. Consolidated Plaintiffs request that the Court compel production of these documents immediately so that Consolidated Plaintiffs' counsel have adequate time to prepare for depositions currently slated to take place in October or early November.

## I. The Court Already Decided the Deliberative Process Privilege Does Not Apply

As this Court stated, "[t]he deliberative process privilege is a qualified one, it is not absolute." Doc. No. 202 at 10. And, because "Plaintiffs have made a strong showing of arbitrariness, . . . [the Court] found that it does not apply here." *Id.* (citations omitted). The Court also set forth the exact limits of its Order, stating that "requests that go beyond the scope of obtaining material necessary to complete the record as to the decision-making process regarding the RIF is overbroad." *Id.* at 11. The language of the Order leaves little doubt that the deliberative process privilege does not extend to the "decision-making process regarding the RIF," *id.*, but Defendants have withheld approximately 220 documents detailing the decision-making process regarding the RIF solely on the basis of the deliberative process privilege.

Defendants had yet to produce the AR or discovery as to the IAAs (Doc. Nos. 203, 209) at the time the Court issued its decision. But the Court's logic carries through to the IAAs. There is no reason that the Court's findings of bad faith underpinning its decision as to the deliberative process privilege (Doc. No. 202 at 16) should not extend to all actions to dismantle the Department that are challenged by Consolidated Plaintiffs in this litigation, regardless of whether those actions

are the RIFs or IAAs. Consolidated Plaintiffs respectfully request that this Court enforce its own Order that the deliberative process privilege does not apply and compel the production of all documents withheld on the basis of the deliberative process privilege. *See* Fed. R. Civ. P. 37(2)(A).

## II. Even if the Deliberative Process Privilege Did Apply, the Defendants Withheld Documents Not Subject to This Privilege

Even if the deliberative process privilege did apply to this case, the privilege log contains documents[4] that are clearly not subject to the deliberative process privilege. Prior to the filing of this motion, Consolidated Plaintiffs emailed Defendants regarding 115 documents that did not appear to be subject to the deliberative process privilege. Counsel for Defendants represented that they expected to produce "the majority (and perhaps a significant majority)" of these materials but could not speak definitively as to which documents they would produce. Defendants ultimately decided to produce only 27 of these documents. The 27 documents were produced on September 14, 2026, and appear to largely be versions of documents already produced by Defendants, underscoring the broader question of why these, and potentially other, unproduced documents were ever categorized as being subject to the deliberative process privilege.

Of the documents Defendants continue to withhold, all but five of them are dated from March 2025, the very month that the RIF was issued, and twelve are dated March 11, 2025, the day the RIF was publicly announced. As this Court observed, "a 'document is 'predecisional' if it precedes in time the decision to which it was applied and it is 'deliberative' if it constitutes a statement of opinion regarding final policy rather than a description of the ultimate policy itself.'" Doc. No. 202 at 9 (quoting *In re Pharm Indus. Average Wholesale Price Litig.*, 254 F.R.D. 35, 40

[4] This motion addresses only the application of the deliberative process privilege as to documents concerning the RIF and does not address whether Defendants correctly identified withheld IAA documents as subject to the deliberative process privilege.

(D. Mass. 2008)). "[T]he decision to implement the RIF in the Department was publicly announced on March 11, 2025, and plans to prepare for the RIF appear to have been formulating since February 2025." Doc. No. 202 at 9. Any claim that the Department had not yet decided whether to implement the RIF in the two weeks preceding its public announcement defies belief. The March 2025 RIF was an unprecedented agency action impacting hundreds of employees, and the privilege log contains documents addressing the "scope of RIF activities" from as early as January 2025. *See* Ex. 2 (Priv. Log, EDNY_00005726 & EDNY_00005728). An internal memorandum dated February 28, 2025, confirms that the Department decided, prior to that date, to implement a RIF. *See* Ex. 3 (Feb. 28 Memo. from Ms. Clay to Deputy Associate Director Latonia Page) (the Department "requests a waiver . . . to immediately implement a [RIF]"). As the decision to implement the RIF was made prior to February 28, 2025—if not earlier—and Defendants cannot continue to claim a privilege as to documents from this timeframe. Accordingly, this Court should order that the Defendants produce all documents from March 2025 related to the RIF that were withheld on the basis of the deliberative process privilege.[5]

