**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**STATE OF NEW YORK, *et al.* ,**

*Plaintiffs*,

v.

**LINDA McMAHON, in her official capacity as Secretary of Education, *et al.*,**

*Defendants*.

No. 1:25-cv-10601-MJJ

**SOMERVILLE PUBLIC SCHOOLS, *et al.* ,**

*Plaintiffs*,

v.

**DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,**

*Defendants*.

No. 1: 25-cv-10677-MJJ

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

## TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 4

A. Procedural History ..... 4

B. Discovery History ..... 5

LEGAL STANDARD ..... 7

ARGUMENT ..... 7

A. The Court did not rule that deliberative process does not apply in this case ..... 7

B. The Court should not rule that deliberative process does not apply in this case ..... 9

C. Post-decisional documents are not relevant and should not be produced ..... 11

D. The Court should not order production of native files ..... 14

CONCLUSION ..... 16

## TABLE OF AUTHORITIES

### CASES

*Bradley v. Weinberger,*
483 F.2d 410 (1st Cir. 1973) .................... 2

*Camp v. Pitts*,
411 U.S. 138 (1973) .................... 1

*Charlton Mem'l. Hosp. v. Sullivan,*
816 F.Supp. 50 (D. Mass.1993) .................... 2

*Clark v. Sweeney*,
607 U.S. 7 (2025) .................... 8

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) .................... 13

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) .................... 10, 13

*Echavarria v. Roach*,
No. 16-cv-11118-ADB, 2018 WL 6788525 (D. Mass. Dec. 26, 2018) .................... 3, 14, 16

*EPA v. Mink*,
410 U.S. 73 (1973) .................... 12

*Fla. Power & Light Co. v. Lorion,*
470 U.S. 729 (1985) .................... 1

*In re Franklin Nat'l Bank Sec. Litig.*,
478 F. Supp. 577 (E.D.N.Y. 1979) .................... 12

*In re Pharm. Indus. Average Wholesale Price Litig.*,
254 F.R.D. 35 (D. Mass. 2008) .................... 9, 10, 11, 13

*Kadi v. Geithner*,
42 F. Supp. 3d 1 (D.D.C. 2012) .................... 2, 5

*Margolin v. Nat'l Ass'n of Immigr. Judges*,
608 U.S. 339 (2026) .................... 8

*McMahon v. New York*,
606 U. S. ----, 145 S. Ct. 2643 (2025) .................... 4

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,
861 F.2d 1114 (9th Cir. 1988) .................... 13

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975)....................................................................................................... 10

*Roe v. Mayorkas*,
No. 22-CV-10808-ADB, 2024 WL 5198705 (D. Mass. Oct. 2, 2024) ............................9, 10, 11

*Rybachek v. U.S. EPA*,
904 F.2d 1276 (9th Cir. 1990) ......................................................................................... 14

*Sierra Club v. Marsh*,
976 F.2d 763 (1st Cir. 1992) ............................................................................................. 1

*Stalcup v. CIA*,
No. CIV. 11-11250-FDS, 2013 WL 4784249 (D. Mass. Sep. 5, 2013),
*aff'd*, 768 F.3d 65 (1st Cir. 2014). ................................................................................... 9

*Stamps v. Town of Framingham*,
38 F. Supp. 3d 134 (D. Mass. 2014) ............................................................................... 10

*Texaco P.R., Inc. v. Dep't of Consumer,*
*Affs.*, 60 F.3d 867 (1st Cir. 1995) .................................................................................. 9, 13

*Torres v. Johnson & Johnson*,
No. 3:18-10566-MGM, 2018 WL 4054904 (D. Mass. Aug. 24, 2018) ...................................... 7

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
592 U.S. 261 (2021)....................................................................................................... 13

*United States v. Burke*,
504 U.S. 229 (1992)......................................................................................................... 8

