**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

STATE OF NEW YORK, *et al.*,

Plaintiffs,

v.

LINDA McMAHON, *et al.*,

Defendants.

Case No. 1:25-cv-10601-MJJ

SOMERVILLE PUBLIC SCHOOLS, *et al.*,

Plaintiffs,

v.

DONALD J. TRUMP, *et al.*,

Defendants.

Case No. 1:25-cv-10677-MJJ

***Leave to File Granted on Oct. 6, 2026***

**CONSOLIDATED PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO ENFORCE THIS COURT'S DISCOVERY ORDER AND TO COMPEL**

In the first page and a half of Defendants' Opposition, rather than addressing the narrow discovery dispute at issue here—the application of the deliberative process privilege to this case and the production of native files—Defendants delve into the merits of Plaintiffs' arguments at summary judgment. But the parties have yet to reach summary judgment, and, despite suggestions by Defendants, Plaintiffs do not seek freewheeling discovery. To the contrary, Plaintiffs seek a closed universe of approximately 900 documents which Defendants have identified as responsive to Plaintiffs' discovery requests and which are relevant to depositions scheduled to take place within a month's time. Defendants fault Plaintiffs for extending the discovery process, but in doing

so, they neglect to mention that, at every turn, Defendants have delayed discovery by claiming that documents that do exist did not and by failing to meet discovery deadlines. Time and again, Plaintiffs have accommodated Defendants' requests for more time in the interests of professional courtesy, and—when Plaintiffs received a privilege log that revealed the extent of Defendants' improper withholding of documents—immediately sought court relief. Simply put, Defendants cannot fault Plaintiffs for their own failures.

Plaintiffs ask for no more than what the Court has already compelled from Defendants—documents responsive to Plaintiffs' discovery requests and relevant to upcoming depositions. This Court already held that the deliberative process privilege does not apply to this case, and Defendants' improper withholding of documents evinces their continued disregard of the Court's order. To the extent that Defendants could withhold documents on the basis of the deliberative process privilege, their Opposition makes clear that they misapplied this privilege and continue to avoid the discovery mandated by the Court. For example, they claim documents post-dating the agency decision are outside the administrative record, all the while ignoring that this Court also ordered extra-record and supplemental discovery. And at the same time that they submit a declaration establishing the relevance of these documents, they claim that these documents are not sufficiently relevant to warrant production. Lastly, in their continued refusal to produce documents in native format, Defendants omit essential details of their discussions with Plaintiffs leading up to the motion to compel. Plaintiffs have repeatedly explained to Defendants that critical data is lost when documents are converted to PDFs, and Defendants' method of production has created a more burdensome discovery review process and deprived Plaintiffs of essential information.

Critically, the depositions at issue are scheduled for October 27-28 (Lindsey Burke, Deputy Chief of Staff for Policy and Programs) and November 16-17 (Jacqueline Clay, Deputy Assistant

Secretary of the Office of Human Resources). Plaintiffs learned on September 30 that the deposition of Ms. Burke cannot be rescheduled as she will be departing the Department in November. Consolidated Plaintiffs respectfully seek resolution of this motion in time to allow production and review of any materials prior to this deposition.

**1. The Court Had the Authority to Hold that the Deliberative Process Privilege Did Not Apply to Forthcoming Productions**

Defendants contend that any order "stripping deliberative process privilege from documents not yet collected or withheld would violate the principle of party presentation." Opp. at 13. Yet courts have broad authority to manage discovery, *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003), and a court may "craft[] discovery orders that may expand, limit, or differ from the relief requested," *Messiah v. Garcia Lara*, 351 F.R.D. 420, 422 (N.D. Cal. 2026); *Faigin v. Kelly*, 184 F.3d 67, 84 (1st Cir. 1999) ("A district court's case-management powers apply with particular force to the regulation of discovery and the reconciliation of discovery disputes."). Allowing courts to make broad rulings on the discoverability of documents allows them to manage cases efficiently and obviates the need for parties to continually seek clarification on what materials must be produced. Nor is such a practice violative of the "party presentation" principle, which "is supple, not ironclad." *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020). A district court may exercise its inherent powers—including its power to manage discovery—so long as its exercise of that authority is "a reasonable response to a specific problem" and does not "contradict any express rule or statute." *Dietz v. Bouldin*, 579 U.S. 40, 46, 48 (2016).

