**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| STATE OF NEW YORK, *et al.*, Plaintiffs, v. LINDA MCMAHON, *et al.*, Defendants. | ) | Civil Action No. 25-10601-MJJ |

**MEMORANDUM AND ORDER**

October 6, 2026

JOUN, D.J.

Plaintiffs move to enforce this Court's February 11, 2026 Memorandum of Decision (the "February Order") and to compel Defendants to produce documents withheld on the basis of the deliberative process privilege and to produce electronically stored information in native format with associated metadata. Defendants oppose the motion. For the reasons set forth below, Plaintiffs' motion, [Doc. No. 223], is GRANTED in part.

## I. BACKGROUND

On February 11, 2026, I granted in part Plaintiffs' motion for discovery concerning the Department of Education's March 2025 reduction-in-force ("RIF"). *See* [Doc. No. 202]. I recognized the general rule that judicial review of agency action ordinarily is confined to the agency's contemporaneous explanation and the administrative record, and that further inquiry into executive motivation ordinarily should be avoided. I nevertheless concluded that this case warranted departure from that ordinary rule. I found that the administrative record contained

"virtually no reasoning" explaining the Department's decision-making and did not permit meaningful review of why particular employees were terminated, why particular offices were closed, or whether the Department considered relevant factors in implementing the RIF. [*Id.* at 12]. I further found prima facie evidence of pretext and bad faith because the administrative record's stated rationales of "operational efficiency" and "fiscal sustainability" were inconsistent with contemporaneous public statements indicating that the RIF was intended to facilitate closure of the Department, return education authority to the states, and remove employees whom the Administration considered ineffective. [*Id.*].

Accordingly, I ordered Defendants to: (1) complete the administrative record; (2) supplement the record with information sufficient to aid the Court in understanding the Department's decision-making; and (3) comply with Plaintiffs' requests for extra-record discovery to the extent those requests were narrowly tailored toward understanding the true reason behind the RIF. [*Id.* at 17]. I expressly denied discovery outside that limited scope. [*Id.*]. The present motion concerns the application of that Order to documents withheld on deliberative-process grounds and the form in which electronically stored information has been produced.

## II. DELIBERATIVE PROCESS PRIVILEGE

### A. <u>Scope of the February Order</u>

The parties dispute whether the February Order foreclosed Defendants' continued reliance on the deliberative process privilege. Plaintiffs argue that the Court already held that the privilege does not apply to the RIF decision-making discovery authorized in February. [Doc. No. 224 at 6]. Defendants respond that the Court addressed only two identified categories of documents—Agency RIF and Reorganization Plans ("ARRPs") and lists of statutorily required functions—and

did not extinguish the privilege as to every document later identified in discovery. [Doc. No. 225 at 12]. I agree with Plaintiffs in substantial part, but not to the full extent they urge.

In February, I first considered whether the ARRPs and statutory-function materials were predecisional and deliberative. I concluded that they were not. I found that the decision to undertake the RIF had already been made and that the documents instead concerned "the mechanics of how the RIF will be implemented." [Doc. No. 202 at 10]. I then separately addressed the qualified nature of the deliberative process privilege. I explained that courts may decline to apply the privilege where documents may shed light on governmental malfeasance, relied on Plaintiffs' "strong showing of arbitrariness," and concluded: "Given the discretionary nature of the deliberative process privilege, I find that it does not apply here." [*Id.*] (citation omitted). That ruling cannot fairly be read as limited solely to the technical conclusion that the two document categories then discussed were not predecisional or deliberative. I had already made that determination. The subsequent privilege analysis reflected the broader discovery context that justified supplementation and extra-record discovery into the actual reasons for the RIF.

At the same time, the February Order did not eliminate the deliberative process privilege categorically for every document in these consolidated cases. The Order repeatedly confined discovery to the RIF. *See, e.g.*, [*Id.* at 11, 16]. Requests extending beyond material necessary to complete the record concerning the RIF decision-making process were deemed overbroad, and extra-record discovery was expressly limited to "topics and questions pertaining only to the decision-making process regarding the RIF in the Department of Education." [*Id.* at 16]. Accordingly, the February Order forecloses Defendants from withholding otherwise responsive RIF-related material solely on the ground that it reflects internal agency deliberation where that material falls within the discovery expressly authorized to illuminate the reasons, factors,

mechanics, implementation, or actual objectives of the RIF. The Order did not, however, render the deliberative process privilege categorically unavailable as to every document in this litigation or as to materially distinct agency actions.

**B. <u>Post-Decisional Documents</u>**

Defendants argue that if certain documents postdate the decision to conduct the RIF, they cannot be relevant to the agency's decision-making and therefore fall outside the February Order. [Doc. No. 225 at 16–19]. That argument is inconsistent with my prior ruling. The February Order expressly held that documents created after the decision to undertake the RIF could remain relevant where they concerned the mechanics of implementation. I found that the ARRPs were created after the policy-level decision had already been made, yet still ordered their production because they bore on how the RIF would be implemented. *See* [Doc. No. 202 at 9–10]. I also authorized discovery sufficient to explain why particular employees were terminated, why particular offices were closed, what factors were considered, and what reasoning supported the structure and scale of the RIF. *See* [*Id.* at 11–13]. Thus, a document does not fall outside the February Order merely because it was created after the initial decision to conduct a RIF. A post-decisional document may remain within the scope of discovery if it bears on implementation choices, operational decisions, the treatment of statutory functions, the selection of offices or positions for elimination, cost or workload analyses, or the actual objectives the RIF was intended to accomplish. The relevant inquiry is not whether a document postdates the abstract decision to undertake a RIF. It is whether the document bears on a reason, factor, implementation choice, or objective encompassed by the discovery I already authorized.