## III. To the Extent the Court's Ruling on the Deliberative Process Privilege Was Limited, Recent Discovery Underscores Why the Defendants Should Not Be Able to Withhold Any Documents on the Basis of the Deliberative Process Privilege

To the extent that the Court's Order on the deliberative process privilege was limited to decision making as to the RIF, the Department's contradictory statements surrounding the existence of relevant documents and its decision to conduct the RIF and transfer agency actions outside the Department provide strong evidence of bad faith and further counsel in favor of a court

[5] For further clarification of the documents that Plaintiffs seek produced, Plaintiffs have provided Exhibit 4 attached hereto, which lists all RIF-related documents identified by Plaintiffs from the Privilege Log (Ex. 2). Those documents which Plaintiffs identified as not being subject to the deliberative process privilege are highlighted in both green and blue, and those documents which Defendants continue to withhold are highlighted in green. Plaintiffs seek production of documents highlighted in green.

order that the deliberative process privilege does not apply to any documents in this case. *See* Doc. No. 202 at 10. As this Court explained in February, "where the documents sought may shed light on alleged government malfeasance, the privilege is routinely denied." *Id.* (quoting *Texaco P.R., Inc.*, 60 F.3d at 885); *see Am. Assoc. of Univ. Professors v. Rubio*, 816 F. Supp. 3d 216, 219 (D. Mass. 2026).

When reaching its decision, the Court noted that the explanation contained in the AR was "inconsistent with public statements indicating that the RIF was part of a broader effort to shut down the Department completely." Doc. No. 202 at 12. Now, bad faith is even clearer due to the Defendants' improper withholding of hundreds of relevant documents, which only came to light after Consolidated Plaintiffs were forced to move for court relief. Defendants repeatedly stated that there were no documents detailing the process by which the Department undertook its RIF. The initial AR in this case consisted of 32 total documents, contained no substantive emails, and offered no evidence as to how the Department selected the individuals it included in the RIF. *See* Doc. No. 158-2. After Consolidated Plaintiffs moved for discovery, Defendants asserted that no such materials exist, explaining that "[t]he administrative record produced by Defendants is complete, and the documents requested by Consolidated Plaintiffs were not considered directly or indirectly by the decision maker." Doc. No. 186 at 14; *id.* at 15 (stating that Plaintiffs' arguments that additional documents existed as to the Department's decision-making process constituted "mere speculation"); *id.* (arguing that Plaintiffs should be barred from seeking documents demonstrating inconsistencies between February 2025 RIF plans and the ultimate March 2025 RIF because, "[b]ased on a reasonable search, documentation for the changes between these documents does not exist").

Despite the Court's ruling in Plaintiffs' favor, Defendants continued to deny the existence of relevant documents. In their first production after the Court's Order, Defendants initially did not identify or produce any further communications detailing why or how the Department undertook the RIF. Only after Plaintiffs pressed for more details as to how Defendants searched for relevant documents and requested specific searches for relevant custodians did Defendants at last identify documents concerning the RIF. Before Defendants produced these materials, however, they repeatedly made representations that conflict with the very documents they later produced.

For example, when asked to identify any "directives, . . . considerations, or other bases that were used in the decision-making process related to the RIF," Defendants referenced only organizational charts, the RIF notices themselves, and discrete spreadsheets. *See* Ex. 5 (Defs' Supplemental Response to Interrogatory No. 2).[6] Yet the documents and privilege log most recently produced by Defendants identify hundreds of emails and documents pertaining to the decision making behind the RIF, the most substantive of which they have withheld. Such materials include documents whose titles suggest they constitute cost estimates and analyses of statutory functions. *See* Ex. 2 (Privilege Log, EDNY_00005659 (Email dated March 11, 2025, with subject "FW: Department of Education Workforce Restructuring Cost Estimates"); EDNY_00005660 (Excel workbook attachment dated March 11, 2025, titled "Workforce Restructuring Cost Estimates V2.xlsx"); EDNY_00002161 (Excel workbook dated February 15, 2025, with title "Copy of Workload Assessment Statutory and Non-Statutory-02102025.xlsx")).

[6] On September 7, 2026, Defendants supplemented this response by referencing an unspecified "forthcoming production." Ex. 5 (Defs' Supplemental Response to Interrogatory No. 2). This vague reference to unidentified and unproduced documents does not remedy Defendants' failure to identify relevant materials provided in discovery and referenced in their privilege log.

Similarly, Defendants admitted that "the Agency Defendants did not create a retention register or roster related to the RIF." Ex. 6 (Defs' Response to RFA No. 6). The privilege log suggests that this position is false. Multiple documents withheld by Defendants reference a RIF register, dated within a week of the March 2025 RIF. *See* Ex. 2 (Privilege Log, EDNY0004722-23). And, when asked to describe the process by which the Department identified offices and individuals to include in the RIF, Defendants stated that the March RIF merely constituted the Department's efforts to comply with the DOGE Executive Order 14158 and did not cite broader efforts to shutter the Department. *See* Ex. 5 (Defs' Supplemental Response to Interrogatory No. 4). Again, however, documents withheld by Defendants appear to tell a conflicting story, with one email bearing the subject "RE: Strategy for Downsizing, and ultimately closing, the Department of Education Operations." Ex. 2 (Privilege Log, EDNY_00005541). As this Court observed, "the goals stated in the AR of improving 'operational efficiency' and 'fiscal sustainability' are inconsistent with public statements that the RIF is intended to shut down the Department, return education to the states, and cut employees who the Department considers are not doing a good job." Doc. No. 202 at 16. Documents listed in the privilege log bolster the Court's observations that the RIF was the first step of a broader effort to close the Department, the core theory of Consolidated Plaintiffs' case and a factual assertion that Defendants denied to this Court, the First Circuit, and the U.S. Supreme Court. Thus, to the extent the Court has not done so already, it should exercise its discretion and find that the discretionary process privilege is inapplicable to this case.

## IV. The Court Should Order that the Defendants Produce Documents in Native Format

Under Federal Rule of Civil Procedure 34(b)(2)(E),

i. A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

ii. If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably useable form or forms; and

iii. A party need not produce the same electronically stored information in more than one form.

"To comport with Rule 34(b)(2)(E), when a party . . . produces documents without accompanying metadata or other information that shows the organizational structure in which the documents were stored, including from whom the documents were collected, the producing party must state which request(s) the documents are responsive to." *Echavarria v. Roach*, No. 16-cv-11118, 2018 WL 6788525, at *2 (D. Mass. Dec. 26, 2018). "[I]t is known practice that unless court ordered or through stipulation, production is provided 'as they are kept in the usual course of business or . . . a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.'" *Multi-State Partnership for Prevention, LLC v. Kennedy*, No. 24-cv-00013, 2026 WL 381007, at *5 (S.D.N.Y. Feb. 11, 2026) (citing Fed. R. Civ. P. 34(b)(2)(E)). For this reason, electronic records are typically produced in native format.

Defendants' productions do not accord with how those materials were kept in the usual course of business. The vast majority of the documents Defendants have produced do not contain any metadata and therefore do not identify when or by whom they were created, where they were stored, or from whom they were collected. The lack of this metadata means that the discovery was not produced in its entirety. It also frustrates Consolidated Plaintiffs' ability to meaningfully review the productions, which contain thousands of records, particularly given that depositions are slated to begin in October. For that reason, Plaintiffs request that this Court compel Defendants to produce the native files.

In June, Plaintiffs first asked that Defendants reproduce documents from their initial production in native format. *See* Ex. 1 at 1-2 & n.1. Defendants did not agree to reproduce the

documents in their native format and made additional productions that converted native files into PDFs, stripping them of metadata. This practice makes little sense: Defendants produced these materials by engaging in the far more burdensome process of converting the native electronic files to PDFs. Producing the documents in native format would not only be the customary way to produce the documents (i.e., as they are held in the ordinary course), it would also be the easiest way to produce them. In other words, Defendants went out of their way to produce the documents in a fashion that excluded critical components of the material.[7] Consolidated Plaintiffs ask that this Court compel Defendants to reproduce their productions in native format, with corresponding metadata.[8]

## CONCLUSION

For the foregoing reasons, Consolidated Plaintiffs respectfully request that the Court enforce its prior discovery Order (Doc. No. 202) and compel Defendants to (1) produce all documents withheld on the basis of the deliberative process privilege, (2) in the alternative,

---

[7] Producing documents in their native format is standard practice and should be no surprise to the Department of Justice, which routinely handles complex discovery productions. Instances where the District of Massachusetts has declined to order a party to re-produce documents with metadata are inapposite. In *Bobba v. Patel*, for instance, this Court declined to order a *pro se* plaintiff to reproduce documents that had been produced as PDFs after concluding that the burdens placed on a *pro se* litigant by such an order outweighed the benefits to the defendants from having such documents in native format. *See* No. 3:18-30171, 2021 WL 1907460, at *2-3 (D. Mass. May 12, 2021). Here, the burden of re-production to the Department is minimal; the documents indisputably exist in electronic format; and Plaintiffs face a large and growing burden—reviewing thousands (and likely more) documents without any meaningful way to organize or sort through them.

[8] Consolidated Plaintiffs request that Defendants provide the following metadata: (1) beginning bates number; (2) ending bates number; (3) beginning attachment range; (4) ending attachment range; (5) MD5 Hash or other hash value; (6) Custodian; (7) author; (8) redacted – bit character field (1 or 0 where 1=Yes and 0=no); (9) production date; (10) TO; (11) FROM; (12) CC; (13) BCC; (14) Subject; (15) Sent Date; (16) Received Date; (17) Sent Time; (18) Received Time; (19) File Name; (20); File Extension; (21) File Size; (22) File Path; (23) Attachment count; (24) Create Date; (25) Create Time; (26) Last Modified Date; and (27) Last Modified Time.

produce all documents that are not correctly identified as subject to the deliberative process privilege; and (2) produce all documents in their native format.

Dated: September 14, 2026

Respectfully submitted,

**ANDREA JOY CAMPBELL**
Attorney General for the Commonwealth of Massachusetts

By: */s/ Michelle R. Pascucci*
Katherine Dirks (BBO No. 673674)
Chief State Trial Counsel
Michelle Pascucci (BBO No. 690899)
State Trial Counsel
Yael Shavit (BBO No. 695333)
Chief, Consumer Protection Division
Anna Lumelsky (BBO No. 677708)
Deputy State Solicitor
Nathaniel Hyman (BBO No. 698506)
Arjun Jaikumar (BBO No. 691311)
Assistant Attorneys General
1 Ashburton Pl.
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
michelle.pascucci@mass.gov
yael.shavit@mass.gov
anna.lumelsky@mass.gov
nathaniel.j.hyman@mass.gov
arjun.k.jaikumar@mass.gov

*/s/ Shiva Kooragayala*
Rachel F. Homer (MA State Bar No. 693642)
Kali Schellenberg (MA State Bar No. 694875)
Will Bardwell* (DC Bar No. 90006120)
Elena Goldstein* (NY State Bar No. 4210456)
Victoria Nugent* (DC Bar No. 470800)
Adnan Perwez* (DC Bar No. 90027532)
Shiva Kooragayala* (Ill. Bar No. 6336195)
Paul R.Q. Wolfson* (DC Bar No. 414759)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
Telephone: 202.448.9090
Facsimile: 202.796.4426
rhomer@democracyforward.org
kschellenberg@democracyforward.org
wbardwell@democracyforward.org
egoldstein@democracyforward.org
vnugent@democracyforward.org
aperwez@democracyforward.org
skooragayala@democracyforward.org
pwolfson@democracyforward.org

*Counsel for Somerville Plaintiffs*

**LETITIA JAMES**
Attorney General for the State of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Molly Thomas-Jensen*
Special Counsel
Gina Bull*
Assistant Attorney General
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
molly.thomas-jensen@ag.ny.gov
gina.bull@ag.ny.gov

**ROB BONTA**
Attorney General for the State of California

By: */s/ Lucia Choi*
Lucia J. Choi*
Deputy Attorney General
Michael L. Newman*
Senior Assistant Attorney General
James E. Stanley*
Supervising Deputy Attorneys General
Natasha A. Reyes*
Deputy Attorney General
California Attorney General's Office
300 South Spring Street
Los Angeles, CA 90013
(213) 269-6364
Lucia.Choi@doj.ca.gov
Michael.Newman@doj.ca.gov
James.Stanley@doj.ca.gov
Natasha.Reyes@doj.ca.gov

**ANNE E. LOPEZ**
Attorney General for the State of Hawai‘i

By: */s/ Kaliko‘onālani D. Fernandes*

Kaliko‘onālani D. Fernandes*
Solicitor General
Caitlyn B. Carpenter*
Deputy Solicitors General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov
caitlyn.b.carpenter@hawaii.gov

**PHIL WEISER**
Attorney General for the State of Colorado

By: */s/ David Moskowitz*
David Moskowitz*
Deputy Solicitor General
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
David.Moskowitz@coag.gov

**KATHLEEN JENNINGS**
Attorney General for the State of Delaware

By: /s/ *Ian R. Liston*
Ian R. Liston**
Director of Impact Litigation
Vanessa L. Kassab**
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: */s/ Clinten N. Garrett*
Clinten N. Garrett*
Senior Appellate Counsel
Office of the Arizona Attorney General
2005 North Central Avenue
Phoenix, AZ 85004
(602) 542-3333
Clinten.Garrett@azag.gov

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Andrew Mendrala*
Andrew Mendrala*
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

**WILLIAM TONG**
Attorney General for the State of Connecticut

By: */s/ Andrew M. Ammirati*
Andrew M. Ammirati*
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5090
andrew.ammirati@ct.gov

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Paul E. Suitter*
Paul E. Suitter
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
paul.suitter@maine.gov

**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Katharine Roberts*
Katharine P. Roberts*
Darren Kinkead*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-4985
katharine.roberts@ilag.gov
Darren. Kinkead@ilag.gov

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Keith M. Jamieson**
Keith M. Jamieson*
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6960
kjamieson@oag.maryland.gov

**DANA NESSEL**
Attorney General for the People of Michigan

By: */s/ Neil Giovanatti*
Neil Giovanatti*
*Assistant Attorney General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Joseph Richie*
Joseph Richie*
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, MN, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

**RAÚL TORREZ**
Attorney General of the State of New Mexico

By: */s/ Olivia den Dulk*
Olivia den Dulk*
Assistant Attorney General
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
(505) 270-4332
odendulk@nmdoj.gov

**AARON D. FORD**
Attorney General for the State of Nevada

By: */s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov

**JENNIFER DAVENPORT**
Attorney General for the State of New Jersey

By: */s/ Amanda I. Morejón*
Amanda Morejón
Jessica L. Palmer*
*Deputy Attorney General*
124 Halsey Street
Newark, NJ 07101
(609) 696-5279
Amanda.Morejon@law.njoag.gov

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: */s/ Elleanor H. Chin*
Elleanor H. Chin*
Senior Assistant Attorney General
100 SW Market Street
Portland, OR 97201
(971) 673-1880
elleanor.chin@doj.oregon.gov

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

By: */s/ Kathryn T. Gradowski*
Kathryn T. Gradowski*
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2810
kgradowski@riag.ri.gov

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 793-1646
Jonathan.rose@vermont.gov

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: */s/ Charlotte Gibson*
Charlotte Gibson**
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 957-5218
gibsoncj@doj.state.wi.us

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: */s/ Spencer W. Coates*
Spencer W. Coates*
Assistant Attorney General
Cristina Sepe*
Deputy Solicitor General
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
spencer.coates@atg.wa.gov
cristina.sepe@atg.wa.gov

*Admitted *Pro Hac Vice*
** Motion for *Pro Hac Vice* pending or forthcoming

**CERTIFICATE OF SERVICE**

I certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

*/s/ Michelle R. Pascucci*
Michelle R. Pascucci