*United States v. Cicilline*,
Criminal No. 07–10008–NMG, 2008 WL 427286 (D. Mass. Feb. 13, 2008) .......................... 12

*United States v. Nixon*,
418 U.S. 683 (1974)....................................................................................................... 10

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020)......................................................................................................... 8

*Valley Citizens for a Safe Env't v. Aldridge*,
886 F.2d 458 (1st Cir. 1989) ........................................................................................... 13

*Valley Citizens for a Safe Env't v. Aldridge*,
969 F.2d 1315 (1st Cir. 1992) ........................................................................................... 2

*Zevallos v. Obama*,
10 F. Supp. 3d 111 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015).................................. 2

**RULES**

Fed. R. Civ. P. 26(b)(1) .......... 7

Fed. R. Civ. P. 37(a)(3) .......... 7

Federal Rule of Civil Procedure 34(b)(2)(E) .......... 3

## INTRODUCTION

Plaintiffs brought APA, *ultra vires*, and constitutional claims challenging the reduction-in-force (RIF) within the Department of Education (Department) and, subsequently, the interagency agreements (IAAs) between the Department and other agencies. Am. Compl., ECF No. 187 ("Somerville Am. Compl."); Am. Compl., ECF No. 196 ("States' Am. Compl."). Plaintiffs initially sought a preliminary injunction, alleging that any delay in relief would lead to irreparable harm. This Court granted that preliminary injunction, which was subsequently stayed by the Supreme Court. Over one year later, and despite Defendants repeated statements that they are ready to proceed to summary judgment, Plaintiffs continue to mire the parties deeper in discovery, appearing to pursue that discovery not as a means to get to summary judgment, but as an end in and of itself. All the while, and as time passes, it becomes increasingly uncertain whether this Court will be able to redress any of Plaintiffs' injuries as separated employees find new careers and Departmental functions are transferred to other agencies. And while the Department will comply with any order from this Court, the cost and burden of unwinding the transfer of functions, potential restaffing, and potential unwinding reorganization grows as the Department continues its reorganization efforts.

This case could be decided today. The questions for the Court are not fact intensive: did the agency adequately explain and justify its actions, were those actions lawful, and did those actions violate the Constitution? The Court has what it needs to answer the arbitrary and capricious claims: the Department has definitively stated what its explanation and justifications are with the administrative record. The Department stands by that record. And the focal point of judicial review is that record, not a new one made by the reviewing Court. *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743 (1985) (*quoting Camp v. Pitts*, 411 U.S. 138, 142 (1973)); *accord Sierra Club v.*

*Marsh*, 976 F.2d 763, 772 (1st Cir. 1992); *Valley Citizens for a Safe Env't v. Aldridge*, 969 F.2d 1315, 1319 (1st Cir. 1992); *Bradley v. Weinberger,* 483 F.2d 410, 414 (1st Cir. 1973); *Charlton Mem'l. Hosp. v. Sullivan,* 816 F.Supp. 50, 51 (D.Mass.1993). After all, as the parties approach summary judgment, the court will decide "as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014) (quoting *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9 (D.D.C. 2012), noting the court's "limited role . . . in reviewing the administrative record," and explaining that "[w]hen assessing a summary judgment motion in an APA case, the district judge sits as an appellate tribunal" (citation modified)), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015).

That Plaintiffs were not satisfied with the record is not a justification for discovery. As for the lawfulness claims and constitutional claims, these require no facts at all beyond what the Department did. The Court need only decide whether that action was unlawful or unconstitutional.

In the instant dispute, Plaintiffs challenge whether the Department can assert deliberative process at all, whether deliberative process should apply to certain documents, and whether Defendants are required to reproduce documents as native files. Consolidated Pls.' Mem. of Law in Supp. of their Mot. to Enforce this Ct.'s Disc. Order & to Compel, ECF No. 224 ("Compel Mem."). The Court should deny Plaintiffs' motion to compel. First, the Court did not hold that deliberative process should not apply across all documents in the entire case. In the previous discovery dispute, Defendants asserted privilege over two sets of documents: statutory lists and ARRP documents. Defs.' Opp'n to Pls.' Mot. for Disc. at 9-10, ECF No. 186 ("Disc. Opp'n"). The Court's order, then, is best read to address that dispute, not as a carte blanche stripping of the entire privilege. Second, there is no basis to rule now that deliberative process privilege does not apply in this case. The deliberations of the agency are in no way relevant to the justifications and reasons

underlying the final decision on the RIF and IAAs—Plaintiffs cannot show a need for every document protected by the privilege nor is intent an issue in this case. And eliminating the privilege would put agency deliberations in a fishbowl and chill any future written correspondence or reasoning for fear that another court may, too, strip away the deliberative privilege *in toto*.

Nor do Plaintiffs' challenge to the specific deliberative privilege claims have any merit. They argue that the documents cannot be "predecisional" because the RIF was decided in February, and so these documents necessarily post-date the decision to RIF. Compel Mem. at 7-8. If true, this would be devastating to Plaintiffs' motion to compel: only documents that the Department considered or relied upon are relevant to Plaintiffs' claims, and any post-decisional documents would fall outside the scope of the ordered discovery because they would not be evidence of the Department's decision-making.

Finally, Plaintiffs move to compel the production of native files under Federal Rule of Civil Procedure 34(b)(2)(E). As Plaintiffs admit, Defendants can comport with Rule 34 by stating "which request(s) the documents are responsive to." Compel Mem. at 12 (quoting *Echavarria v. Roach*, No. 16-cv-11118-ADB, 2018 WL 6788525, at *2 (D. Mass. Dec. 26, 2018)). Defendants have offered repeatedly to do so, but Plaintiffs have chosen to move the Court for relief because it is burdensome for them to review documents without metadata. What's more, Defendants had been willing to produce specific documents in native to aid Plaintiffs review, but Plaintiffs were unable to identify for Defendants which documents should be replaced. Nor could Plaintiffs identify what metadata is missing that would be relevant to their claims. Granting Plaintiffs request may ease their slight burden of review, but it would shift a larger burden to Defendants to try to guess which documents Plaintiffs want corrected and then substitute them after collections and review. If

Plaintiffs insist on holding Defendants to Rule 34, the Court should resolve this dispute by allowing Defendants to state which requests the documents are responsive to.

For the foregoing reasons, this Court should deny Plaintiffs' motion.

## BACKGROUND

The Department is in the midst of an overhaul. As part of the overhaul, the Department has implemented a RIF, which impacted all divisions within the Department. The Department has also entered into various IAAs with other federal agencies. These IAAs seek to leverage the expertise and resources of other agencies in specific functions, while the Department retains ultimate responsibility and control of the work.

### A. Procedural History

In March of 2025, the States Plaintiffs and the Somerville Plaintiffs filed complaints challenging the RIFs. Compl., *New York v. McMahon*, No. 25-cv-10601-MJJ, ECF No. 1; Compl. ¶ 9, *Somerville Pub. Schs. v. Trump*, No. 25-cv-10677-MJJ, ECF No. 1 ("Somerville Compl."). Both Plaintiffs filed motions for a preliminary injunction, which the Court granted on May 22, 2025. Mem. & Order on Consolidated Pls.' Mots. For Prelim. Inj., ECF No. 128. Defendants appealed to the First Circuit and requested a stay of the preliminary injunctions. *New York v. McMahon*, Nos. 25-1495, 25-1500 (1st Cir.). The First Circuit denied a stay. On July 14, 2025, however, the Supreme Court entered a stay pending appeal. *McMahon v. New York*, 606 U. S. ----, 145 S. Ct. 2643 (2025). The preliminary injunction was ultimately vacated. Electronic Order (Oct. 1, 2025), ECF No. 179.

Following public reporting of the IAAs, both Plaintiffs amended their complaints to challenge the IAAs. Somerville Am. Compl.; States' Am. Compl. The RIFs and IAAs are now challenged as unconstitutional, *ultra vires*, unlawful under the APA, and arbitrary and capricious under the APA. *Id.*

**B. Discovery History**

On August 1, 2025, Defendants produced the certified administrative record to Plaintiffs. Notice of Produc. of Administrative R., ECF No. 158. Plaintiffs moved to complete the administrative record, supplement the administrative record, and receive extra-record discovery on September 12, 2025. Pls.' Mot. for Disc., ECF No. 172. Defendants opposed the discovery, chiefly on the grounds that discovery is inappropriate in APA cases. Disc. Opp'n. Defendants also asserted deliberative process privilege over two sets of documents: ARRPs and lists of statutory duties. *Id.* at 9.

The Court ordered narrow discovery on February 11, 2026. Mem. of Decision, ECF No. 202 ("Ct. Disc. Mem."). It held that "requests that go beyond the scope of obtaining material necessary to complete the record as to the decision-making process regarding the RIF is overbroad." *Id.* at 11. Rather, Defendants must produce "documents that exist that demonstrate the factors that the Agency considered, or any other records that can provide the court with a more fulsome comprehension of the decision." *Id.* at 13. The Court held that "discovery must be limited to topics and questions pertaining only to the decision-making process regarding the RIF in the Department of Education." *Id.* at 16. And with respect to the deliberative process assertions of ARRPs and statutory lists, the Court held that it "does not apply here." *Id.* at 10.

On March 20, 2026, Defendants responded to Plaintiffs' First Set of Requests for Production (RFPs) and First set of Requests for Admission (RFAs). On March 27, 2026, Plaintiffs served a second set of RFPs and Interrogatories on Defendants relating to IAAs. Joint Mot. for Entry of Order, ECF No. 209. Pursuant to the Court's limitation on discovery, Defendants limited their search for responsive information to information considered in the agency's decision-making process and to information relating to any reason for the RIFs and IAAs. On June 8, 2026, Defendants performed a reasonable search and produced documents responsive to Plaintiffs two

sets of RFPs. On June 12, Defendants produced their privilege log for withheld documents on various privilege grounds. And on June 15, 2026, Defendants responded to Plaintiffs' first and second set of interrogatories.

On June 23, Plaintiffs sent Defendants a deficiency letter. Ex. 1 to Compel Mem., ECF No. 224-1. The parties conferred on June 25, 2026. Defendants agreed to perform custodial searches and supplement their production and interrogatory responses, notwithstanding the narrow scope of discovery that the Court approved. Defendants also agreed to investigate providing native files with metadata, but requested Plaintiffs identify which documents, by Bates number, the Department should investigate. Ultimately, Plaintiffs were unable to identify which documents should be provided as native files.

On July 8, 2026, Plaintiffs sent Defendants a third set of RFPs and interrogatories.

On August 14, 2026, Defendants produced the results of its custodial search. And then, on August 21, in an attempt to resolve disputes over the scope of the privilege log, Defendants produced 374 documents formerly withheld as privileged.

On September 4, 2026, the parties conferred over deliberative process privilege and producing native documents. Because Plaintiffs could not identify which documents they believed were not produced in the ordinary course of business, Defendants offered to identify which requests the documents were responsive to. Plaintiffs declined the offer.

On September 6, 2026, over the holiday weekend, Plaintiffs identified documents they believed were not properly designated as protected by deliberative process privilege. They requested Defendants to review the approximately 115 documents by September 9, 2026, just two business days. Defendants were able, after a quick review, to identify 27 documents for production by Plaintiffs' requested date, and then produced them on September 14.

On September 9, 2026, Defendants supplemented their responses to the first and second set of interrogatories. *See* Ex. 5 to Compel Mem., ECF No. 224-5.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Whether discovery is proportional to the needs of the case depends on, among other things, "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

If a party fails to respond to requests for production of documents or interrogatories, the party seeking discovery may move to compel production of the requested information. *See* Fed. R. Civ. P. 37(a)(3). "[T]he party seeking an order compelling discovery responses over the opponent's objection bears the initial burden of showing that the discovery requested is relevant." *Torres v. Johnson & Johnson*, No. 3:18-10566-MGM, 2018 WL 4054904, at *2 (D. Mass. Aug. 24, 2018) (citation omitted). "Once a showing of relevance has been made, the objecting party bears the burden of showing that a discovery request is improper." *Id.* (citation omitted).

## ARGUMENT

### I. The Court did not rule that deliberative process does not apply in this case

The only question on privilege for the Court in the previous discovery dispute was whether the deliberative process privilege applied to two sets of documents, ARRP documents and lists of statutory duties. *See* Disc. Opp'n at 10 ("The lists of statutorily required functions and ARRP plan are deliberative."). Plaintiffs never argued that the deliberative process privilege should not apply as a general matter—to the contrary, they argued that documents identified as protected by the

deliberative process privilege should be logged. *See* Pls.' Reply in Supp. of Mot. for Disc. at 10, ECF No. 193 (stating "[b]ecause, as they have conceded, Defendants withheld documents from the AR here, they should be ordered to produce a log," and then quoting Defendants arguments that "[t]hese documents are privileged under the deliberative process privilege"). The Court then held that deliberative process did not apply to the two sets of documents that the Court specifically evaluated, and ordered Defendants to prepare a privilege log as to the remainder. Ct. Disc. Mem.

To construe the Court's order as stripping deliberative process privilege from documents not yet collected or withheld would violate the principle of party presentation, to which federal courts adhere. *See Clark v. Sweeney*, 607 U.S. 7, 9–10 (2025) (per curiam). That principle—the "rule that points not argued will not be considered"—distinguishes our adversarial system of justice from an inquisitorial one. *United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring in judgment). Because courts are "essentially passive instruments of government," they rely on the parties to "frame the issues for decision" and decide "only [the] questions presented." *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (citations omitted).

If the Court indeed held that deliberative process did not apply to all documents, it would have transformed arguments whether deliberative process did not apply to specific documents into one that deliberative process does not apply at all. This is not allowed. *Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. 339, 343 (2026) (remanding where "[t]he court transformed respondent's argument that the CSRA did not channel *its* claims into one that the CSRA might not—in light of current conditions—channel *any* claims."). It also is inconsistent with the Court's order that Defendants had to log the remaining deliberative documents—a pointless exercise if the Court intended to overrule Defendants' privilege assertion on a blanket basis. At bottom, the question of whether deliberative process should not apply in this case was never before this Court, and

Defendants never had the opportunity to argue that deliberative process should apply to these other categories of documents.

## II. The Court should not rule that deliberative process does not apply in this case

It would be an abuse of discretion to find that deliberative process privilege does not apply to any document in this case. "[I]n determining whether to honor an assertion of the privilege, a court must weigh competing interests" and must engage in "ad hoc balancing of the evidentiary need against the harm that may result from disclosure." *Texaco P.R., Inc. v. Dep't of Consumer Affs.*, 60 F.3d 867, 885 (1st Cir. 1995) (citation omitted). As such, the Court is required to, on a document-by-document basis, assess whether the evidentiary need for any given document outweighs the harm that may result from disclosure. And where there is no allegation that a specific document will shed light on alleged Government malfeasance, a blanket challenge to deliberative process privilege should be rejected. *Stalcup v. CIA*, No. CIV. 11-11250-FDS, 2013 WL 4784249, at *5 (D. Mass. Sep. 5, 2013) ("Plaintiff has not set forth any specific allegation of misconduct in the creation of either document. Nor has he set forth any basis for a finding that the documents will shed light on the alleged governmental misconduct."), *aff'd*, 768 F.3d 65 (1st Cir. 2014).

Indeed, in the First Circuit, courts weigh, among other things, "(i) the relevance of the evidence sought to be protected" and "(v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Roe v. Mayorkas*, No. 22-CV-10808-ADB, 2024 WL 5198705, at *4 (D. Mass. Oct. 2, 2024) (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 254 F.R.D. 35, 40 (D. Mass. 2008)). Here, in moving the Court to hold that deliberative process privilege does not attach to any document, Plaintiffs ask this Court to abdicate its responsibility in determining the relevance of the evidence sought to be protected. The 1,000 documents on Defendants' privilege log, by their very nature, will have differing levels of relevance to the litigation. And the Court will not be able to do its required "ad hoc" balancing

without assessing the relevance of each piece of evidence. *See, e.g.*, *In re Pharm.*, 254 F.R.D. at 43-44 (applying the balancing test to each set of documents).

The fifth factor also weighs heavily against ruling that the deliberative process does not apply to any document in this case. A purpose of the deliberative process privilege is to "enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)). For that reason, Defendants have "a strong 'institutional interest in maintaining the candid nature of the deliberations.'" *Roe*, 2024 WL 5198705, at *6 (citation omitted). That interest is particularly strong here, where Plaintiffs seek to strip deliberative process privilege from every communication. If all communications are subject to discovery in litigation, no employee will ever speak candidly about proposed agency actions. *See Sears, Roebuck & Co.*, 421 U.S. at 150-51 ("[E]xperience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisonmaking process." (quoting *United States v. Nixon*, 418 U.S. 683, 705 (1974))). The public interest in protecting "frank discussion of legal or policy matters in writing" requires that these documents be protected from disclosure. *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 141 (D. Mass. 2014) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 150).

Plaintiffs allege that bad faith is sufficient to strip deliberative privilege from every document. This finds no support in the law. Nor would Plaintiffs' arguments lead to such an extraordinary remedy. First, Plaintiffs urge the Court to find bad faith by Defendants because the title of certain logged documents allegedly contradicts interrogatory responses. Compel Mem. at 10-11. But there is no contradiction: Defendants preliminary statement explicitly explained that

Defendants would not include "information based on the following privileges, exemptions, and restrictions . . . (b) the deliberative process privilege[.]" Ex. 5 to Compel Mem. at 3, ECF No. 224-5. That the interrogatory responses, then, do not include or reference the privileged material is to be expected.

Even if there was such a contradiction for these specific documents, Plaintiffs come nowhere near alleging that every document on the privilege log has evidentiary weight sufficient to overcome the chilling effects of ordering disclosure. At most, the Court should find that deliberative process does not apply to the specific documents identified by Plaintiff. But because Plaintiffs have not argued why the evidentiary weight of each of these documents outweighs the chilling effects of disclosure, they have waived their opportunity to ask for such targeted relief in this motion.

It is unfortunate the Plaintiffs did not raise these discrepancies and issues to Defendants prior to raising them with the Court. The record amply shows that, time and time again, Defendants have been willing to compromise with Plaintiffs and provide additional material, even when Defendants disagree the disclosure is required. *See* Background, B.

## III. Post-decisional documents are not relevant and should not be produced

The Court should not find that deliberative process does not apply to the 88 documents identified by Plaintiffs in green at ECF No. 224-4 (Ex. 4 to Compel Mem.). The deliberative process privilege can "be struck if the need for disclosure outweighs" the "interest in non-disclosure." *Roe*, 2024 WL 5198705, at *5. To make that determination, courts in this District engage in a balancing test that considers "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *In re*

*Pharm.*, 254 F.R.D. at 40 (quoting *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979)).

Three factors[1] favor protection of the documents at issue here, and any need for information by Plaintiffs cannot overcome Defendants' interest in the privilege. As for the first factor, Plaintiffs have made no attempt to argue why any of these documents are relevant to the RIF. These documents are not relevant to the decision *whether* to implement a RIF, because they reflect candid discussions on *how* to implement the yet-to-be-decided RIF. For example, discussions on how to inform employees subject to the RIF, while technically part of the RIF planning process, is not relevant to whether the Department acted legally or arbitrarily and capriciously.

Second, although the Court found the original administrative record to be deficient, the Department has now produced over a thousand documents to support its decision. There is a wealth of evidence Defendants have produced that can be used to decide whether the Department acted unlawfully. Nor are Plaintiffs entitled to all relevant evidence, only the "material[s] necessary to complete the record." Ct. Disc. Mem. at 11.

The fifth factor also supports non-disclosure. As detailed in the attached declaration, each of these documents reflect candid discussions before any specific decision was made. *See* Declaration of Candice Jackson. Based on these descriptions, agency personnel used these documents to have "frank discussion[s] of legal or policy matters," *EPA v. Mink*, 410 U.S. 73, 87 (1973), including by offering "statement[s] of opinion regarding final policy," *United States v. Cicilline*, Criminal No. 07–10008–NMG, 2008 WL 427286, at *1 (D. Mass. Feb. 13, 2008). These documents thus contain deliberative material the disclosure of which would stifle candid

[1] As to the third and fourth factors, Defendants acknowledge the seriousness of this litigation and the role of the Government in it. But Defendants do not understand those facts to automatically favor disclosure.

communication between agency personnel. *See Klamath*, 532 U.S. at 8 (explaining basis for deliberative process privilege).

Defendants have properly invoked the deliberative process privilege over all documents in question. These documents are predecisional because they precede the announcement of the March 11 RIF. Each document is dated before that date, thus making these documents "antecedent to the adoption" of the RIF decision, and therefore predecisional in nature. *Texaco P.R.*, 60 F.3d at 884 (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988)); *see also In re Pharm.*, 254 F.R.D. at 39 (a document is predecisional if it is "prior to the adoption of the agency policy"). The privilege descriptions in the privilege log also make clear that these documents arose before the RIF decision. Multiple descriptions refer to "draft" documents and others describe how the drafts were attached to emails. That these drafts and the emails relating to these drafts were sent before the RIF announcement indicates that they were "part of a clear 'process' leading to" a final decision, which was the RIF itself. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980); *accord U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 269 (2021) ("A draft is, by definition, a preliminary version of a piece of writing subject to feedback and change.").

Plaintiffs allege that these documents are post-decisional because "the decision to implement the RIF was made prior to February 28, 2025." Compel Mem. at 8. This does not help Plaintiffs. For starters, it's wrong as a matter of fact—the RIF was not announced until March 11, 2025. But even adopting Plaintiffs' theory that the RIF was, as a practical matter, decided prior to February 28, then the documents they seek postdate the relevant decision and thus are not part of the decision-making process underlying the RIF. *See Valley Citizens for a Safe Env't v. Aldridge*, 886 F.2d 458, 460 (1st Cir. 1989) (noting that the relevant legal question is whether the agency

action was lawful "in light of the information and comments before the agency at the time" of the decision); *Rybachek v. U.S. EPA*, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990) ("It is not appropriate for either party to use post-decision information as a new rationalization either for sustaining or attacking the Agency's decision." (citation modified)). Plaintiffs cannot have it both ways, claiming that the documents are post-decisional and therefore not deliberative but are also part of a properly constructed administrative record in this APA case, which can only involve pre-decisional documents. As Plaintiffs admit, the Court limited the scope of discovery: "requests that go beyond the scope of obtaining material necessary to complete the record as to the decision-making process regarding the RIF is overbroad." Compel Mem. at 6 (quoting Ct. Disc. Mem. at 11). This material, by Plaintiffs argument, would be overbroad as it falls outside of the decision-making process

## IV. The Court should not order production of native files

The parties agree that "[t]o comport with Rule 34(b)(2)(E), when a party . . . produces documents without accompanying metadata or other information that shows the organizational structure in which the documents were stored, including from whom the documents were collected, the producing party must state which request(s) the documents are responsive to." Compel Mem. at 12 (quoting *Echavarria*, 2018 WL 6788525, at *2). The dispute is whether, assuming the requirements of Rules 26 and 34 apply where, as here, the discovery is sought to complete an administrative record, Plaintiffs can demand that Defendants comport with Rule 34 through providing native files rather than stating which requests the documents are responsive to. Plaintiffs' demand is unsupported by law.

For starters, it is unclear why Plaintiffs need this metadata, particularly in the context of the discovery they have sought. In a typical APA case, an agency provides an administrative record to Plaintiffs. That record reflects the non-privileged documents relied upon by a decisionmaker,

and typically does not include metadata because a record compiled pursuant to the APA is not subject to the discovery requirements set forth in Rules 26 and 34. Plaintiffs' discovery here, which involves completion of the administrative record, serves the purpose of facilitating APA review; it is not intended to serve as Rule 26 discovery in its own right.

Regardless, forcing Defendants to reproduce every document in this case in its native file presents a tremendous burden, especially in light of the compressed discovery period and serial discovery requests from Plaintiffs, because it may necessitate starting the collection anew. While counsel for Defendants have native document files in their document review database, the metadata associated with at least some of the documents may be incorrect. For example, Plaintiffs ask for the following metadata fields: "(21) File Size; (22) File Path; (23) Attachment count; (24) Create Date; (25) Create Time; (26) Last Modified Date; and (27) Last Modified Time." Compel Mem. at 13 n.8. Many documents and PSTs, however, were individually collected during the reasonable search and saved to folders bearing titles such as "Responsive to RFP 1, 9." Defendants explained that they believed saving the files into different folders for collection changed the underlying metadata—it certainly appeared to change the metadata for the "file path" requested by Plaintiff.

Defendants did not want to produce incorrect metadata or undertake the burden of recollecting every document to provide the requested metadata. But in order to resolve the dispute and not burden the Court, Defendants asked Plaintiffs to identify, by Bates number, the documents Plaintiffs needed natives for. Over the course of months, Plaintiffs repeatedly stated that they would identify the documents, and Defendants have waited diligently for Plaintiffs to provide that information. It was only this past month that Plaintiffs stated that they would not be able to identify the documents for which they required native production, and now move for production of all

native files. This greatly prejudices Defendants: they would now need to either 1) possibly produce incorrect metadata, or 2) recollect, rereview, and reproduce over 1000 documents while preparing for upcoming 30(b)(6) depositions, producing documents for Plaintiffs third set of RFPs, and answering Plaintiffs third set of interrogatories, all before the close of fact discovery in less than two months. This is untenable, especially because Plaintiffs request metadata merely to ease their burden. Compel Mem. at 12-13. It is a much greater burden for Defendants to recollect, rereview, and reproduce than Plaintiffs to review less than 2000 documents.

Instead, and to the extent the Court determines that the requirements of Rules 26 and 34 are applicable here, Defendants can comport with the rules by identifying which documents are responsive to which Request. *Echavarria*, 2018 WL 6788525, at *2. This poses a much lighter burden on Defendants, given how documents were collected, and should satisfy Plaintiffs' need. But if native production is truly just to aid the review of Plaintiffs in their document review platform and not for substantive relevance, Defendants would be willing to produce the native files they have collected, which should be most, if not all emails, on the understanding that some of the metadata will be incorrect, and with Defendants reserving their rights regarding the evidentiary admissibility of such metadata.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion to compel.

DATED: September 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

BRAD P. ROSENBERG
Chief Litigation Counsel

*/s/ Michael Bruns*
Michael Bruns
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
michael.bruns@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF)

Dated: September 28, 2026

/s/ Michael Bruns

Michael Bruns