And, contrary to the Defendants' arguments, such a ruling would not constitute an abuse of discretion. The deliberative process privilege "is a qualified one" and is "not absolute." *Texaco P.R., Inc. v. Dep't of Consumer Affs.*, 60 F.3d 867, 885 (1st Cir. 1995); *cf. Coastal States Gas*

*Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) (the deliberative process privilege should apply "as narrowly as consistent with efficient government operation"). This Court concluded that the deliberative process privilege is routinely denied "where documents sought may shed light on government malfeasance" and made just such a finding based on the "strong showing of arbitrariness" here and Defendants' inconsistent explanations regarding the RIF. Doc. No. 202 at 10-14. It had every right to rule that, in light of these facts, the deliberative process privilege no longer applies. *See Ramos v. Nielsen*, 3:18-cv-1554-EMC, ECF No. 63, Order re Joint Letter Brief at 8 (N.D. Cal. Aug. 10, 2018) (finding that "applying the deliberative process privilege to protect disclosure of materials from Defendants is not proper").

Defendants also claim that inconsistencies in their interrogatory responses do not warrant stripping them of the deliberative process privilege. But, as Defendants know, Plaintiffs' bad faith arguments go beyond potential misrepresentations in Defendants' interrogatory responses, which are themselves serious.[1] As this Court found (Doc. No. 202 at 12), the inconsistencies extend to the Department's entire narrative that the Department is not, in fact, being dismantled—a narrative that is undercut by public statements from senior officials in this administration and potentially documents that Defendants continue to withhold.

**2. Defendants' Improper Withholding of Information Evinces Their Disregard for the Discovery Mandated by the Court's Order**

Even if Defendants could invoke the deliberative process privilege as a basis for withholding, their application of this privilege has resulted in documents being withheld which this Court ordered produced. Defendants argue that the deliberative process privilege applies to

[1] Defendants' arguments that their interrogatory responses exempted privileged material hold no weight. Doc. No. 225 at 10. Such a statement cannot allow a party to deny the existence of documents that clearly exist.

nearly every document leading up to the RIF, including documents dated the day before and the day of the RIF. Opp. at 18. Yet Defendants' conclusion would create the absurd result of denying Plaintiffs essentially all documents related to the Department's decision-making process—the very discovery mandated by the Court in this case. Doc. No. 202 at 13 (allowing discovery "to facilitate this Court's review of the decision").

In claiming that these documents are pre-decisional, Defendants submit a declaration detailing the contents of these materials. Many of these descriptions belie any claim that the documents are deliberative in nature. For example, one such document "transmits a draft plan for RIF-related communications and scheduling, including congressional outreach, media engagement, and employee notifications." Doc. No. 225-1 (no. 10 at 4). This description does not in any way indicate that the decision to initiate the RIF was still in flux. Other descriptions make clear that these materials will shed light on the decision-making process as to the RIF, for example, whether the Department had the "operational structure necessary to support RIF implementation." *Id.* (no. 5 at 4). Such descriptions reveal that these withheld materials likely contain information that will provide "a more fulsome comprehension" of the Department's decision—again, discovery this Court ordered. Doc. No. 202 at 13.

Defendants also focus on whether the documents pre-date the *announcement* of the RIF, but the Court found that the question is whether the documents "preced[e] in time the *decision*" of whether to implement the RIF. *Id.* at 9 (emphasis added and citation omitted). Moreover, this argument ignores the Court's own findings that "plans to prepare for the RIF appear to have been formulating since February 2025." *Id.*; *see* Doc. No. 224-3 (internal memorandum announcing RIF dated February 28, 2025). Defendants argue that documents labeled "drafts" indicate that they were pre-decisional, but the mere fact that a document is described as a "draft" does not mean that

the document was created before the decision to implement the RIF, especially given that most of the withheld documents are from the month that the RIF was issued. *Cf. ACLU v. ICE*, 448 F. Supp. 3d 27, 37-38 (D. Mass. 2020) ("[T]he mere fact that a document is a draft . . . is not a sufficient reason to automatically exempt it from disclosure." (citation omitted)). And "[b]ecause the deliberative process privilege is restricted to the intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process, factual statements of post-decisional documents explaining or justifying a decision already made are not shielded." *Texaco P.R.*, 60 F.3d at 884-85.

Next, Defendants contend that "post-decisional documents would fall outside the scope of ordered discovery." Opp. at 3. Yet Defendants ignore that the Court did not simply order completion of the administrative record, but also supplementation of the record and extra-record discovery. Doc. No. 202 at 10-11, 13, 16. A court's review may extend beyond the administrative record before the agency at the time the decision was made, including in "instances where the record submitted by the agency is self-serving, incomplete or unclear." *Conservation L. Found. of New Eng., Inc. v. Clark*, 590 F. Supp. 1467, 1474 (D. Mass. 1984); *see also Doe v. Harvard Pilgrim Health Care, Inc.*, 904 F.3d 1, 9 (1st Cir. 2018) (the administrative record for purposes of reviewing a health benefits decision included documents submitted or generated as part of the post-filing review process). The temporal boundary of discovery is not fixed at the moment of the agency decision; where, as here, the administrative record is incomplete, unclear, or does not elucidate the Department's decision, documents dated after the decision should be produced.

**3. Documents on the Privilege Log Are Clearly Relevant, as Defendants Acknowledge**

Defendants assert that this Court is obligated to "determin[e] the relevance of the evidence sought to be protected," and that "[t]he 1,000 documents on Defendants' privilege log . . . have differing levels of relevance." Opp. at 9. But by including these documents in the privilege log,

Defendants have necessarily identified them as being "otherwise discoverable," Fed. R. Civ. P. 26(b)(5)(A), and therefore relevant, Fed. R. Civ. P. 26(b)(1). Defendants cannot now contend that the documents have limited relevance to the litigation. *See, e.g.*, *Lively v. Skyline Agency LLC*, No. 25-mc-347, 2025 WL 2532796, at *3 (S.D.N.Y. Sept. 3, 2025) ("[T]he [parties] have effectively conceded that the materials are relevant by including them on their privilege log.").

Regardless, the descriptions of the documents in the declaration confirm that the withheld documents are plainly relevant. As but one example, Defendants continue to withhold a document titled "RIF Plan," dated March 11, 2025—the day the RIFs were announced—containing, among other things, "purpose statements" for the RIFs. *See* Doc. No. 225-1 (no. 22 at 5). Similarly, Defendants continue to withhold RIF talking points for senior agency officials, also dated March 11, which include Defendants' views as to the "justifications for workforce reductions." *See id.* (no. 20 at 5). And Defendants continue to withhold materials regarding the cost of the RIFs to the Department, which is relevant to probe the Department's proffered reasoning that the purpose of the RIFs was to improve efficiency. *See, e.g.*, *id.* (no. 18 at 5). None of these documents—and many others identified in the declaration and discussed above—are of limited relevance here. Rather, they are crucial to "facilitat[ing] this Court's review of the decision." Doc. No. 202 at 13.

**4. Defendants' Decision to Convert Documents to PDFs Continues to Prejudice Plaintiffs**

Defendants omit critical details of their interchange with Plaintiffs as to the production of native files. After Defendants asked Plaintiffs to identify the documents that must be produced in native format, Plaintiffs endeavored to do just that. The problem—which Plaintiffs explained to Defendants during their meet and confer and which Defendants omitted from their Opposition—was that, because the documents were produced as PDFs, there is no easy way for Plaintiffs to identify which documents need to be reproduced. Plaintiffs would need to individually review each

of the hundreds of documents to identify the original file format of these materials, which may sometimes be impossible to assess from the face of the document alone (for example, when a Word document is converted to a PDF). Differently put, Defendants chose to take an additional, unnecessary step of converting documents to PDFs and now blame Plaintiffs because their own decision resulted in obfuscating the original file format of the documents. And even if it were as difficult as Defendants claim to reproduce already identified documents in native format, there is simply no reason for Defendants to continue to use this method of production after Plaintiffs put them on notice of the problem in June 2026.

Contrary to Defendants' assertions, this method of production strips documents of relevant information. For example, a Word document will typically contain metadata such as the original author, the last person to edit a document, the creation date, and the last modified date. This information will be stripped away if the document is converted to PDF. Native files also contain data that enables efficient review. For example, native documents have a unique MD5 hash value that allows reviewers to easily identify when documents are exact replicas and prevent duplicative review. This value is lost when documents are converted to PDF. Lastly, Defendants assert that they can comply with Federal Rule 34 by identifying the RFPs for which particular documents are responsive. Even if that were true, however, Defendants have failed to do so, even months after their original production, and therefore continue to violate the Federal Rules.

Dated: October 6, 2026

Respectfully submitted,

**ANDREA JOY CAMPBELL**
Attorney General for the Commonwealth of Massachusetts

By: */s/ Michelle R. Pascucci*
Katherine Dirks (BBO No. 673674)
Chief State Trial Counsel
Michelle Pascucci (BBO No. 690899)
State Trial Counsel
Yael Shavit (BBO No. 695333)
Chief, Consumer Protection Division
Anna Lumelsky (BBO No. 677708)
Deputy State Solicitor
Nathaniel Hyman (BBO No. 698506)
Arjun Jaikumar (BBO No. 691311)
Assistant Attorneys General
1 Ashburton Pl.
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
michelle.pascucci@mass.gov
yael.shavit@mass.gov
anna.lumelsky@mass.gov
nathaniel.j.hyman@mass.gov
arjun.k.jaikumar@mass.gov

*/s/ Shiva Kooragayala*
Rachel F. Homer (MA State Bar No. 693642)
Kali Schellenberg (MA State Bar No. 694875)
Will Bardwell* (DC Bar No. 90006120)
Elena Goldstein* (NY State Bar No. 4210456)
Victoria Nugent* (DC Bar No. 470800)
Adnan Perwez* (DC Bar No. 90027532)
Shiva Kooragayala* (Ill. Bar No. 6336195)
Paul R.Q. Wolfson* (DC Bar No. 414759)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
Telephone: 202.448.9090
Facsimile: 202.796.4426
rhomer@democracyforward.org
kschellenberg@democracyforward.org
wbardwell@democracyforward.org
egoldstein@democracyforward.org
vnugent@democracyforward.org
aperwez@democracyforward.org
skooragayala@democracyforward.org
pwolfson@democracyforward.org

*Counsel for Somerville Plaintiffs*

**LETITIA JAMES**
Attorney General for the State of New York

By: */s/ Molly Thomas-Jensen*
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Molly Thomas-Jensen*
Special Counsel
Gina Bull*
Assistant Attorney General
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
molly.thomas-jensen@ag.ny.gov
gina.bull@ag.ny.gov

**ROB BONTA**
Attorney General for the State of California

By: */s/ Lucia Choi*
Lucia J. Choi*
Deputy Attorney General
Michael L. Newman*
Senior Assistant Attorney General
James E. Stanley*
Supervising Deputy Attorneys General
Natasha A. Reyes*
Deputy Attorney General
California Attorney General's Office
300 South Spring Street
Los Angeles, CA 90013
(213) 269-6364
Lucia.Choi@doj.ca.gov
Michael.Newman@doj.ca.gov
James.Stanley@doj.ca.gov
Natasha.Reyes@doj.ca.gov

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*

Kalikoʻonālani D. Fernandes*
Solicitor General
Caitlyn B. Carpenter*
Deputy Solicitors General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov
caitlyn.b.carpenter@hawaii.gov

**PHIL WEISER**
Attorney General for the State of Colorado

By: */s/ David Moskowitz*
David Moskowitz*
Deputy Solicitor General
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
David.Moskowitz@coag.gov

**KATHLEEN JENNINGS**
Attorney General for the State of Delaware

By: /s/ *Ian R. Liston*
Ian R. Liston**
Director of Impact Litigation
Vanessa L. Kassab**
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: */s/ Clinten N. Garrett*
Clinten N. Garrett*
Senior Appellate Counsel
Office of the Arizona Attorney General
2005 North Central Avenue
Phoenix, AZ 85004
(602) 542-3333
Clinten.Garrett@azag.gov

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Andrew Mendrala*
Andrew Mendrala*
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

**WILLIAM TONG**
Attorney General for the State of Connecticut

By: */s/ Andrew M. Ammirati*
Andrew M. Ammirati*
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5090
andrew.ammirati@ct.gov

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Paul E. Suitter*
Paul E. Suitter
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
paul.suitter@maine.gov

**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Katharine Roberts*
Katharine P. Roberts*
Darren Kinkead*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-4985
katharine.roberts@ilag.gov
Darren. Kinkead@ilag.gov

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: *<u>/s/ Keith M. Jamieson</u>**
Keith M. Jamieson*
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6960
kjamieson@oag.maryland.gov

**DANA NESSEL**
Attorney General for the People of Michigan

By: *<u>/s/ Neil Giovanatti</u>*
Neil Giovanatti*
*Assistant Attorney General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: *<u>/s/ Joseph Richie</u>*
Joseph Richie*
Special Counsel
445 Minnesota Street, Suite 1400
St. Paul, MN, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

**RAÚL TORREZ**
Attorney General of the State of New Mexico

By: *<u>/s/ Olivia den Dulk</u>*
Olivia den Dulk*
Assistant Attorney General
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
(505) 270-4332
odendulk@nmdoj.gov

**AARON D. FORD**
Attorney General for the State of Nevada

By: *<u>/s/ Heidi Parry Stern</u>*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov

**JENNIFER DAVENPORT**
Attorney General for the State of New Jersey

By: *<u>/s/ Amanda I. Morejón</u>*
Amanda Morejón
Jessica L. Palmer*
*Deputy Attorney General*
124 Halsey Street
Newark, NJ 07101
(609) 696-5279
Amanda.Morejon@law.njoag.gov

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: */s/ Elleanor H. Chin*
Elleanor H. Chin*
Senior Assistant Attorney General
100 SW Market Street
Portland, OR 97201
(971) 673-1880
elleanor.chin@doj.oregon.gov

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

By: */s/ Kathryn T. Gradowski*
Kathryn T. Gradowski*
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2810
kgradowski@riag.ri.gov

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 793-1646
Jonathan.rose@vermont.gov

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: */s/ Spencer W. Coates*
Spencer W. Coates*
Assistant Attorney General
Cristina Sepe*
Deputy Solicitor General
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
spencer.coates@atg.wa.gov
cristina.sepe@atg.wa.gov

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: */s/ Charlotte Gibson*
Charlotte Gibson**
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 957-5218
gibsoncj@doj.state.wi.us

*Admitted *Pro Hac Vice*
** Motion for *Pro Hac Vice* pending or forthcoming

## CERTIFICATE OF SERVICE

I certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

*/s/ Michelle R. Pascucci*
Michelle R. Pascucci