**C. Application to the Present Privilege Dispute**

Plaintiffs contend that Defendants continue to withhold substantial RIF-related materials solely on deliberative-process grounds, including memoranda, worksheets, communications, cost analyses, documents concerning statutory functions, references to a RIF register, and communications whose titles suggest discussion of a broader strategy to downsize and ultimately close the Department. [Doc. No. 224 at 2, 5, 10, 11]. Those categories, to the extent they concern the reasons, factors, mechanics, implementation, structure, or objectives of the RIF, fall within the subject matter of the February Order. I need not determine at this stage whether Defendants' prior discovery conduct constitutes additional bad faith. The February Order already found a sufficient basis for extra-record discovery and already determined that Plaintiffs were entitled to investigate the actual reasons behind the RIF. The appearance in subsequent discovery of additional RIF-related materials does not narrow that ruling.

Accordingly, Defendants may not withhold documents falling within the scope of the February Order solely on the basis of the deliberative process privilege.

**D. Interagency Agreements**

Plaintiffs also seek to extend the February privilege ruling to documents concerning Interagency Agreements ("IAAs"). [*Id.* at 6]. The February Order did not categorically adjudicate the privilege status of IAA-related materials. Its operative discovery provisions repeatedly addressed the RIF and the Department's decision-making with respect to that RIF. Accordingly, to the extent Plaintiffs seek relief concerning IAA documents solely on the ground that the February Order already resolved their privilege status, that request is DENIED. Nothing in this Order prevents Plaintiffs from demonstrating that particular IAA materials fall within the RIF-related discovery previously authorized or are otherwise discoverable.

## III. NATIVE PRODUCTION

Plaintiffs also move to compel production of electronically stored information in native format with associated metadata. [Doc. No. 224 at 11–12]. Defendants have produced emails, Word documents, and other electronically stored information as PDFs. Plaintiffs contend that this method strips documents of metadata identifying, among other things, authorship, custodianship, dates, recipients, attachments, filenames, document relationships, and other information material to understanding the decision-making process. [*Id.* at 13]. They further contend that native production is more consistent with the form in which those records were ordinarily maintained. [*Id.*]. Defendants respond that Rule 34 does not invariably require native production and that they have offered to identify which requests particular documents respond to. [Doc. No. 225 at 19–20]. They also contend that Plaintiffs failed to identify sufficiently specific files for reproduction and that wholesale native production would impose unnecessary burden. [*Id.*]. I conclude that native production is warranted here.

Federal Rule of Civil Procedure 34(b)(2)(E) requires electronically stored information to be produced in a form in which it is ordinarily maintained or in a reasonably usable form. Plaintiffs contend that Defendants' PDF production removes metadata necessary to determine when records were created or transmitted, by whom, from whose custodial files they were collected, how attachments relate to parent documents, and how particular records fit within the broader agency decision-making process. [Doc. No. 224 at 12]. In the circumstances of this litigation, that information is not merely a matter of convenience. The February Order authorized discovery for the express purpose of permitting the Court and the parties to understand the Department's actual decision-making process. I found the existing record inadequate because it did not reveal the factors considered, the reasoning employed, or the relationship between the Department's stated

rationale and the decision actually made. Metadata bearing on authorship, timing, custodianship, transmission, attachments, and document relationships is therefore potentially material to the very inquiry the Court has ordered.

Plaintiffs' motion further represents that Defendants converted native electronic files to PDF, thereby omitting associated metadata, and that thousands of documents must now be reviewed without information ordinarily available in the source records. [*Id.*]. Plaintiffs argue that producing the original native files would be both more complete and, in many instances, less burdensome than converting them to static PDFs. [*Id.* at 13]. Defendants' proposal to identify the discovery requests to which documents respond does not cure that deficiency. Request-level organization does not substitute for metadata showing authorship, custodianship, dates, recipients, attachments, filenames, or other characteristics of the original electronic records. Nor am I persuaded, on this record, that the burden of native production outweighs its likely benefit. The materials already exist electronically. The litigation concerns the reconstruction of agency decision-making, and the missing electronic information may bear directly on chronology, authorship, document relationships, and the identification of relevant custodians.

Accordingly, Plaintiffs' motion to compel native production is GRANTED. Defendants shall produce electronically stored information in native format, together with associated metadata ordinarily maintained with those files, for all future productions responsive to the discovery authorized in this case. Defendants shall also reproduce in native format the electronically stored information previously produced in converted PDF form, to the extent the original native files remain available. Such production shall include associated metadata sufficient to preserve, where applicable, the identity of the custodian, author, sender, recipients, subject, sent and received dates and times, filename, file extension, file path, attachment relationships, creation date, and last-

modified date. To the extent Defendants contend that particular categories of ESI cannot practicably be produced in native format, the parties shall meet and confer concerning an alternative production format that preserves substantially equivalent metadata and functionality.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Enforce the Court's Discovery Order and to Compel, [Doc. No. 223], is GRANTED in part. It is hereby ORDERED that Defendants shall produce documents withheld on the basis of the deliberative process privilege and to produce electronically stored information in native format with associated metadata consistent with this Decision and Order.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge